IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      *Plaintiff*,

v.

ERIC EARNEST, et al.,

      *Defendants*.

Case No. 25 Cr. 323 (LDH)

**DATE OF SERVICE (BY ECF): FEBRUARY 16, 2026**

REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT TERRY ROZIER'S MOTION TO DISMISS INDICTMENT

James M. Trusty
A. Jeff Ifrah
IFRAH PLLC
1717 Pennsylvania Ave. N.W.
Suite 650
Washington, D.C. 20006
Tel. (202) 524-4140
Fax (202) 524-4141
jtrusty@ifrahlaw.com
jeff@ifrahlaw.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT..................................................................................................... 1
ARGUMENT ................................................................................................................................. 2
    A.   The Government's attempt to distinguish the "means" from the "object" of the conspiracy is a distinction without a difference, due to *Ciminelli's* clear impact. ......................................... 2
    B.   The Government's theory of wire fraud ignores the federalism principles identified by the Court in *Ciminelli*. ................................................................................................................... 5
    C.   Even if *Ciminelli* does not apply here, the Indictment fails to sufficiently alleged wire fraud. ....................................................................................................................................... 7
    D.   The Government's Opposition does not remedy the deficiencies in the Indictment's money laundering allegations. ................................................................................................. 9
CONCLUSION............................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Bond v. United States*, 572 U.S. 844 (2014) ................................................................. 6

*Carpenter v. United States.*, 484 U.S. 19 (1987) ........................................................... 5

*Ciminelli v. United States,* 598 U.S. 306 (2023) .................................................... passim

*Cleveland v. United States*, 531 U.S. 12 (2000) ......................................................... 5, 6

*Jones v. United States*, 529 U.S. 848 (2000) ................................................................. 6

*Kousisis v. United States,* 605 U.S. 114 (2025) ............................................................. 4

*Loughrin v. United States*, 573 U.S. 351 (2014) ........................................................... 6

*United States v. Autouri*, 212 F.3d 105 (2d Cir. 2000) .................................................. 4

*United States v. Triumph Capital Grp., Inc.*, 260 F. Supp. 444 (D. Conn. 2002) ....... 7, 8

*United States v. Chastain*, 145 F.4th 282 (2d Cir. 2025) ............................................ 3, 4

*United States v. Leslie*, 103 F.3d 1093 (2d Cir. 1997) ................................................. 10

*United States v. Porat*, 76 F. 4th 213 (3d Cir. 2023) ..................................................... 6

*United States v. Sadler*, 750 F.3d 585 (6th Cir. 2014) ................................................... 5

*United States v. Walters*, 963 F. Supp. 2d 125 (E.D.N.Y. 2013) ................................... 9

*United States v. Binday*, 908 F.Supp.2d 485 (S.D.N.Y. 2012) ...................................... 7

**Statutes**

18 U.S.C. § 1346 ............................................................................................................. 6

**PRELIMINARY STATEMENT**

The Government's Opposition asks this Court to conclude that *Ciminelli* is inapplicable in a wire fraud prosecution if even a penny of potential financial gain is implicated by the scheme. Given that almost *every* fraudulent scheme is driven by some degree of monetary motivation, the Government's proffered application of *Ciminelli* would effectively render the Supreme Court's ruling a nullity. This is not the law, and this Court should reject the Government's attempt to circumvent binding Supreme Court precedent.

The *Ciminelli* Court's instruction was clear: allegations that defendants conspired to deprive a person of the right to valuable economic information needed to make discretionary economic decisions cannot support a federal wire fraud conspiracy charge. Notwithstanding this unequivocal holding, the Indictment here alleges a quintessential "right to control" theory of wire fraud. It seeks to frame the alleged breach of the Betting Companies' Rules and Terms and Conditions[1] as a criminal violation of the federal wire fraud statute. The Government's tactics go too far - impermissibly broadening the reach of the wire fraud statute well beyond the limitations implemented through a long line of Supreme Court precedent. This Court should acknowledge *Ciminelli's* clear import and decline the Government's invitation to expand the federal criminalization of conduct traditionally regulated by the States.

Finally, the Government's half-hearted attempt to defend the money laundering charge fares no better. As an initial matter, the alleged wire fraud scheme constitutes the underlying specified unlawful activity required to support the money laundering charge. Because the underlying wire fraud charge is legally deficient, so too is the money laundering charge. But even

---

[1] Because the Indictment alleges that the Defendants placed wagers through the Betting Companies' online platforms and in-person facilities, this Reply refers to the collective Betting Companies' rules/terms and conditions governing those wagers collectively as the "Rules."

if the Court concludes that the wire fraud charge is valid, it should nevertheless dismiss Count Two because the Indictment fails to allege the requisite elements of a money laundering conspiracy. Rather, it merely alleges that Mr. Rozier used his *own* money to pay for his friend's travel, and that he and his friend "counted cash" together. These assertions fail to allege that Mr. Rozier knowingly agreed to engage in a monetary transaction involving criminally derived proceeds, and, therefore, cannot sustain a money laundering charge. For the reasons discussed in his Motion, and those discussed herein, Mr. Rozier respectfully requests that this Court dismiss the Indictment.

## ARGUMENT

### A. The Government's attempt to distinguish the "means" from the "object" of the conspiracy is a distinction without a difference, due to *Ciminelli's* clear impact.

It is irrelevant that the Indictment does not explicitly announce a "right to control" theory of wire fraud. The crux of the Government's allegations is that by placing wagers in violation of the Betting Companies' Rules, and failing to disclose as much, Defendants and co-conspirators deprived the Betting Companies of their right to decide whether to enter into certain transactions. The allegedly withheld information – the Defendant's knowledge that Terry Rozier was not intending to play a full game – affected discretionary economic decisions, such as whether the "victim" Betting Companies would lay off bets, change the over/under thresholds, or void winning wagers. *Ciminelli v. United States,* 598 U.S. 306, 315 (2023) ("The right to valuable economic information needed to make discretionary economic decisions is not a traditional property interest."). This is a quintessential "right to control" theory of wire fraud. The fact that the Defendants – like most fraud defendants – were allegedly motivated by the opportunity for financial gain, does not negate this fact. Indeed, the Government's fallacious distinction is inherently limitless—if the hope of ill-gotten gains does not motivate every fraud scheme, it is certainly an overwhelming majority. There is no indication that the *Ciminelli* Court was only

2

reigning in wire fraud in that extremely rare circumstance, particularly as Mr. Ciminelli's scheme sought to obtain $750 million contracts.

The Government's Opposition does not and cannot argue that the "right to control" theory of wire fraud survived post-*Ciminelli*. Rather, the Government argues that the allegations in the Indictment are not premised upon a "right to control" theory of wire fraud, and, therefore, they escape *Ciminelli's* purview. In support of this assertion, the Opposition attempts to draw a distinction between (1) the conspiracy's alleged means – i.e., the Defendants' alleged use of non-public information; and (2) the conspiracy's alleged "object" – i.e., money. (Gov't Opp. at 9-10, Dkt. 87). Simply put, because the Defendants were allegedly motivated by the potential for financial gain, the Government urges this Court to conclude that *Ciminelli* does not control.

But in its attempt to distinguish this case from *Ciminelli*, the Government's Opposition omits a pertinent point about the case: in *Ciminelli*, the alleged wire fraud scheme was undertaken for the purpose of obtaining government contracts worth *hundreds of millions* of dollars. 598 U.S. at 310. Notwithstanding the fact that the fraud scheme resulted in a significant financial gain to the defendants, the Court nevertheless invalidated the premise of the prosecution, concluding that it failed to comport with the traditional notions of property which lie at the heart of the federal wire fraud statute. *Id.* at 316.

Following *Ciminelli*, the Second Circuit has invalidated wire fraud prosecutions premised upon a right to control theory, notwithstanding the fact that the defendant's actions were motivated by the opportunity to make money. In *United States v. Chastain*, the government alleged that the defendant used non-public information to strategically buy and sell non-fungible tokens ("NFTs") for a profit. 145 F.4th 282, 287-88 (2d Cir. 2025). Evidence presented during the trial revealed that the defendant "kn[ew] full well" that he would "captur[e]" some financial "upside" through his

use of the insider information. *Id.* at 288-89. Relying on the principles articulated in *Ciminelli*, the Second Circuit held that the non-public information upon which the defendant relied in perpetuating his scheme did not constitute a traditional "property interest" capable of being the object of the wire fraud. *Id.* at 295.

The Government's Opposition makes no mention of the Second Circuit's holding in *Chastain*. Rather, the Government primarily relies upon *Kousisis v. United States,* in support of its argument that *Ciminelli* need not apply here. 605 U.S. 114 (2025). But the holding in *Kousisis* was much narrower than the Opposition suggests. In *Kousisis*, the Court considered only whether the Government could allege a "fraudulent inducement" theory of wire fraud when the alleged fraudster did not intend to cause net economic loss to the victim. *Id*. at 118. Thus, *Kousisis* does not stand for the proposition that *Ciminelli* is inapplicable any time an alleged fraudster is motivated by potential monetary gain. Rather, it merely held that "actual economic loss is not an element of a wire fraud offense." *See Chastain*, 145 F. 4th at 295 (considering and rejecting the Government's application of *Kousisis*).

Here, neither the Indictment nor the Government's Opposition alleges a fraudulent inducement theory of wire fraud. Nor could they. Although the Indictment alleges that several wagering transactions took place, it does not allege that the bettors who placed the wagers made affirmative misrepresentations or otherwise had a duty to disclose information that they withheld. *United States v. Autouri*, 212 F.3d 105, 118 (2d Cir. 2000). Rather, all that is alleged is an undisclosed violation of the Betting Companies' Rules. Like the Second Circuit in *Chastain*, this Court should conclude that *Kousisis* does not control here, where the true "object" of the alleged scheme is non-public information used for the purpose of making discretionary decisions. *Chastain*, 145 F. 4th at 295.

### B. The Government's theory of wire fraud ignores the federalism principles identified by the Court in *Ciminelli*.

The Government, citing a smattering of pre-*Ciminelli* cases, also attempts to dodge *Ciminelli's* limitations by arguing that there is no "reverse-preemption" provided for by the case's holding. (Gov't Opp. at 11, Dkt. 87). But Defendant does not argue for, and *Ciminelli* does not stand for the application of "reverse-preemption." Rather, the Court's federalism discussion in *Ciminelli* represents the culmination of a long line of Supreme Court cases narrowing the reach of the federal wire fraud statute, and restoring the delicate "federal-state balance in the prosecution of crimes." *Cleveland v. United States*, 531 U.S. 12, 25 (2000). As discussed at length in Mr. Rozier's opening Motion, the *Ciminelli* decision did not emerge in a vacuum. Rather, it was the product of years of precedent examining the structure, purpose, and appropriately limited reach of the federal wire fraud statute, *see, e.g.*, *Carpenter v. United States.*, 484 U.S. 19, 25 (1987) (holding that a "contractual right" to "honest and faithful" service was "too ethereal" to be considered a "traditional property right" under the wire fraud statute); *Cleveland*, 531 U.S. at 24 (limiting the reach of the federal wire fraud statute to "traditional property interests" to avoid a "sweeping expansion of federal criminal jurisdiction in the absence of a clear statement by Congress."), in addition to Congress's intentional and "reverberating silence" concerning the federal government's authority to prosecute wire fraud schemes centered around "intangible" interests or rights. *Ciminelli*, 598 U.S. at 315 (internal quotation marks omitted) (quoting *United States v. Sadler*, 750 F.3d 585, 591 (6th Cir. 2014)). Conversely, when the Supreme Court "put an end to the federal courts' use" of the federal fraud statutes to prosecute "an ever-growing swath of intangible interests unconnected to property" Congress responded by enacting 18 U.S.C. § 1346, codifying "honest services" as the *only* intangible right upon which a federal fraud prosecution could be based. *Id.* at

315. But in the absence of express congressional expansion of the statute – as is the case here – *Ciminelli* controls.

Rather than address the careful "federal-state" balance struck by *Ciminelli*, the Opposition asks this Court to unquestioningly accept its declaration that the federal government has unlimited reach to criminalize any and all forms of alleged deception under the wire fraud statute. (Gov't Opp. at 11, Dkt. 87). The Government's position oversimplifies the nuanced and evolving jurisprudence concerning the "tug-of-war over the breadth of the fraud statutes." *United States v. Porat*, 76 F. 4th 213, 224 (3d Cir. 2023) (Krause, J., concurring). Indeed, "the Supreme Court has long been concerned with the constitutional problems that arise where federal statutes render traditionally local criminal conduct a matter for federal enforcement." *Id.* (internal alterations and quotation marks omitted) (quoting *Jones v. United States*, 529 U.S. 848, 858 (2000)). To this end, it has instructed that the courts should not construe criminal statutes "as a plenary ban on fraud" because doing so would "effect a significant change in the relation between federal and state criminal jurisdiction." *Loughrin v. United States*, 573 U.S. 351, 362 (2014) (internal quotation marks omitted) (quoting *Bond v. United States*, 572 U.S. 844, 859 (2014)). Thus, although the state's regulation of online sports wagering is a relatively recent endeavor, the imposition of limitations upon federal prosecution of matters traditionally reserved for the states is longstanding.

This type of unconstrained federal authority directly ignores *Ciminelli's* warning against the use of the wire fraud statute to "make[] a federal crime of an almost limitless variety of deceptive actions traditionally left to state contract and tort law[.]" *Ciminelli*, 598 U.S. at 315; *see also Cleveland*, 531 U.S. at 27 (cautioning against the expansion of the federal fraud statutes to "place under federal superintendence a vast array of conduct traditionally policed by the States."). If accepted, the Government's theory of wire fraud in this case – premised upon an undisclosed

violation of the Betting Companies' Rules – would open the door to the federal criminalization of a host of relatively innocuous, but nevertheless potentially dishonest, activities. Limitation upon the wire fraud statute's reach does not constitute "reverse-preemption" as the Government claims. Rather, it is an application of the longstanding federalism principles repeatedly recognized and relied upon by the Supreme Court, and an effort by the Court to maintain the law enforcement balance between state and federal governments.

### C. Even if *Ciminelli* does not apply here, the Indictment fails to sufficiently alleged wire fraud.

Even if the Court were to accept the Government's argument that *Ciminelli* does not control here, the Indictment is nevertheless defective because it fails to sufficiently allege the Defendants made affirmative misrepresentations to the Betting Companies. Rather, the Indictment merely alleges that the Defendants placed wagers in violation of the Betting Companies' Rules, which "generally prohibited users from wagering in connection with sporting contests when the wagers were based on or the users had access to pre-release, confidential information or other non-public information." (Indictment ¶ 24, Dkt. 1). Thus, the *only* alleged "misstatement" or allegedly "fraudulent representation" the Government can point to stems from the Defendants' passive and undisclosed violation of the Betting Companies' Rules.

In an effort to conjure up some cognizable misstatement attributable to the Defendants' alleged scheme, the Government repeatedly points to co-defendant Timothy McCormack's guilty plea. (Gov't Opp. at 3, Dkt. 87). The Court should disregard this desperate attempt to retroactively remedy the deficiencies in the Indictment. The Indictment must stand on its own, and the Court's analysis must be based solely upon the allegations contained within its four corners. *United States v. Binday*, 908 F.Supp.2d 485, 491 (S.D.N.Y. 2012) ("It is axiomatic that the allegations in the indictment" must control analysis of a motion to dismiss); *United States v. Triumph Capital Grp.,*

*Inc.*, 260 F. Supp. 444, 460 (D. Conn. 2002) (consideration of sufficiency of indictment limited to its "four corners"). The Government cannot rely on the carefully curated statements in a plea agreement – undoubtedly the product of strategic compromise – to manufacture an allegation that the Defendants made affirmative misrepresentations to the Betting Companies and that Mr. McCormack's guilty plea somehow has precedential value.

If the Court were to consider the purported admissions of Mr. McCormack and adopt the Government's expansive theory of wire fraud in this case, an untenable result would occur: any knowing breach of a website's rules or terms, motivated by the desire for financial gain, would constitute a violation of the federal wire fraud statute. Take for example, the "Meta" terms and conditions governing the use of Facebook's popular "Marketplace" feature, which allows users of the platform to buy and sell products and services amongst themselves. The "Seller Agreement" governing the use of the platform's feature provides that users of the platform "must ensure" that the descriptions of their products for sale are "true, accurate and complete at all times."[2] If an individual who seeks to make a profit by selling an old couch posts a description of the product, but intentionally fails to disclose that there is a stain on the couch's cushion, does that constitute federal wire fraud? According to the Government's theory, as alleged in the Indictment, it would, because the withheld information affecting discretionary economic decisions was accompanied by an intent to obtain money. Similarly, if, in an effort to save a couple of dollars, an individual knowingly uses a family member's username and password to access an online entertainment streaming platform (a violation of most streaming platforms' policies[3]) does that constitute federal wire fraud? According to the Government's theory and allegations in the Indictment, it would.

---

[2] *Seller Agreement*, FACEBOOK (last updated Oct. 31, 2023), https://www.facebook.com/legal/commerce_product_merchant_agreement.
[3] *See e.g.*, *Update on Sharing*, NETFLIX (May 23, 2023), https://about.netflix.com/en/news/update-on-sharing-may-us.

Simply put, the Government invites this Court to conclude that an indictment sufficiently alleges a violation of the federal wire fraud statute any time an individual engages in an activity or transaction without volunteering comment as to whether or not they are compliant with the rules or terms governing that activity or transaction. This form of de minimis silence does not constitute an affirmative misrepresentation – a requisite element of an alleged violation of the federal wire fraud statute. Accordingly, even if the Government's theory of wire fraud were to survive under *Ciminelli*, the Indictment is nevertheless defective, and Count One must be dismissed.

### D. The Government's Opposition does not remedy the deficiencies in the Indictment's money laundering allegations.

The Government's half-hearted attempt to salvage Count Two fares no better. To sufficiently allege a money laundering conspiracy, the Indictment must allege that the defendant "knowingly" agreed to engage in a "monetary transaction involving criminally derived property," which has "actually been derived from specified unlawful activity." *United States v. Walters*, 963 F. Supp. 2d 125, 133 (E.D.N.Y. 2013). The Government's Opposition summarily declares that these elements have been satisfied here. This is wrong.

As an initial matter, because the wire fraud allegations in Count One are fatally defective, there is no remaining predicate "specified unlawful activity" from which the alleged proceeds could be derived. Simply put, because the wire fraud charge is defective, so too is the money laundering charge. That alone is reason enough to dismiss Count Two. But even if this Court were to conclude that the wire fraud charge suffices to serve as the predicate "specified unlawful activity," the money laundering charge must nevertheless be dismissed because the Indictment is devoid of any allegation that Mr. Rozier "knowingly" entered into an agreement to engage in a "monetary transaction involving criminally derived property." Rather, the Indictment merely alleges that Mr. Rozier used his own money to arrange and pay for Mr. Laster's travel and Mr. Rozier "counted"

9

the cash with Mr. Laster. First, neither the Indictment nor the Government's Opposition alleges that Mr. Rozier "agreed" to take part in any "transaction" involving the alleged illicit proceeds of the scheme. Second, even assuming the purported money related to the Defendant's alleged wagering activities, neither the Indictment nor the Opposition allege that the act of *counting* the money constitutes a "transaction" for purposes of the money laundering statute. As argued in Mr. Rozier's Motion, the Second Circuit has defined the term "transaction" to include pledges, gifts, transfers, deliveries, or other disposition. *United States v. Leslie*, 103 F.3d 1093, 1101 (2d Cir. 1997). Merely "counting" money[4] does not fit within this definition. The Government's Opposition fails to even address this point. In sum, the Indictment fails to sufficiently allege the money laundering conspiracy charge and Count Two should be dismissed.

## **CONCLUSION**

The Opposition argues that the Indictment alleges a "classic wire fraud theory" rather than the "right to control" theory invalidated by the *Ciminelli* Court. But regardless of the Government's shuffling of labels, the allegations in the indictment reveal that the "object" of the scheme alleged by the Government was to win wagers while withholding information relevant to the Betting Companies' decision to accept and honor those wagers. Because it is information – rather than money or property – at the center of the alleged scheme, the allegations in the Indictment are invalid under *Ciminelli*. For these reasons, and those stated in his opening Motion, Defendant Terry Rozier respectfully requests that the Court dismiss the Indictment.[5]

---

[4] In an Indictment rife with direct quotes between defendants and coconspirators, if the Government possessed actual evidence that Mr. Rozier "knowingly" counted "illegal" gambling proceeds, surely it would have been put on display.

[5] As previously submitted for the Court's consideration, and agreed to by counsel for the Government, Mr. Rozier respectfully requests that oral argument be held in relation to the instant Motion to Dismiss on March 3, 2026, or at the earliest convenient date for the Court and counsel.

Dated: February 16, 2026        /s/ *James Trusty*
James Trusty (*pro hac vice*)
A. Jeff Ifrah
IFRAH PLLC
1717 Pennsylvania Ave, N.W.
Suite 650
Washington, D.C. 20006
Tel. (202) 524-4140
Fax (202) 524-4141
jtrusty@ifrahlaw.com
jeff@ifrahlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2026, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

Dated: February 16, 2026

*/s/ James M. Trusty*
James M. Trusty
