**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　*Plaintiff*,<br>　v.<br><br>ERIC EARNEST, et al.,<br><br>　　　　　*Defendants*. | Case No. 25 Cr. 323 (LDH)<br><br>**ORAL ARGUMENT REQUESTED:** Date and Time to be Designated by the Court.[1] |

**DEFENDANT TERRY ROZIER'S MOTION TO MODIFY CONDITIONS**
**OF PRETRIAL RELEASE**

Defendant Terry Rozier, by and through his undersigned counsel, hereby requests that this Court modify his conditions of pretrial release, pursuant to 18 U.S.C. § 3142(c)(3).  Specifically, Mr. Rozier respectfully requests that this Court enter an order modifying the conditions of release so that the proscription against any form of contact with the Charlotte Hornets is lifted.  In support thereof, Defendant states as follows:

1.　　　On October 23, 2025, Mr. Rozier was arrested in connection with the charges against him in the indictment in this case.  At the time, he was a member of the Miami Heat. Following Mr. Rozier's arrest, the National Basketball Association ("NBA") placed him on unpaid administrative leave, which barred him from playing.

2.　　　At the initial appearance in this District, on December 8, 2025, Magistrate Judge Clay Kaminsky entered the Order Setting Conditions of Release.  Mr. Rozier posted his bond

---

[1] If this Court schedules a hearing on the motion, the Defendant respectfully asks that the matter be expedited so as to resolve any issue of "inability to perform services" before free agency signings begin at the end of June.

and his release is being supervised by the U.S. Probation Office in the Southern District of Florida, as a courtesy supervision for the Eastern District of New York.

3.     Mr. Rozier's conditions included refraining from having contact with a number of individuals identified by the United States Attorney's Office ("USAO").  The initial list of individuals Defendant was prohibited from communicating with was provided and went into effect on December 11, 2025.

4.     The no-contact list included the defendants in *United States v. Aiello*, No. 25-cr-314; the current and former employees of, and independent contractors for, the Charlotte Hornets, including all coaches, players, medical staff, building staff and support staff; and corporate representatives of FanDuel, DraftKings, BetRivers/Rush Street Interactive, ESPN Bet/Penn Entertainment, and the NBA.

5.     On December 12, 2025, the USAO no-contact list was revised to include all current and former employees of, and independent contractors for, the Miami Heat, which similarly includes all coaches, players, medical staff, building staff and support staff.

6.     On or around December 18, 2025, undersigned counsel conferred with the USAO to discuss the change in no-contact provisions.  The USAO informed undersigned counsel that the NBA had asked it to prohibit Mr. Rozier from having contact with anyone in the NBA, but that the USAO declined to establish that broad a prohibition.  However, the USAO indicated it had an interest in determining whether Mr. Rozier may have spoken to Heat players after the criminal investigation was publicly leaked months before the indictment,[2] and the USAO

---

[2] The Wall Street Journal published an article on January 30, 2025, roughly nine months before the indictment, in which it reported that Mr. Rozier was under investigation for potential federal charges. https://www.wsj.com/sports/basketball/terry-rozier-illegal-betting-probe-nba-63a7170b

2

wanted an opportunity to interview Heat personnel, in case Mr. Rozier had reacted to the leak or talked to them about the indictment.

7.      It has now been over seven months since Mr. Rozier's arrest and he has been compliant with all conditions of his release.  There is no indication that he has had any contact with any players or members of the Heat or Hornets since his arrest.

8.      On April 10, 2026, Mr. Rozier was waived by the Heat, meaning he is no longer on the Heat's roster of players and is now eligible for free agency.

9.      The USAO has had since at least mid-2023 (or whenever the federal investigation began) to interview personnel of the Charlotte Hornets.

10.     The prohibition on contacting members of the Heat and Hornets has had--and is having--deleterious effects on Defendant's arbitration proceedings with the NBA. On February 2, 2026, an arbitrator determined that the NBA's administrative suspension required the Heat to pay Mr. Rozier's full base salary. Almost immediately, the NBA/Miami Heat decided against making full payments, which led to a second round of arbitration in early April. This time, the NBA's position was that the no-contact provisions and travel limitations had rendered Mr. Rozier unable to comply with his contractual obligations.

11.     On May 20, 2026, the arbitrator ruled that, despite being placed on administrative leave by the NBA, Mr. Rozier's conditions of release effectively rendered him in breach of his contractual obligation to play.

12.     Thus, Mr. Rozier has already been severely harmed by the inclusion of the Heat and Hornet members on the no-contact list.

13. On May 26, 2026, the undersigned met with the Government to explain the outcome of the arbitration proceedings and the severe harm caused by inclusion of the Heat and Hornets on the no-contact list.

14. On May 29, 2026, the Government advised undersigned counsel that it would remove the Miami Heat from the no-contact list, but on June 2, 2026, the Government indicated it would not remove the Charlotte Hornets from the no-contact list.

15. With the NBA's free agency process officially beginning June 30, maintaining the Hornets on the no-contact list would likely prevent him from having any opportunity to play in the NBA. Under the current ruling of the arbitrator, an inability to play for or against the Charlotte Hornets would constitute a "failure to perform services" by Mr. Rozier and substantially diminish or eliminate any chance of being contracted by an NBA team.

16. Release conditions involving no contact, in the absence of any evidence of obstructionist action by Mr. Rozier, are unfairly punitive in that they preclude Mr. Rozier from participating in his chosen profession as an NBA player. This is particularly true due to the fact that most players have comparatively short careers--and with forced inactivity Mr. Rozier is facing a potential second season of non-participation despite being entitled to a presumption of innocence.

17. The USAO has indicated that it will not alter the no-contact provision as to the Hornets to facilitate the possibility of further arbitration as well as the prospect of potentially signing with an NBA team this summer. Consequently, it opposes this motion.

18. Mr. Rozier now seeks a modification of this Court's Order Setting Conditions of Release to remove current and former employees of--and independent contractors for--the Charlotte Hornets from the no-contact list.

4

19. Mr. Rozier has no objection to the Court specifying that he remains banned from communicating about the case with the Hornets. That restriction tracks typical guidance given by defense counsel, and the undersigned counsel has represented Mr. Rozier since early 2025. Further, undersigned counsel is unaware of any incident of Mr. Rozier discussing the case with the restricted parties at issue, even during the many months before being provided with the USAO's list.

20. The requested modification does not create a risk of flight or a danger to the community, but simply allows Mr. Rozier to have some hope of receiving relief under the arbitrator's express announcement that he is maintaining jurisdiction over the matter "to resolve any disputes concerning its interpretation, implementation, or enforcement, *including if any dispute should arise if the Court amends the terms of the Release Conditions in the future*." (emphasis added). Additionally, it allows the NBA teams to understand that the conditions of release imposed in this case do not prevent him from playing in the league, if the opportunity presents itself.

21. Maintaining the current no-contact would unfairly exceed the "least restrictive further condition, or combination of conditions" that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B); *see also United States v. Lee*, 972 F. Supp. 2d 403, 408 (E.D.N.Y. 2013) (stating that pretrial release conditions "must not be broader than necessary in light of the circumstances of the individual defendant"). Seven months after Mr. Rozier's arrest, there is no evidence of him failing to comply with any of the conditions of his release, including the no-contact list. Allowing for the possibility of employment in the NBA by modifying the

5

Government's no-contact provisions does not increase either the "danger to the community" or "risk of flight" components of determining pretrial release and conditions.

22.     Furthermore, the no-contact restrictions are "concrete and immediate intrusions" that were imposed "without considering that defendant posed no risk of flight nor any danger to community exclusive of nature of his alleged crimes, and less intrusive conditions could have accomplished purpose of detention." *United States v. Karper*, 847 F. Supp. 2d 350, 363 (N.D.N.Y. 2011).   The no-contact provisions effectively prevent Mr. Rozier from seeking employment within the NBA while being unnecessary to protect the public.  *See United States v. Reardon*, 102 F.4th 558, 567–68 (1st Cir. 2024) (vacating ban on self-employment imposed as a condition of supervised release because the court failed to consider whether the ban was the "minimum restriction necessary").

WHEREFORE, for the foregoing reasons, Defendant Terry Rozier respectfully requests that this Court enter an order modifying his conditions of release to remove current and former employees of (and independent contractors for) the Charlotte Hornets from the no-contact list.

Dated: June 3, 2026                                      Respectfully submitted,


                                                         /s/ *James M. Trusty*
                                                         James M. Trusty (*pro hac vice*)
                                                         A. Jeff Ifrah
                                                         IFRAH PLLC
                                                         1717 Pennsylvania Ave. NW,
                                                         Suite 650
                                                         Washington, D.C. 20006
                                                         Tel. (202) 524-4140
                                                         Fax (202) 524-4141
                                                         jtrusty@ifrahlaw.com
                                                         jeff@ifrahlaw.com

                                                         *Counsel for Defendant*

6