

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

JRS:KTF
F. #2024R00288

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 15, 2026

By ECF

The Honorable LaShann DeArcy Hall
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Eric Earnest, et al.
               Criminal Docket No. 25-323 (LDH)

Dear Judge DeArcy Hall:

The government writes in response to Terry Rozier's motion to modify his bond conditions and to provide the Court with additional information from two of the statutory victims of the charged scheme, the National Basketball Association (the "NBA") and the Charlotte Hornets (the "Hornets").

The above-captioned indictment charges Mr. Rozier, a professional basketball player who formerly played for the Hornets, with four crimes for agreeing to receive a $100,000 bribe in exchange for removing himself prematurely from the Hornets' March 23, 2023, game so that co-conspirators could profitably bet on his planned underperformance.

Mr. Rozier's current bond conditions contain a standard no-contact provision, which bars Mr. Rozier from having any contact with "victims or witnesses, co-[defendants] or co-conspirators except (1) in presence of counsel and (ii) may contact family about non-case-related issues." Order Setting Conditions of Release and Appearance Bond at 7(*l*) (emphasis added). The bond also provides "Gov't to provide a list of individuals." Id. The list provided by the government includes, among others, "Current and former employees of and independent contractors for the Charlotte Hornets (including all coaches, players, medical staff, building staff, and support staff)." This is because numerous personnel from the 2023 Hornets team—including players, staff, and coaches—are witnesses to the charged crimes.[1]

---

[1] The no-contact list previously included the Miami Heat, the team on which Mr. Rozier played when the revelations about his gambling conduct became public. The government has since agreed to remove the Heat from the no-contact list.

Mr. Rozier has requested the Court to permit him to have contact with Hornets personnel because, he argues, "in the absence of any evidence of obstructionist action by Mr. Rozier"[2] the no-contact provision is otherwise "unfairly punitive in that [it] preclude[s] Mr. Rozier from participating in his chosen profession as an NBA player." Rozier Mot. at ¶ 16. At last week's status conference, Mr. Rozier's counsel indicated that he wanted Mr. Rozier to be able to have contact with Hornets personnel on the basketball court so that he could play professionally again— in other words, to permit contact but to limit the topics they may speak about. Although the government has no objection to removing a blanket no-contact list for the Hornets and instead providing a list of specific individuals from the 2023 Hornets organization with whom Mr. Rozier should have no contact, the government objects to Mr. Rozier or any other defendant communicating with non-family witnesses outside of the presence of counsel. The potential for witness tampering in such a scenario, particularly with a trial date on the horizon, is high, and nearly impossible for the government or pretrial to monitor and enforce. Thus, the Bail Reform Act includes a provision to prohibit a defendant from contacting victims and potential trial witnesses. See 18 U.S.C. § 3142(c)(1)(B)(v) (permitting a pretrial release order requiring that the defendant "avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense").

The government has conferred with counsel for both the NBA and the Hornets pursuant to the Court's request at last week's conference and the government's victim notification requirements, see 18 U.S.C. § 3771. Both the NBA and Hornets support continuing the no contact provision as modified by the government's proposal above. The NBA has confirmed that, if Terry Rozier's bail conditions are modified to allow him to play in NBA games as his counsel requested at the status conference, he would be in a position to interact with potential witnesses in or around the arena, both before and after games, in at least the following circumstances:

- During team "shootarounds," approximately 1 hour light activity sessions that typically occur during the morning of game days in the home team's arena;
- During on-court warm-ups, which commence approximately two hours before the official pregame warm-up;
- In the chapel room provided for players who want to pray before the game;
- Throughout the foregoing activities, in the "back of house" area of the arena, including where the locker and treatment rooms are located;
- During the pregame warm-up;
- In the treatment room, including while receiving injury treatment from the home team doctor who is responsible for treating visiting team players depending on the severity of the injury;
- In the tunnels and corridors, including when arriving for or departing from the game;

---

[2] The government is aware that Mr. Rozier directly contacted one individual via text message after the government identified that individual on the no-contact list. In addition, the government has received credible allegations that at least one co-defendant, potentially acting on Mr. Rozier's behalf, has contacted witnesses regarding the case. To be clear, these are allegations, and the government is in the process of investigating them. But these incidents highlight the need for meaningful bond restrictions that prevent against all communications with witnesses.

- At press conferences pre- and post-game; and
- At the loading dock post-game when exiting the arena.

Given the many opportunities for communicating with witnesses in spaces immediately outside and around the basketball court—and the government and pretrial's inability to monitor or enforce a provision that allows communications but bans certain topics—the government requests that the Court permit the government to narrow the no-contact provision to include a list of individuals from the 2023 Hornets organization (rather than the entire organization), but that the Court not permit Mr. Rozier to have any contact with those specific witnesses outside of counsel's presence while this case is pending.

In addition, the government notes that the defendant is charged with having manipulated his performance during a game to benefit himself and co-conspirators in exchange for a bribe. The Hornets paid Mr. Rozier millions of dollars for his honest services, which, the indictment alleges, the Hornets and the NBA did not receive. Where, as here, a grand jury has found probable cause to indict an employee for accepting bribes to defraud his employer, the government respectfully submits that it may run counter to the Crime Victim's Rights Act to force that employer to interact with the defendant, irrespective of whether the defendant is prohibited to discuss the case during those interactions. See 18 U.S.C. § 3771(a)(1) ("A crime victim has . . . the right to be reasonably protected from the accused."). Although the Bail Reform Act envisions permitting a released pretrial defendant to work in some capacity, nothing requires that work to be for or alongside a defrauded employer, particularly where other employees are witnesses of the crime. Indeed, it is common for bail conditions to bar someone from previous employment that enabled them to commit a crime, such as stockbrokers in fraud cases, or therapists who were charged with defrauding Medicare and Medicaid. See, e.g., United States v. Paolicelli, 21-MJ-1205 (KAM), ECF No. 45.

For the reasons set forth above, the government respectfully submits that the Court maintain a no-contact provision, with the amendment that the Hornets organization be removed and replaced with a list of specific witnesses.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:  _____/s/_____
Kaitlin Farrell
Benjamin Weintraub
David Berman
Assistant United States Attorneys
(718) 254-7000

cc:   Clerk of Court (LDH) (by ECF)
Counsel of Record (by ECF)

3