

June 16, 2026

<u>**Via ECF**</u>
The Honorable LaShann DeArcy Hall
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

*Re: United States v. Earnest, et al.*, **No. 1:25-cr-323-LDH**

Dear Judge Hall:

The NBA and the Miami Heat have 26 million reasons to try to use bond conditions as a disqualification for Terry Rozier from playing basketball. Even before it was granted the title of "victim" by way of a superseding indictment's shift to Private Honest Services Fraud, the league was imploring federal prosecutors to banish Mr. Rozier from contact with anyone in the NBA. As evidenced by the Government's letter to the Court filed late last night, the philosophical tenets of the Bail Reform Act are being side-stepped by the Government, with tremendous cost to Mr. Rozier's ability to pursue employment during the pendency of this case.

The Motion for Modification of Conditions of Release filed on June 3, 2026 (doc. 103) describes the NBA's conduct in imposing administrative leave without pay and spurring a grievance filed by the Player's Association on Mr. Rozier's behalf. After an arbitrator determined that the league owed Mr. Rozier his full base salary (on February 2, 2026), the NBA immediately pursued a new basis for avoiding the Heat's contractual obligation – blaming the conditions of release for rendering Mr. Rozier "unable to perform his contractual obligations." This angle led to a new round of arbitration and potential success for the NBA's strategy when, on May 20, 2026, the arbitrator ruled in the NBA's favor. Notably, however, the arbitrator announced his maintaining of jurisdiction over the matter, "including if any dispute should arise if the Court amends the terms of the Release Conditions in the future."

Since that second round of arbitration, Mr. Rozier has been waived by the Miami Heat. The Government also removed the Heat from the no-contact list. The foundational underpinning of how a Heat player was prohibited (by the conditions of release) from playing with his own team is gone. Last Wednesday, in open court, the prosecution announced that, "The Hornets are taking no positions with respect to the bond modification." (Transcript, p. 19-20) These developments significantly increase the likelihood of the arbitrator revisiting his determination regarding Mr. Rozier's salary from last season, while simultaneously establishing Mr. Rozier's ability to sign with a new team.

Five days later, the Government announces a new plan. It wants to effectively expand its long-standing list (over 6 months old) to name individual players, rather than teams, which undoubtedly would serve the NBA's purposes in seeking to deny Mr. Rozier his $26 million salary. Then, in an almost surrealistic—and desperate—accusation to sabotage Mr. Rozier's progress on



the arbitration front, the NBA has ghost-written a parade of horribles for the Government's letter to suggest that allowing Mr. Rozier to take the court would lead to obstruction of justice.[1] The notion that Terry Rozier would sneak into chapel before games to engage in witness intimidation or obstruction is comically ludicrous. Similarly, the Government/NBA expresses concern that Mr. Rozier would somehow use stadium loading docks, medical treatment sessions, or televised press conferences to obstruct justice.

After providing such an absurd "concern," the Government tries to dirty up Mr. Rozier with a clever footnote. Left out of their stated "awareness" is the fact that the communication Mr. Rozier had with an employee whom the Government had just added to the no-contact list was *to advise that employee that he had been added to the no-contact list and that the undersigned was going to make efforts to get him removed from that list*.[2] Mr. Rozier respectfully requests this Court to give absolutely no credit to a Government footnote that gratuitously suggests that a co-defendant "potentially acted" on Mr. Rozier's behalf in contacting witnesses. Whether it is a function of coddling the NBA's interest in thwarting Mr. Rozier or a hyper-competitive desire to publicly accuse a high-profile defendant, that type of footnoted vilification is unworthy of experienced federal prosecutors.

This Court has heard the initial positions of the parties and now received supplemental information from each side. The Government is trying to graft the NBA's tactics into the analytical framework of the Bail Reform Act of 1984. Mr. Rozier does not pose a risk of flight or a danger to the community, which are the fundamental interests addressed by 18 U.S.C. § 3141 et seq. He posted a $3 million surety secured by his house, he has consistently sought permission from Pretrial Services for significant financial payments, and he is in compliance with the general and specific conditions of release initially ordered in the Southern District of Florida in October, 2025 and finalized in this district over six months ago. The Government's no-contact list should not be used to deprive a player of his ability to play in the NBA, as he can clearly play games without having discussions about the case.

The Defense believes the appropriate resolution of this issue is for this Court to clarify that any no-contact provision with particular members of the NBA should be construed as not preventing Mr. Rozier from playing in the NBA, but simply from discussing his federal case with those on the list before during, or after the games.

---

[1] "Pretrial detention satisfies due process only if its purpose is regulatory rather than punitive." *United States v. Briggs*, 697 F.3d 98, 101 (2d Cir. 2012).

[2] The Government has not identified or provided any such communication to the undersigned, but we are independently aware of the communication described in this response.



Thank you in advance for your consideration of this response.

Very Truly Yours,

James M. Trusty