**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

v.

TERRY ROZIER,

Defendant.

No. 25-CR-323 (S-1) (LDH)

\*\*ORAL ARGUMENT REQUESTED\*\*

**TERRY ROZIER'S MOTION TO TRANSFER**

**MARKUS/MOSS PLLC**
David Oscar Markus
Anita Margot Moss
Lauren Field Krasnoff

40 N.W. Third Street, PH1
Miami, Florida 33128
Tel: (305) 379-6667
markuslaw.com

*Served on opposing counsel June 30, 2026*

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

BACKGROUND ...........................................................................................................................2

      A.      The Charges .................................................................................................2

      B.      The Conduct Attributed to Mr. Rozier ......................................................3

      C.      The Absence of Any Connection Between Mr. Rozier and this District .................4

      D.      Mr. Rozier's Residence and Counsel ........................................................4

LEGAL STANDARD ....................................................................................................................4

ARGUMENT .................................................................................................................................6

      THE *PLATT* FACTORS AND THE INTEREST OF JUSTICE FAVOR
      TRANSFER TO THE SOUTHERN DISTRICT OF FLORIDA .......................................6

      1.  The Location of the Defendant Strongly Favors Transfer ...........................................6

      2.  The Location of the Witnesses Favors Transfer..............................................................7

      3.  The Location of the Events at Issue Strongly Favors Transfer ....................................8

      4.  The Location of Documents and Records Does Not Favor This District .....................8

      5.  The Disruption of the Defendant's Business and Affairs favors transfer .....................9

      6.  The Expense to the Parties Favors Transfer...................................................................9

      7.  The Location of Counsel Strongly Favors Transfer......................................................10

      8.  The Relative Accessibility of the Place of Trial is Neutral or Favors Transfer ..........10

      9.  The Docket Conditions Do Not Weigh Against Transfer ............................................10

      10. Other Special Elements and the Interest of Justice Strongly Favor Transfer ..............11

      The Motion is Timely...................................................................................................12

CONCLUSION.............................................................................................................................13

# TABLE OF AUTHORITIES

**CASES:**

*Abouammo v. United States*, 608 U.S. ___, No. 25-5146 (June 11, 2026) ....................................2

*Hyde v. United States*, 225 U.S. 347 (1912) ...............................................................................8

*Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240 (1964) ...............................4, 5, 6

*United States v. Cabrales*, 524 U.S. 1 (1998) ...............................................................................8

*United States v. Choate*, 276 F.2d 724 (5th Cir. 1960) ................................................................12

*United States v. Cores*, 356 U.S. 405 (1958) ........................................................................2, 6, 11

*United States v. Coriaty*, No. 99 Cr. 1251, 2000 WL 1099920 (S.D.N.Y. 2000)...........................7

*United States v. Flom*, No. 14-CR-507 (RRM), 2015 WL 6506628
(E.D.N.Y. Oct. 27, 2015) ...............................................................................................................7

*United States v. Guastella*, 90 F. Supp. 2d 335 (S.D.N.Y. 2000) ...................................................5

*United States v. Holder*, 399 F. Supp. 220 (D.S.D. 1975) ...........................................................12

*United States v. Johnson*, 323 U.S. 273 (1944)........................................................................6, 11

*United States v. Keuylian*, 602 F.2d 1033 (2d Cir. 1979).........................................................5, 12

*United States v. Layne*, No. 05 Cr. 87 (HB) (S.D.N.Y. May 2, 2005)...............................5, 6, 7, 10

*United States v. Maldonado-Rivera*, 922 F.2d 934 (2d Cir. 1990).....................................5, 10, 12

*United States v. Martino*, No. 00 Cr. 389, 2000 WL 1843233
(S.D.N.Y. Dec.14, 2000) ............................................................................................................6, 9

*United States v. Muratoski*, No. 04-cr-179-SM, 2005 DNH 061
(D.N.H. Apr. 8, 2005) ................................................................................................................5, 6

*United States v. Ohran*, No. 99 Cr. 142, 2000 WL 620217
(S.D.N.Y. May 12, 2000) ...............................................................................................................6

*United States v. Russell*, 582 F. Supp. 660 (S.D.N.Y. 1984)......................................................6, 9

*United States v. Spy Factory, Inc.*, 951 F. Supp. 450 (S.D.N.Y. 1997) ...............................5, 11, 12

*United States v. Stephenson*, 895 F.2d 867 (2d Cir. 1990) ................................................................5

*United States v. Templin*, 251 F. Supp. 2d 1223 (S.D.N.Y. 2003) ..................................................5

*United States v. Valdes*, No. 05 Cr. 156, 2006 WL 738403
(S.D.N.Y. Mar. 21, 2006) .................................................................................................................11

*Yeloushan v. United States*, 339 F.2d 533 (5th Cir. 1964) ..............................................................12

**STATUTES:**

18 U.S.C. § 224 ...................................................................................................................................3

18 U.S.C. § 1346 .................................................................................................................................3

18 U.S.C. § 1349 ............................................................................................................................2, 3

18 U.S.C. § 1956(h) ............................................................................................................................3

**RULES:**

Fed. R. Crim P. 12(b)(3) .....................................................................................................................2

Fed. R. Crim P. 21(b) ..........................................................................................................1, 2, 4, 7, 8, 11

Fed. R. Crim. P. 21(d) .......................................................................................................................12

Defendant Terry Rozier respectfully moves this Court, pursuant to Federal Rule of Criminal Procedure 21(b), for an order transferring the prosecution against him to the United States District Court for the Southern District of Florida. Transfer is warranted for the convenience of the parties, alleged victims, the witnesses, and in the interest of justice.

## INTRODUCTION

Terry Rozier is innocent, and he intends to prove it at trial. He is a professional basketball player, not a gambler. We respectfully request that his trial occur in the Southern District of Florida. Mr. Rozier does not live in this District. He is not alleged to have set foot here in connection with this case, to have placed or directed a single wager here, or to have sent or received so much as a phone call or a dollar here. The Government has nonetheless hauled a Florida resident into a Brooklyn courtroom to answer for a basketball game played in Charlotte, in a forum foreign to him and to everything he is alleged to have done.

Even accepting every allegation in the Superseding Indictment as true, Mr. Rozier did nothing in the Eastern District of New York. He is a professional basketball player who resides in the Southern District of Florida. The single game he is alleged to have affected, the Charlotte Hornets' game on March 23, 2023, was played in Charlotte, North Carolina. His only alleged communications in furtherance of the charged scheme were with a co-defendant who resided in Ohio. The cash he is alleged to have received was, according to the Indictment, collected in Philadelphia and counted at his home in Charlotte. Mr. Rozier is not alleged to have traveled to New York, placed or directed a wager in New York, transmitted or received any communication in New York, or taken any other act in this District. [1]

---

[1]    The only allegations in the Superseding Indictment tying any conduct to this District concern other bettors and other games. With respect to the March 23, 2023, game, the Indictment

Every relevant consideration under Rule 21(b) points away from this District and toward the Southern District of Florida, where Mr. Rozier lives and where his counsel practices. Requiring Mr. Rozier to defend, in Brooklyn, charges arising entirely from events in Charlotte would impose precisely the "unfairness and hardship" that the law governing venue and transfer is designed to prevent. *United States v. Cores*, 356 U.S. 405, 407 (1958).[2]

This motion is timely. It is filed promptly after the May 28, 2026, Superseding Indictment and before any substantive pretrial litigation, avoiding the delay that has weighed against transfer in other cases. Mr. Rozier respectfully requests transfer of the entire prosecution against him to the Southern District of Florida.

### BACKGROUND

#### A.    The Charges

The Superseding Indictment charges four defendants in four counts. Count One charges a conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, alleged to span December 2022 through March 2024 and to involve a scheme to defraud sports-betting companies through the use

---

alleges that two bettors, Timothy McCormack (a resident of New York County) and Long Phi Pham (a resident of Queens), placed wagers at a New Jersey retail sportsbook, and that, while located in this District, Pham engaged in communications in furtherance of the scheme. *See* Indictment ¶ 41(b). The Indictment does not allege that Mr. Rozier had any contact with Pham or McCormack, knew of their wagers, or directed them. The remaining New York allegations, including those concerning Co-Conspirator 9 (a resident of Brooklyn), relate to a different game and different participants. *See* Indictment ¶¶ 21, 58.

[2]    By moving under Rule 21(b), which governs the convenience of trying a case in a district where venue lies, Mr. Rozier does not concede that venue is proper in this District as to any count of the Superseding Indictment. He expressly reserves all objections to venue and all other defenses, including any motion under Federal Rule of Criminal Procedure 12(b)(3). Indeed, the Supreme Court recently reaffirmed that a statute's "contemplated effects" cannot establish venue in a district where no offense conduct occurred. *See Abouammo v. United States*, 608 U.S. ___, No. 25-5146, slip op. at 3–9 (June 11, 2026). We are also filing a motion to dismiss Count 3 regarding venue.

of non-public information across a series of NBA games. Superseding Indictment ¶¶ 30–33, 67. Count Two charges a conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). *Id.* ¶ 69. Counts One and Two name all four defendants, including Mr. Rozier.

Counts Three and Four are narrower. Count Three charges bribery in a sporting contest, in violation of 18 U.S.C. §§ 224 and 2, expressly limited "to wit: the March 23, 2023, Game." Superseding Indictment ¶¶ 70–71. Count Four charges a conspiracy to commit honest-services wire fraud, in violation of 18 U.S.C. §§ 1349 and 1346, also confined to the period "between January 2023 and April 2023" and to the same game. *Id.* ¶¶ 72–73. Counts Three and Four name only Shane Hennen, Deniro Laster, and Mr. Rozier.

## B.    The Conduct Attributed to Mr. Rozier

The Superseding Indictment's allegations against Mr. Rozier are confined to a single game. It alleges that, during the 2022–2023 season, Mr. Rozier played for the Charlotte Hornets, suffered a lower-leg injury, and agreed with co-conspirators that he would withdraw early from a to-be-determined game in exchange for a payment. Indictment ¶¶ 35, 37. It alleges that, shortly before the Hornets' March 23, 2023, home game against the New Orleans Pelicans, Mr. Rozier informed co-defendant Laster, who resided in Ohio, that he intended to remove himself in the first quarter. *Id.* ¶ 38. The game was played in Charlotte; the Indictment alleges that Mr. Rozier played approximately nine and a half minutes and did not return. *Id.* ¶ 43.

The Superseding Indictment further alleges that, after the game, the contemplated payment was reduced because Mr. Rozier's rebounding total exceeded the relevant betting line, *id.* ¶ 44; that on or about March 28, 2023, Laster collected in Philadelphia, *id.* ¶ 45; and that Laster then drove to Mr. Rozier's home in Charlotte, where the money was counted on or about April 1, 2023.

*Id.* ¶ 46. Every act the Indictment attributes to Mr. Rozier thus occurred in Charlotte, in Ohio (his communications with Laster), or in Philadelphia.

### C.    The Absence of Any Connection Between Mr. Rozier and this District

None of the conduct attributed to Mr. Rozier occurred in the Eastern District of New York. He is not alleged to have placed a wager, sent or received a communication, received a payment, or taken any other act in this District, nor to have had any dealing with any person located here. The Indictment's allegations linking the scheme to this District concern other participants and other games entirely.

### D.    Mr. Rozier's Residence and Counsel

Mr. Rozier resides in the Southern District of Florida. His counsel of record, Markus/Moss PLLC, practices in Miami, within the Southern District of Florida.

### LEGAL STANDARD

Rule 21(b) provides:

> Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice.

Fed. R. Crim. P. 21(b). A motion to transfer "may be made at or before arraignment or at any other time the court or these rules prescribe." Fed. R. Crim. P. 21(d).

In deciding a Rule 21(b) motion, courts in this Circuit weigh the non-exclusive factors set out in *Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240, 243-244 (1964): (1) the location of the defendant; (2) the location of possible witnesses; (3) the location of events likely to be at issue; (4) the location of documents and records likely to be involved; (5) the disruption of the defendant's business unless the case is transferred; (6) the expense to the parties; (7) the location of counsel; (8) the relative accessibility of the place of trial; (9) the docket condition of

each district or division involved; and (10) any other special elements that might affect the transfer. *See also United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990).

The decision is committed to the sound discretion of the district court. *Maldonado-Rivera*, 922 F.2d at 966; *United States v. Keuylian*, 602 F.2d 1033, 1038 (2d Cir. 1979). "No one of these considerations is dispositive, and it remains for the court to try to strike a balance and determine which factors are of greatest importance." *Maldonado-Rivera*, 922 F.2d at 966 (quoting *United States v. Stephenson*, 895 F.2d 867, 875 (2d Cir. 1990)). The court "should not give any one factor preeminent weight" and should not "assume that the quantity of factors favoring one party outweighs the quality of factors in opposition"; rather, it weighs the factors "against the backdrop of doing what is in the overarching interest of justice" and asks "whether the interests of justice would be better served by changing the trial venue." *United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 456–57 (S.D.N.Y. 1997) (Sotomayor, J.). The defendant bears the burden, and courts conduct a factor-by-factor analysis. *United States v. Templin*, 251 F. Supp. 2d 1223, 1224–25 (S.D.N.Y. 2003).

Although, as a general matter, "a criminal prosecution should be retained in the original district" in which it was filed, *United States v. Guastella*, 90 F. Supp. 2d 335, 338 (S.D.N.Y. 2000), that general rule yields where the balance of the *Platt* factors and the interest of justice favor transfer. So it was in *United States v. Layne*, No. 05 Cr. 87 (HB) (S.D.N.Y. May 2, 2005), where the court granted a defense motion to transfer a wire-fraud and conspiracy prosecution from the Southern District of New York to the Southern District of Florida because the defendants resided in Florida and their witnesses and counsel were there. And the events in question weighed in favor of neither side. The same logic produced transfer in *United States v. Muratoski*, No. 04-cr-179-

SM, 2005 DNH 061 (D.N.H. Apr. 8, 2005), where the court found venue "plainly proper" yet still transferred the case to the district where the defendant lived and worked.

These principles are informed by the policies underlying criminal venue. Questions of venue "raise deep issues of public policy." *United States v. Johnson*, 323 U.S. 273, 276 (1944). "The provision for trial in the vicinity of the crime is a safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place." *Cores*, 356 U.S. at 407. And prosecuting a defendant in a district remote from his conduct "opens the door to needless hardship to an accused" and "leads to the appearance of abuses, if not to abuses, in the selection of what may be deemed a tribunal favorable to the prosecution." *Johnson*, 323 U.S. at 275-76. Those concerns are squarely implicated where, as here, the defendant is alleged to have done nothing in the charging district.

## ARGUMENT

**The *Platt* Factors and the Interest of Justice Favor Transfer to the Southern District of Florida.**

*1. The Location of the Defendant Strongly Favors Transfer.*

Mr. Rozier resides in the Southern District of Florida. Courts in this Circuit give a defendant's residence substantial weight; indeed, "wherever possible, defendants should be tried where they reside." *United States v. Russell*, 582 F. Supp. 660, 662 (S.D.N.Y. 1984). Courts in this District have accordingly afforded "greater weight to the defendant's interest in being tried in the district of his residence than to any other factor." *United States v. Martino*, No. 00-Cr.-389, 2000 WL 1843233, at *6 (S.D.N.Y. Dec.14, 2000) (quoting *United States v. Ohran*, No. 99 Cr. 142, 2000 WL 620217, at *3 (S.D.N.Y. May 12, 2000)). In *Layne*, the court transferred a wire-fraud

and conspiracy prosecution from this State to the Southern District of Florida where, as here, the defendants resided in Florida. *Layne*, No. 05 Cr. 87 (HB). This factor strongly favors transfer.

    *2. The Location of the Witnesses Favors Transfer.*

The location of witnesses is one of the more significant factors under Rule 21(b). It does not appear that any witness with knowledge of Mr. Rozier's alleged conduct is located in the Eastern District of New York. After all, the events concern a game played in Charlotte. The Government has also said that the Charlotte Hornets is a victim. We believe that the witnesses from the Hornets will all be favorable to Mr. Rozier. Regardless, those potential witnesses are not located in New York.

None of the other defense witnesses Mr. Rozier anticipates calling are in New York. (If the Court would like, we can provide a list of defense witnesses *ex parte*).

The Government's own witnesses relevant to the March 23 game are likewise dispersed outside New York, and the Indictment identifies no New York witness with knowledge of Mr. Rozier's alleged conduct. Of course, if we are wrong, then the Government can identify which witnesses are in New York.

It is true that whether the trial is in New York or Miami, it "will be an inconvenience to some witnesses, no matter where the trial is held," *United States v. Coriaty*, No. 99 Cr. 1251, 2000 WL 1099920, at *2 (S.D.N.Y. 2000). The Government may point to *United States v. Flom*, No. 14-CR-507 (RRM), 2015 WL 6506628 (E.D.N.Y. Oct. 27, 2015), where the court denied transfer to the Southern District of Florida, but in that case, the trial was expected to be short, *id.* at *10 and the defendant had a "strong nexus to and impact" in this District. Here, by contrast, this multi-defendant prosecution is expected to last three weeks, and the Indictment alleges no connection between Mr. Rozier and this District at all. This factor favors transfer.

*3. The Location of the Events at Issue Strongly Favors Transfer.*

The events the Government relates to Mr. Rozier occurred in Charlotte (the game), in Ohio (his communications with Laster), and in Charlotte (counting the cash). None occurred in this District. For the money-laundering charge in particular, the situs of the offense is where the financial transactions occurred, not elsewhere. As the Supreme Court has held, the locus of a money-laundering offense "must be determined from the nature of the crime alleged and the location of the act or acts constituting it," and the statute reaches "only the financial transactions," not "the anterior criminal conduct that yielded the funds allegedly laundered." *United States v. Cabrales*, 524 U.S. 1, 6–7 (1998).[3] As to Mr. Rozier, none of the relevant acts occurred in the Eastern District of New York.

To the extent the events center on Charlotte, Mr. Rozier seeks transfer to the Southern District of Florida, where he resides and where his counsel practices, rather than to the Western District of North Carolina, because the convenience factors discussed throughout this memorandum point to the Southern District of Florida. What matters under this factor is that none of the relevant events occurred in this District. This factor strongly favors transfer.

*4. The Location of Documents and Records Does Not Favor This District.*

The documentary evidence is largely electronic, consisting of betting records and telephone and message records. "[G]iven the conveniences of modern transportation and communication,"

---

[3]    Mr. Rozier recognizes that, unlike the substantive money-laundering counts at issue in *Cabrales*, venue for a conspiracy count may also rest on acts committed by a co-conspirator within the district. *See Cabrales*, 524 U.S. at 8-9 (distinguishing *Hyde v. United States*, 225 U.S. 347 (1912)). That distinction goes to whether venue lies, not to the separate Rule 21(b) question this motion presents: where the relevant events occurred for purposes of convenience and the interest of justice. As to Mr. Rozier, the answer is not this District.

the location of documents "is of little consequence one way or the other." *Martino*, 2000 WL 1843233, at \*5; *Coriaty,* 2000 WL 1099920, at \*3.

To the extent any physical records matter, such as team or medical records concerning the injury, they are located in the Southeast, not in New York. This factor is neutral at worst and modestly favors transfer.

*5. The Disruption of the Defendant's Business and Affairs Favors Transfer.*

Mr. Rozier continues to train in the Southern District of Florida with the objective of returning to the NBA. A trial in Brooklyn would require him to relocate to New York for the duration of trial and for the pretrial preparation immediately preceding it. This would disrupt his training regimen, separate him from his trainers and facilities, and ultimately limit his ability to return to the game. Trial in the Southern District of Florida, by contrast, would allow Mr. Rozier to continue his training and career preparation while defending the charges against him. This factor favors transfer.

*6. The Expense to the Parties Favors Transfer.*

Defending in Brooklyn would require Mr. Rozier to bear the cost of travel and lodging in New York for himself, his counsel, and his witnesses, most of whom are in the Southeast. Hotel expenses in New York are quite a bit more than South Florida.  Trial in the Southern District of Florida, his home, would largely reduce those costs. As in *Russell*, "looking to the total outlay of funds required to transport and provide accommodations for all parties, witnesses, and counsel," a New York trial would cost considerably more. 582 F. Supp. at 663. This factor favors transfer.

*7. The Location of Counsel Strongly Favors Transfer.*

Mr. Rozier's counsel of record practices in Miami, within the Southern District of Florida. Courts credit the location of defense counsel and the value of counsel being within reach of both the client and the proceedings; in *Layne*, the court credited that Florida counsel would provide more effective representation and that counsel within driving distance would better enable the defense and the defendant's participation in it. Likewise, in *Maldonado-Rivera*, the Second Circuit noted that transfer would have delayed trial because counsel would have needed time to familiarize themselves with the case, a consideration weighing against transfer there. Here, the opposite is true: transfer would place the case in the district where existing counsel already practices and where Mr. Rozier resides, eliminating any need for new local counsel to become acquainted with the case. *See Maldonado-Rivera*, 922 F.2d at 966. This factor strongly favors transfer.

*8. The Relative Accessibility of the Place of Trial is Neutral or Favors Transfer.*

The Southern District of Florida is readily accessible and served by major airports. For Mr. Rozier and his Southeast-based witnesses, it is either more accessible or equally accessible as Brooklyn. At a minimum, this factor does not favor retention.

*9. The Docket Conditions Do Not Weigh Against Transfer.*

Both districts are busy, and neither is so congested as to bear on this motion. The Southern District of Florida resolves criminal cases more quickly than this District, with a median time from filing to disposition for criminal felony defendants of about 7 months, compared with about 30.0 months in the Eastern District of New York. *See* Administrative Office of the U.S. Courts, Federal Court Management Statistics (12-month period ending June 30, 2025). But trial is set for February 2027, so this factor is, at most, neutral. Courts have treated docket-condition comparisons as not

weighing meaningfully in either direction absent a significant disparity. *See Spy Factory*, 951 F. Supp. at 460.

    *10. Other Special Elements and the Interest of Justice Strongly Favor Transfer.*

    Several special elements confirm that transfer serves the interest of justice.

    First, Mr. Rozier is alleged to have done nothing in this District. Requiring him to stand trial in a district that has no connection to his alleged conduct implicates the very policies that animate criminal venue and Rule 21(b): the avoidance of "the unfairness and hardship involved when an accused is prosecuted in a remote place," *Cores*, 356 U.S. at 407, and of "the appearance of abuses . . . in the selection of what may be deemed a tribunal favorable to the prosecution," *Johnson*, 323 U.S. at 275.

    Second, Rule 21(b) expressly authorizes the transfer of "one or more counts . . . against that defendant," and Counts Three and Four concern only the March 23, 2023, game in Charlotte. Those counts have no connection to this District whatsoever.

    Third, Mr. Rozier's alleged role is discrete and severable. His alleged participation is confined to a single game and a small set of transactions, separate from the other games, bettors, and defendants that make up the bulk of the Indictment. Transferring the prosecution against him, or his counts, would not materially burden judicial economy, because the proof concerning Mr. Rozier is largely self-contained and distinct from the proof concerning the other episodes the Indictment describes. There is, in other words, "a fault line in the Indictment" between Mr. Rozier and the other conduct. *United States v. Valdes*, No. 05 Cr. 156, 2006 WL 738403, at *11 (S.D.N.Y. Mar. 21, 2006) (granting transfer to the Southern District of Florida where proof was severable).

    That a transfer would carve Mr. Rozier out of a multi-defendant case is no obstacle. Rule 21(b) authorizes transfer of "one or more counts . . . against [a] defendant," and a multi-defendant

prosecution may be transferred as to a single defendant. *See United States v. Choate*, 276 F.2d 724, 727-28 (5th Cir. 1960); *Yeloushan v. United States*, 339 F.2d 533, 536-37 (5th Cir. 1964) (codefendant's opposition does not bar transfer of a moving defendant); *United States v. Holder*, 399 F. Supp. 220, 228 (D.S.D. 1975).

Balancing all of the foregoing, the interests of justice "would be better served by" transfer. *Spy Factory*, 951 F. Supp. at 456.

### The Motion Is Timely.

Rule 21(d) permits this motion now, and it is filed promptly after the May 28, 2026, Superseding Indictment, before substantive pretrial motions and well before any trial date. The delay that defeated or weighed against transfer in this Circuit's cases is therefore absent here. *See Keuylian*, 602 F.2d at 1038 (motion filed four months after indictment); *Maldonado-Rivera*, 922 F.2d at 966 (motion filed nine months into the case, after discovery, on the eve of trial); *Spy Factory*, 951 F. Supp. at 460 (motion filed on the eve of trial). Mr. Rozier's diligence removes any countervailing timing concern and itself supports transfer.

\* \* \*

## CONCLUSION

Mr. Rozier respectfully requests that the Court transfer the prosecution against him to the United States District Court for the Southern District of Florida.

Dated: June 30, 2026

Respectfully submitted,

**MARKUS/MOSS PLLC**
40 N.W. Third Street, PH1
Miami, Florida 33128
Tel: (305) 379-6667
markuslaw.com

By:   <u>/s/ David Oscar Markus</u>
David Oscar Markus
dmarkus@markuslaw.com

<u>*/s/ Anita Margot Moss*</u>
Anita Margot Moss
mmoss@markuslaw.com

<u>*/s/ Lauren Field Krasnoff*</u>
Lauren Field Krasnoff
lkrasnoff@markuslaw.com