JPL:KTF/BLW/DIB
F. #2024R00288

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

ERIC EARNEST,
       also known as "Spook,"
SHANE HENNEN,
       also known as "Sugar,"
DENIRO LASTER,
       also known as "Niro," "Payso"
       and "Peso," and
TERRY ROZIER,
       also known as "Scary Terry" and
       "Chum,"

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

25-CR-323 (LDH) (S-1)

## GOVERNMENT'S RESPONSE IN OPPOSITION TO
## DEFENDANT ROZIER'S MOTION TO TRANSFER

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Kaitlin T. Farrell
Benjamin Weintraub
David Berman
Assistant U.S. Attorneys
    (Of Counsel)

TABLE OF CONTENTS

PRELIMINARY STATEMENT ..........................................................................................1

   I.  Background .........................................................................................................2

       a.  The Superseding Indictment............................................................................2

       b.  The Defendant's Motion ..................................................................................2

   II.  Applicable Law ...................................................................................................3

       a.  Legal Standard for a Motion to Transfer.........................................................3

   III. Argument............................................................................................................4

       a.  Factor 1 – Location of Defendant.....................................................................4

       b.  Factor 2 – Location of the Witnesses ...............................................................6

       c.  Factor 3 – Location of the Events at Issue........................................................8

       d.  Factor 4 – Location of Documents and Records ...............................................9

       e.  Factor 5 – Disruption of Defendant's Business ................................................9

       f.  Factor 6 – Expense to the Parties ...................................................................11

       g.  Factor 7 – Location of Counsel ......................................................................12

       h.  Factor 8 – Relative Accessibility of Place of Trial .........................................13

       i.  Factor 9 – Docket Conditions in Each District ...............................................13

       j.  Factor 10 – Special Elements and the Interests of Justice.......................................14

CONCLUSION ..........................................................................................................17

CASES

Platt v. Minn. Mining & Mfg. Co.,
376 U.S. 240 (1964)............................................................................................... 3, 4

United States v. Antia,
No. 97-CR-733 (RJD), 1999 WL 294788 (E.D.N.Y. 1999)............................................... passim

United States v. Aronoff,
463 F. Supp. 454 (S.D.N.Y. 1978) ....................................................................... 15

United States v. Blakstad,
No. 19-CR-486 (ER), 2020 WL 5992347 (S.D.N.Y. Oct. 9, 2020) ........................................ 11

United States v. Coriaty,
No. 99-CR-1251 (DAB), 2000 WL 1099920 (S.D.N.Y. Aug. 7, 2000)............................. 10, 15

United States v. Cournoyer,
No. 12-CR-65 (SLT), 2012 WL 6539659 (E.D.N.Y. Dec. 14, 2012) ............................... passim

United States v. Fiorentino,
No. 13-CR-338 (SJF), 2014 WL 108415 (E.D.N.Y. Jan. 6, 2014)........................................ 4, 5

United States v. Flom,
No. 14-CR-507 (RRM), 2015 WL 6506628 (E.D.N.Y. Oct. 27, 2015) ............................ passim

United States v. Guastella,
90 F. Supp. 2d 335 (S.D.N.Y. 2000)........................................................................... 9

United States v. Gunn,
No. 22-CR-314 (HG), 2022 WL 17250494 (E.D.N.Y. Nov. 28, 2022) ..................................... 5

United States v. Hanley,
No. 94-CR-394 (DAB), 1995 WL 60019 (S.D.N.Y. Feb. 10, 1995)........................................ 5

United States v. Larsen,
No. 13-CR-688 (JMF), 2014 WL 177411 (S.D.N.Y. Jan. 16, 2014)........................................ 4

United States v. Maldonado-Rivera,
922 F.2d 934 (2d Cir. 1990)........................................................................................ 3

United States v. Naumovski,
No. 20-CR-384 (WFK), 2023 WL 5278437 (E.D.N.Y. Aug. 16, 2023) ........................... passim

United States v. Perri,
    No. 25-CR-2779 (SRU), 2025 WL 3206496 (E.D.N.Y. Nov. 17, 2025) .......................... passim

United States v. Rinsch,
    807 F. Supp. 3d 238 (S.D.N.Y. 2025)............................................................................ 6, 9, 12

United States v. Spy Factory, Inc.,
    951 F. Supp. 450 (S.D.N.Y. 1997) ...................................................................................... 13

United States v. Stephenson,
    895 F.2d 867 (2d Cir. 1990)................................................................................................. 3

United States v. U.S. Steel Corp.,
    233 F. Supp. 154 (S.D.N.Y. 1964) ...................................................................................... 14

United States v. Valdes,
    No. 05-CR-156 (KMK), 2006 WL 738403 (S.D.N.Y. Mar. 21, 2006) ................................... 11

## RULES

Federal Rule of Criminal Procedure 21(b)................................................................................ passim

<u>PRELIMINARY STATEMENT</u>

After hiring new Miami-based counsel eight months after being indicted in the Eastern District of New York, defendant Terry Rozier ("the defendant" or "Rozier") moves pursuant to Federal Rule of Criminal Procedure 21(b) to transfer this case to the Southern District of Florida—a place where he did not live during the relevant time period, that the defendant has not established has any bearing on the facts of this case, and where there is no basis for the Court to conclude that venue is proper. In so moving, Rozier asks the Court to sever his case only and force the government to prosecute multiple cases simultaneously—the case against Rozier in the Southern District of Florida and the case against the remaining three defendants in the Eastern District of New York.

Transfer under Rule 21(b) is warranted only if the defendant can establish that trial in the district where the indictment was returned "would be so unduly burdensome that fairness requires the transfer to another district." <u>United States v. Naumovski</u>, No. 20-CR-384 (WFK), 2023 WL 5278437, at *2 (E.D.N.Y. Aug. 16, 2023). Rozier, who is currently unemployed, played 10 seasons as a professional basketball player in the National Basketball Association ("NBA"). Over that time, he earned approximately $105 million in salary alone. He owns multiple homes in multiple states and multiple cars worth over a million dollars. His new counsel is adept at trying cases throughout the country and trial in this case is only expected to last three weeks. Against this backdrop, Rozier cannot meet his burden of establishing that trial in the Eastern District of New York is so unduly burdensome that fairness requires transfer, and the Court should deny his motion in its entirety.

I.     Background

    a.  The Superseding Indictment

        For taking a bribe in exchange for removing himself early from a professional

basketball game so that others could bet on, and profit from, his underperformance, Rozier is

charged in a speaking superseding indictment with four crimes: conspiring to deprive the

sportsbooks of money (Count One); (ii) conspiring to deprive his team and sports league of his

honest services (Count Four); (iii) conspiring to commit bribery in sports (Count Three) and

(iv) conspiring to launder the proceeds of these other three crimes (Count Two).  See United

States v. Earnest, 25-CR-323, ECF No. 101 ("Superseding Indictment" or "SI").  Venue in the

Eastern District of New York is properly alleged in the Superseding Indictment.  E.g., SI ¶¶ 71

(alleging the crime took place "within the Eastern District of New York and elsewhere"); 41(b)

("While located within the Eastern District of New York, Pham [a co-conspirator], among other

things, engaged in communications regarding and in furtherance of the fraudulent wagering

scheme").  And although the full facts of the case have not yet been presented in Court, co-

conspirators who were charged earlier have already pled guilty and allocuted that aspects of the

scheme took place in the Eastern District of New York.  E.g., United States v. Timothy

McCormack, 24-CR-490 (LDH), Dkt. No. 68 at 31 (plea transcript); United States v. Long Phi

Pham, 24-CR-359 (LDH), Dkt. No. 61 at 36 (plea transcript).

    b.  The Defendant's Motion

        Rozier moves to transfer his case only to the Southern District of Florida under

Federal Rule of Criminal Procedure 21(b).  Rozier asserts that a number of the relevant factors

that courts consider in assessing a Rule 21(b) transfer militate in favor of transfer and others are

neutral.  See generally Terry Rozier's Motion to Transfer ("Def.'s Mot."), United States v.

Earnest, et al., No. 25-CR-323 (LDH) (E.D.N.Y. July 31, 2026) (ECF No. 125). As shown herein, most of the factors strongly militate against transfer and the defendant cannot overcome the baseline presumption that cases should remain in the district in which they were charged. The defendant's arguments should be rejected.

II.    Applicable Law

  a.  Legal Standard for a Motion to Transfer

Federal Rule of Criminal Procedure 21(b) permits a court to transfer a proceeding against a defendant to another district "for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b). In assessing transfer motions under Rule 21(b), courts should consider the following factors: (1) location of the defendants; (2) location of the possible witnesses; (3) location of the events likely to be at issue; (4) location of relevant documents and records; (5) potential for disruption of the defendants' businesses if transfer is denied; (6) expenses to be incurred by the parties if transfer is denied; (7) location of defense counsel; (8) relative accessibility of the place of trial; (9) docket conditions of each potential district; and (10) any other special circumstance that might bear on the desirability of transfer. See United States v. Maldonado-Rivera, 922 F.2d 934, 966 (2d Cir. 1990) (citing Platt v. Minn. Mining & Mfg. Co., 376 U.S. 240, 243-44 (1964)). "No one of these considerations is dispositive, and 'it remains for the court to try to strike a balance and determine which factors are of greatest importance.'" Id. (quoting United States v. Stephenson, 895 F.2d 867, 875 (2d Cir. 1990)).

"As a general rule, criminal prosecutions should be retained in the district in which they were initially filed." United States v. Flom, No. 14-CR-507 (RRM), 2015 WL 6506628, at *2 (E.D.N.Y. Oct. 27, 2015) (collecting cases). For that reason, the defendant bears

3

the burden of justifying a transfer under Rule 21(b).  Id.; see also United States v. Perri, No. 25-CR-2779 (SRU), 2025 WL 3206496, at *1 (E.D.N.Y. Nov. 17, 2025).  The defendant's burden under Rule 21(b) "is not often or easily met."  Naumovski, 2023 WL 5278437, at *2 (quoting United States v. Larsen, No. 13-CR-688 (JMF), 2014 WL 177411, at *2 (S.D.N.Y. Jan. 16, 2014)).  "To warrant a transfer from the district where an indictment was properly returned it should appear that a trial there would be so unduly burdensome that fairness requires the transfer to another district."  Id.

III.　　　Argument

　　　a.　Factor 1 – Location of Defendant

　　　　A defendant's place of residence "has no independent significance in determining whether transfer to that district would be 'in the interest of justice.'"  Platt, 376 U.S. at 245.  Though courts within the Second Circuit have recognized that "as a matter of policy, courts should, wherever possible, try defendants where they reside," United States v. Fiorentino, No. 13-CR-338 (SJF), 2014 WL 108415, at *4 (E.D.N.Y. Jan. 6, 2014) (quotation marks and internal citations omitted), "[i]t is also clear, however, that inconvenience to the defendant or his business is not, by itself, a sufficient basis for a transfer of venue," United States v. Antia, No. 97-CR-733 (RJD), 1999 WL 294788, at *2 (E.D.N.Y. 1999).  Further, "this factor is not dispositive" in a Rule 21(b) transfer analysis.  Flom, 2015 WL 6506628, at *3.  Rozier states that he resides in the Southern District of Florida, but provides no further evidence of any meaningful connection to that district.  Rozier was born and raised in Ohio, lived in North Carolina at the time of the events relevant to his involvement in this case and only moved to Florida in 2024.

　　　　In cases in which courts have found this factor to weigh significantly in favor of transfer, the defendant has had much more substantial ties to the transferee district.  For example, in United States v. Fiorentino, the court found this factor favored transfer from the Eastern

4

District of New York to the Southern District of Florida where the defendant (i) was a lifelong resident of Miami, (ii) needed to be in Florida to care for his elderly and infirm mother who had recently suffered a series of strokes, and (iii) had always worked in southern Florida, including when he was president of the Florida-based company that was at the center of the indictment. See Fiorentino, 2014 WL 108415, at *3-4. Similarly, in United States v. Layne—a case cited by the defendant in which the court transferred the case from the Southern District of New York to the Southern District of Florida—the two defendants had lived in Florida for 32 years and 11 years and one of the defendants had for five years been serving as the legally designated primary medical decision maker and medical proxy for his incapacitated mother, who also lived in Miami. Opinion & Order at 3, United States v. Layne, No. 05-CR-87 (HB) (S.D.N.Y. May 2, 2005). Likewise, in United States v. Hanley, which the Layne court relied on, the defendant resided in California with his wife and three-year-old daughter and had caretaking responsibilities for his elderly mother whom he visited four times per week. See United States v. Hanley, No. 94-CR-394 (DAB), 1995 WL 60019, at *2 (S.D.N.Y. Feb. 10, 1995).

At most, Rozier's residence in the Southern District of Florida only weakly favors transfer and it is certainly not dispositive. See United States v. Gunn, No. 22-CR-314 (HG), 2022 WL 17250494 (E.D.N.Y. Nov. 28, 2022) (denying transfer despite defendant's residence in transferee district); Flom, 2015 WL 6506628 (same); Antia, 1999 WL 294788 (same).

b. Factor 2 – Location of the Witnesses

Although the defendant claims (without citation to any case) that the "location of witnesses is one of the most significant factors under Rule 21(b)," Def.'s Mot. at 7, the defendant has not identified any witnesses who reside in the Southern District of Florida or any witnesses as to whom travel to the Eastern District of New York would be more burdensome than travel to

the Southern District of Florida.  In fact, Rozier does not specifically identify any witnesses he intends to call, but rather generically alludes to witnesses based in the Southeast and offers to provide the Court with a list of witnesses ex parte.  Further, Rozier improperly attempts to shift the burden applicable to his transfer motion to the government by arguing that the government's witnesses are not based in the Eastern District of New York and proposing that the government identify its witnesses to disprove that baseless assertion.  Id.

The burden is on the defendant to affirmatively establish that the Platt elements favor transfer and, as applicable to this factor, to identify with specificity the relevant trial witnesses, the nature of their testimony and the hardship that will befall the witnesses absent transfer.  "As the burden of justifying a transfer rests on [the] Defendant, he must specifically describe how particular witnesses would be entirely prevented from testifying at trial in this District."  Naumovski, 2023 WL 5278437, at *3 (internal alterations and quotations omitted); see also Perri, 2025 WL 3206496, at *4 (same); United States v. Rinsch, 807 F. Supp. 3d 238, 254 (S.D.N.Y. 2025) (same).  "In other words, the mere inconvenience to witnesses is not dispositive; witnesses must fully be unable to testify in this District."  Rinsch, 807 F. Supp. 3d at 254.  Rozier—who has not so much as identified a single witness, much less a witness who would be unable to testify in the Eastern District of New York—has failed to meet this standard.

Further, in order to establish that a prospective witness is incapable of testifying in the charging district, the defendant must establish that he is financially incapable of paying for his witness's travel expenses.

> "[T]he defendant's burden will not be met by a bare recitation of distance. To meet his burden under this factor the defendant must offer concrete examples of expected testimony and demonstrate that he is financially incapable of paying the witnesses' travel expenses . . . Defendant has the burden of demonstrating that that he is financially incapable of transporting

6

witnesses to the [charging district], and that trial in the [transferee district] would be less onerous."

United States v. Cournoyer, No. 12-CR-65 (SLT), 2012 WL 6539659, at *6 (E.D.N.Y. Dec. 14, 2012); see also Perri, 2025 WL 3206496, at *4 (citing Cournoyer); Flom, 2015 WL 3506628, at *5 ("On balance, the location of witnesses does not weigh in favor of transfer, given defendant's failure to provide concrete examples of witness testimony as well as the hardship of producing witnesses in New York, points on which defendant bears the burden, and when weighed against the presence in New York of a majority of the government's witnesses and evidence").  Rozier has not established that he would be unable to pay for his witnesses' travel expenses and it is exceedingly unlikely that he would not be able to shoulder that financial burden in light of his extensive career as a professional basketball player.  Rozier has played in the NBA since 2015 and has signed contracts worth over approximately $105 million in that span.  In addition, Rozier owns multiple homes, including one valued at approximately $6 million, and multiple vehicles worth, in total, over a million dollars.

Further, this factor does not consider only the defendant's prospective witnesses, but also the government's witnesses.  "Since both parties may call witnesses and produce evidence, consideration must be given to the convenience of both prospective prosecution and defense witnesses."  Antia, 1999 WL 294788, at *2.  At the very least, the law enforcement witnesses that the government intends to call all reside in the New York area.  See id. (government's law enforcement witnesses' residence in New York area militates against transfer).  Likewise, the NBA, one of Rozier's victims, is headquartered in New York City and prospective witnesses who are NBA employees are located here.

Accordingly, the defendant has certainly not carried his burden to show that this factor favors transfer and, if anything, this factor affirmatively weighs against transfer.

c. Factor 3 – Location of the Events at Issue

Rozier has not identified a single event relevant to the charged conspiracy that occurred in the Southern District of Florida. Nor does the Superseding Indictment allege that a single event of any relevance occurred in the Southern District of Florida. In fact, there is no basis based on the defendant's submission for the Court even to conclude that venue would properly lie in the Southern District of Florida. At most, Rozier argues that many of the key events described in the Superseding Indictment occurred outside the Eastern District of New York, such as in Charlotte and Ohio, and baldly asserts—with no case cited in support—that "[w]hat matters under this factor is that none of the relevant events occurred in this District." Def.'s Mot. at 8. Given that venue in the Eastern District is alleged in the Superseding Indictment; co-conspirators such as Pham and McCormack have already allocuted to conduct in the Eastern District; and that new counsel has not identified a single event relevant to the charged conspiracy that occurred in Florida, we respectfully submit that such an assertion should not be credited.

Actually, what matters under this factor is whether there are substantial events that occurred in the transferee district such that transfer is warranted. "Transfer of venue may be in the interest of justice where the 'nerve center' of the conduct charged in an indictment is in a district other than the original district." Cournoyer, 2012 WL 6539659, at *7. However, when "the criminal activity that was alleged to have occurred in this case was national and even international in scope . . . the location of events at issue favors neither party." Id. (quoting United States v. Guastella, 90 F. Supp. 2d 335, 339 (S.D.N.Y. 2000)); see also Naumovski, 2023 WL 5278437, at *3 (finding, despite the fact that the company through which the defendant allegedly perpetrated the charged fraud was located in the transferee district, that this factor

8

affirmatively weighed against transfer because "the alleged criminal scheme involved national and international conduct"); Flom, 2015 WL 3506628, at *6 ("Because the criminal activity alleged in this case was interstate in scope . . . the location of events at issue favors neither [the defendant] nor the government").

Accordingly, this factor weighs against transfer.

d. Factor 4 – Location of Documents and Records

"The fourth factor is not especially important because the 'conveniences of modern transportation and communication' make the precise location of the documents at issue 'a minor concern.'" Perri, 2025 WL 3206496, at *5 (quoting Rinsch 807 F. Supp. 3d at 254). Though the defendant raises the specter of certain physical records being located in the Southeast, he pointedly does not assert that they are located in the Southern District of Florida, nor does he articulate why such records, were they to be used at trial, would not be scanned and electronically produced in advance of trial. Accordingly, this factor is neutral.

e. Factor 5 – Disruption of Defendant's Business

"Potential disruption to a defendant's business may be a factor favoring transfer, but 'a criminal trial invariably imposes burdens upon a defendant and brings in its wake dislocation from normal occupational and personal activities.'" Flom, 2015 WL 3506628, at *7 (quoting United States v. Coriaty, No. 99-CR-1251 (DAB), 2000 WL 1099920, at *3 (S.D.N.Y. Aug. 7, 2000)). Further, courts assessing this factor note that a criminal defendant will face a disruption to their business activities during the duration of trial no matter where the trial occurs. See Antia, 1999 WL 294788, at *2 (The defendant "will of course have to take time off from work to attend his trial whether the trial takes place in California or New York"); see also

9

Coriaty, 2000 WL 1099920, at *3 ("it is unclear why trial time spent in New York would be more harmful than trial time spent in Florida").

Though the defendant states that preparing for and attending a trial in the Eastern District of New York would "disrupt his training regimen, separate him from his trainers and facilities, and ultimately limit his ability to return to the game," Def.'s Mot. at 9, realistically the defendant would only need to relocate to New York for approximately one month. The New York-metro area has an abundance of training facilities and undoubtedly scores of trainers available to assist Rozier with his training program. The New York Knicks and the Brooklyn Nets (both of which are NBA teams) train here (as do many other professional sports teams). Further, Rozier's professed reliance on a specific set of trainers is belied by the fact that his longtime trainer is on the no-contact list and Rozier is not presently working with him. In other cases in which courts have analyzed this factor, courts have found that the availability of workarounds to business disruptions mitigates the persuasiveness of this factor. See, e.g., Flom, 2015 WL 3506628, at *7 ("Modern technology, including phones, e-mail, and other methods of communication, could easily mitigate any concerns" regarding business disruptions caused by trial); Cournoyer, 2012 WL 6539659, at *7 ("modern communications may alleviate disruption to a defendant's business"). Though these cases have arisen in the business context, they are nevertheless informative given the availability of training facilities and trainers in New York which mitigate any theoretical disruption to the defendant's business activities.

  f.  Factor 6 – Expense to the Parties

"In considering expense to the parties, the Court should consider both expense to the defendant if the case were tried in New York, as well as the expense to the government were there a change of venue." Flom, 2015 WL 3506628, at *7. Though any trial outside a

10

defendant's home district would require the defendant to incur additional expenses, "the focus of this factor is the defendant's ability to pay, not the size of the expense." Id. "Before the relative cost of trial in two districts becomes a relevant consideration, the moving party must make a showing that the cost of trial in the original district would be unduly onerous to this particular defendant." Cournoyer, 2012 WL 6539659, at *7 (citing United States v. Valdes, No. 05-CR-156 (KMK), 2006 WL 738403, at *7 (S.D.N.Y. Mar. 21, 2006)); see also Naumovski, 2023 WL 5278437, at *4 ("Defendant argues simply that the requested transfer would . . . reduce the parties' expenses by avoiding the need to bring witnesses from North and South Carolina to the Eastern District of New York. This is insufficient to demonstrate Defendant is 'financially incapable of funding his defense' if the trial were to proceed in this District.") (quoting United States v. Blakstad, No. 19-CR-486 (ER), 2020 WL 5992347, at *5 (S.D.N.Y. Oct. 9, 2020)).

Aside from stating that he would have to bear the cost of travel and lodging for himself, his counsel and his witnesses, Rozier has provided no evidence that he is financially incapable of paying for these expenses or that paying for these expenses would be unduly onerous. In light of Rozier's substantial personal wealth, he has not made such a showing. On the other hand, if the case were transferred, the government would be required to pay for relocating its entire team of prosecutors, support staff, law enforcement officers and witnesses— and Rozier would still likely have to bear the cost of travel and lodging for defense witnesses if only to Florida instead of New York. Under such circumstances, this factor weighs against transfer or is, at worst, neutral. See Perri, 2025 WL 3206496, at *4 ("Perri similarly fails on the sixth factor, because he provides no evidence that he would be financially burdened if the case remained in the EDNY. In contrast, the government would be forced to 'shoulder the lion's

11

share of costs' if it were required to relocate its legal staff and all its witnesses to the District of Connecticut.") (quoting <u>Rinsch</u>, 807 F. Supp. 3d at 254).

g. <u>Factor 7 – Location of Counsel</u>

Newly retained counsel for the defendant resides and practices in the Southern District of Florida. The defendant's prior counsel was based in Washington, D.C. Rozier has been aware of the U.S. Attorney's Office for the Eastern District of New York's investigation since as early as January 30, 2025, when prior counsel contacted the government following public news reporting of the government's investigation. And Rozier was indicted in the Eastern District of New York in October 2025, approximately eight months before current counsel was retained. Put simply, Rozier knew about the possibility or reality of a criminal case against him in the Eastern District of New York for nearly a year and a half before he retained counsel who practices in the Southern District of Florida. Under such circumstances, the location of retained counsel "adds little to the transfer analysis." <u>Flom</u>, 2015 WL 3506628, at *8 (defense counsel was aware of location of investigation when they assumed representation, thus militating against transfer); <u>see</u> <u>also</u> <u>Antia</u>, 1999 WL 294788, at *3 (discounting location of counsel where the defendant and his counsel "knew approximately one week after [the defendant]'s arrest that charges were pending in New York").

Further, counsel's website boasts that the firm "tries cases and handles appeals nationwide" and "is deliberately selective, accepting only a small number of cases at any given time so its lawyers can devote total focus to each engagement." <u>Firm Profile</u>, Markus/Moss PLLC, https://markuslaw.com/firm-profile/ (last visited July 20, 2026). Since 2021, outside of the Southern District of Florida, counsel has handled cases in the District of Colorado, the Eastern District of Missouri, the Northern District of Florida, the Second Circuit Court of

Appeals, the Tenth Circuit Court of Appeals and the United States Supreme Court. Clearly, handling a three-week trial in the Eastern District of New York poses no meaningful burden on counsel. Accordingly, this factor is neutral or at most weakly favors transfer.

h. Factor 8 – Relative Accessibility of Place of Trial

Both the Eastern District of New York and the Southern District of Miami are highly accessible locations. In particular, the metro-New York area "possesses 'superior access to three airports, numerous train lines and an abundance of hotel accommodations.'" Naumovski, 2023 WL 5278437, at *4 (quoting United States v. Spy Factory, Inc., 951 F. Supp. 450, 460 (S.D.N.Y. 1997) (Sotomayor, J.)). Accordingly, this factor is neutral.

i. Factor 9 – Docket Conditions in Each District

Rozier concedes that neither of the dockets in the Eastern District of New York nor the Southern District of Florida "is so congested as to bear on this motion," Def.'s Mot. at 10. However, the Court has presided over this case for over nine months and over other related cases since June 2024. The Court's attendant familiarity with the facts and circumstances of this case weighs against transfer. See Flom, 2015 WL 3506628, at *8 ("this Court has presided over this and two other related cases for well over a year, and is fully familiar with their facts and circumstances"). Further, the fact that a trial date has already been set in this District militates against transfer. See Naumovski, 2023 WL 5278437, at *4 (collecting cases for proposition that set trial date in charging district militates against transfer). Accordingly, this factor weighs against transfer.

j. Factor 10 – Special Elements and the Interests of Justice

The defendant principally argues that the lack of connection between his own conduct and the Eastern District of New York, and the discrete and severable nature of his

13

conduct, militate in favor of transfer. Def.'s Mot. at 11. However, Rozier fails to identify any conduct that occurred in the Southern District of Florida and there is no basis on this record for the Court to determine that venue properly lies in the Southern District of Florida. To prevail on a Rule 21(b) motion, the defendant must establish that "a trial in the district where the indictment was properly returned 'would be so unduly burdensome that fairness requires the transfer to another district of proper venue where a trial would be less burdensome.'" Flom, 2015 WL 3506628, at *2 (quoting United States v. U.S. Steel Corp., 233 F. Supp. 154, 157 (S.D.N.Y. 1964) (emphasis added). Here, the defendant's failure to establish that venue would properly lie in the Southern District of Florida is a glaring "special element" that weighs against transfer. If the Court were to grant the defendant's motion, the defendant could conceivably then move to dismiss the case entirely for lack of venue and escape prosecution altogether.

The defendant also argues that the fact that Rule 21(b) allows for the transfer of a single defendant's case militates in favor of transfer. While it is true that Rule 21(b) allows for the transfer of a single defendant's case even in a multi-defendant case, the fact that there are four remaining defendants in this case and Rozier is the only defendant seeking transfer strongly weighs against transfer. If the Court were to grant Rozier's motion, the government would have to prove its case—which involves establishing a single conspiracy comprised of multiple co-conspirators—at least twice, once in the Southern District of Florida as to Rozier and again in the Eastern District of New York as to the remaining defendants. Multiple trials would necessitate the same universe of witnesses—including civilian and victim witnesses—testifying multiple times, in multiple locations; would require two sets of juries to be impaneled, thereby exacerbating the strain and disruption on everyday citizens' lives; would delay the courts in rendering service and delivering justice in other cases; and would require taxpayer dollars to

14

needlessly be spent on the government presenting two complex trials rather than one.  These possibilities weigh strongly against transfer.  See Cournoyer, 2012 WL 6539659, at *8 ("In this case it is particularly relevant that Cournoyer, alone amongst the defendants, has moved for a transfer of venue.  Severance of Cournoyer's case from that of his codefendants would require the government to prove its case multiple times.  Judicial economy would not be served by a transfer of venue."); see also Coriaty, 2000 WL 1099920, at *4 ("The possibility of dual prosecution is a special factor courts have considered in assessing the balance of inconveniences . . . [T]ransfer of Defendant Coriaty's prosecution to Florida, would result in substantial additional government expense and place a double burden on the judiciary . . . Accordingly, this factor weighs strongly against transfer."); United States v. Aronoff, 463 F. Supp. 454 (S.D.N.Y. 1978) (transfer resulting in two separate trials "is a result of no small consequence").

Further, Rozier overstates the severability of his case from his co-defendants' cases.  The defendants are alleged to be members of a single conspiracy and the conduct of each of the defendants is probative of the existence of the conspiracy.  Moreover, one of the remaining defendants is Deniro Laster, who is Rozier's lifelong best friend and a key figure in Rozier's deliberate early exit from the March 23, 2023 game at issue in this case (the "March 23 Game").  And another of the remaining defendants, Shane Hennen, was responsible for, among other things, utilizing a nationwide network of straw bettors to place hundreds of thousands of dollars' worth of bets on Rozier's performance in the March 23 Game.  Simply put, multiple of the remaining defendants' conduct is closely tied to Rozier, undercutting the force of Rozier's severability argument.

Finally, this Court already has a deep familiarity with this case and other sports gambling cases, and the legal issues that are likely to arise in this case.  This familiarity results in

15

greater judicial economy by retaining Rozier's case in the Eastern District of New York. The Court is already presiding over <u>United States v. Mollah</u>, 24-CR-389, <u>United States v. Porter</u>, 24-CR-270, <u>United States v. Pham</u>, 24-CR-359, <u>United States v. McCormack</u>, 24-CR-490, <u>United States v. Awawdeh</u>, 24-CR-488 and <u>United States v. Beasley, et al.</u>, 26-CR-190, all of which are formally related to the instant case. Each of these cases involve similar schemes and the same government prosecutors and law enforcement agents. In addition, the Court has already accepted multiple guilty pleas in these cases and sentenced one defendant. This overlap creates judicial economy in the Court retaining this case and weighs against transfer. <u>See</u> <u>Flom</u>, 2015 WL 3506628, at *10 ("The government also contends that the interests of judicial economy weigh in favor of keeping this case in the same district as [two other cases before the same court] . . . The government asserts that all of these cases involve similar schemes and involve the same government prosecutors, FBI agents, and undercover agent, and it would be more economical for one judge to handle those cases. The Court agrees."). In addition, this Court has already reviewed and heard oral argument on the defendant's first motion to dismiss, heard and decided other substantive motions, and scheduled a trial date.

For these reasons, the special elements considered under this factor weigh heavily against granting the defendant's motion to transfer.

<u>CONCLUSION</u>

For the reasons set forth above, the government respectfully submits that the defendant's motion to transfer should be denied.

Dated: Brooklyn, New York
July 20, 2026

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

_____/s/_____
Kaitlin T. Farrell
Benjamin Weintraub
David I. Berman
Assistant U.S. Attorneys
(718) 254-7000

Cc: Clerk of the Court (LDH)
Defense Counsel of Record (By ECF)