JPL:KTF/BLW/DIB
F:#2024R00288

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

ERIC EARNEST,
      also known as "Spook,"
SHANE HENNEN
      also known as "Sugar,"
DENIRO LASTER,
      also known as "Niro," "Payso"
      and "Peso," and                    25-CR-323 (S-1) (LDH)
TERRY ROZIER,
      also known as "Scary Terry" and
      "Chum,"

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## GOVERNMENT'S RESPONSE IN OPPOSITION TO
## <u>DEFENDANT ROZIER'S MOTION TO DISMISS THE SUPERSEDING INDICTMENT</u>

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Kaitlin T. Farrell
Benjamin Weintraub
David I. Berman
Assistant U.S. Attorneys
(Of Counsel)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ......................................................................................................................1

   I.   The Allegations of the Indictments ...............................................................................1

LEGAL STANDARD................................................................................................................3

ARGUMENT............................................................................................................................4

   I.   The Court Should Not Dismiss the Sports Bribery Charge on the Merits ............................4

      A.  The Sports Bribery Act is a Broadly Applicable Statute....................................................4

      B.  The Sports Bribery Act Applies to Rozier's Conduct........................................................7

   II.  The Court Should Not Dismiss the Sports Bribery Charge on Venue Grounds ..................10

      A.  Venue Legal Standard .................................................................................................10

      B.  Venue is Properly Alleged in Count Three ...................................................................12

   III. The Court Should Not Dismiss the Honest Services Charge ...........................................12

      A.  Honest-Services Wire Fraud Criminalizes Schemes to Deprive a Principal of the Right to Honest Services through Bribery ...................................................................13

      B.  Rozier Deprived the Hornets and NBA of His Honest Services by Participating in a Secret Bribery Scheme ...................................................................16

      C.  Rozier's Disclosure of Nonpublic Information Was Charged in Count One and Does Not Foreclose Count Four ..............................................................................17

      D.  There is No Deprivation of Property Element in an Honest-Services Fraud Theory.......18

      E.  The Superseding Indictment Sufficiently Alleges a Duty to the NBA ..........................19

   IV. Counts One and Four are Not Multiplicitous...............................................................20

      A.  Multiplicity Legal Standard.........................................................................................20

      B.  The Counts are Not Multiplicitous ..............................................................................21

CONCLUSION........................................................................................................................22

Page(s)

Cases

United States v. Boyland,
862 F.3d 279 (2d Cir. 2017)..................................................................................... 18

Blockburger v. United States,
284 U.S. 299 (1932)................................................................................................ 20

Carpenter v. United States,
484 U.S. 19 (1987).................................................................................................. 12

Ciminelli v. United States,
598 U.S. 306 (2023)................................................................................................ 19

Hamling v. United States,
418 U.S. 87 (1974).................................................................................................... 4

Knapp v. Leonardo,
46 F.3d 170 (2d Cir.1995)....................................................................................... 20

McNally v. United States,
483 U.S. 350 (1987)................................................................................................ 14

Murphy v. Nat'l Collegiate Athletic Ass'n,
584 U.S. 453 (2018).................................................................................................. 9

Percoco v. United States,
598 U.S. 319 (2023)..................................................................................... 15, 16, 19

Perrin v. United States,
444 U.S. 37 (1979)............................................................................................ passim

Skilling v. United States,
561 U.S. 358 (2010)........................................................................... 13, 14, 16, 19

United States v. Abdelaziz,
68 F.4th 1 (1st Cir. 2023)................................................................................... 16, 17

United States v. Alshahhi,
No. 21-CR-371 (BMC), 2022 WL 2239624 (E.D.N.Y. June 22, 2022)................... 11

United States v. Bahel,
662 F.3d 610 (2d Cir. 2011)..................................................................................... 18

United States v. Barrett,
153 F. Supp. 3d 552 (E.D.N.Y. 2015) ..................................................................... 11

United States v. Budovsky,
No. 13-CR-368 (DLC), 2015 WL 5602853 (S.D.N.Y. Sept. 23, 2015) ..................... 4

United States v. Burke,
700 F.2d 70 (2d. Cir. 1983)........................................................................................ 6

United States v. Chacko,
169 F.3d 140 (2d Cir. 1999)..................................................................................... 20

United States v. Czubinski,
106 F.3d 1069 (1st Cir. 1997)............................................................................. 12, 16

United States v. De La Pava,
268 F.3d 157 (2d Cir. 2001)....................................................................................... 3

United States v. DiNapoli,
557 F.2d 962 (2d Cir. 1977)............................................................................. 6

United States v. Dixon,
509 U.S. 688 (1993)................................................................................... 20, 21

United States v. Faison,
393 F. App'x 754 (2d Cir. 2010) ..................................................................... 4

United States v. Geibel,
369 F.3d 682 (2d Cir. 2004)........................................................................... 11

United States v. Gerry,
515 F.2d 130 (2d Cir. 1975)............................................................................. 6

United States v. Goldberg,
756 F.2d 949 (2d Cir. 1985)............................................................................. 3

United States v. Harper,
No. 13-CR-601 (RJD), 2015 WL 6029530 (E.D.N.Y. Oct. 15, 2015) ............... 13, 20

United States v. Lange,
No. 10-CR-968 (DLI), 2012 WL 511448 (E.D.N.Y. Feb. 15, 2012) ...................... 11

United States v. LaSpina,
299 F.3d 165 (2d Cir. 2002)............................................................................. 4

United States v. Margiotta,
688 F.2d 108 (2d Cir. 1982)........................................................................... 15

United States v. Mazzei,
700 F.2d 85 (2d. Cir. 1983)............................................................................. 6

United States v. Milovanovic,
678 F.3d 713 (9th Cir. 2012) ..................................................................... 14, 20

United States v. Motz,
652 F. Supp. 2d 284 (E.D.N.Y. 2009) ............................................................. 11

United States v. Napout,
963 F.3d 163 (2d Cir. 2020)................................................................... 7, 18, 19

United States v. Nardello,
393 U.S. 286 (1969)......................................................................................... 6

United States v. O'Hagan,
521 U.S. 642 (1997)....................................................................................... 12

United States v. Pinto,
503 F.2d 718 (2d Cir. 1974)............................................................................. 5

United States v. Ramirez,
420 F.3d 134 (2d Cir. 2005)........................................................................... 12

United States v. Raniere,
384 F. Supp. 3d 282 (E.D.N.Y. 2019) ............................................................... 3

United States v. Reed,
773 F.2d 477 (2d Cir. 1985)........................................................................... 11

United States v. Rigas,
490 F.3d 208 (2d Cir. 2007)............................................................................. 4

United States v. Rommy,
506 F.3d 108 (2d Cir. 2007)........................................................................... 12

United States v. Rutigliano,
790 F.3d 389 (2d Cir. 2015)..................................................................... 11, 12

United States v. Rybicki,
  287 F.3d 257 (2d Cir. 2002)................................................................ 16
United States v. Rybicki,
  354 F.3d 124 (2d Cir. 2003)........................................................ passim
United States v. Scully,
  108 F. Supp. 3d 59 ..................................................................... 20, 21
United States v. Silver,
  864 F.3d 102 (2d Cir. 2017)................................................................ 8
United States v. Stavroulakis,
  952 F.2d 686 (2d Cir. 1992)................................................................ 4
United States v. Stringer,
  730 F.3d 120 (2d Cir. 2013).................................................... 3, 4, 20
United States v. Torres,
  191 F.3d 799 (7th Cir. 1999) ............................................................. 4
United States v. Walsh,
  544 F.2d 156 (4th Cir. 1976) ............................................................. 7
United States v. Walters,
  997 F.2d 1219 (7th Cir. 1993) ..................................................... 12, 16
Whitfield v. United States,
  543 U.S. 209 (2005)........................................................................ 11

Statutes

18 U.S.C. 224(a) ................................................................................... 7
18 U.S.C. 224(b)................................................................................... 8
18 U.S.C. 224(c) ................................................................................... 7
18 U.S.C. § 224..................................................................................... 4
18 U.S.C. § 1346............................................................ 13, 14, 16, 19
18 U.S.C. § 3237(a) ........................................................................... 11
18 U.S.C. §§ 1341 .............................................................................. 13
18 U.S.C. §§ 1343 .............................................................................. 13

Rules

Fed. R. Crim. P. 7(c)(1) ...................................................................... 3
Fed. R. Crim. P.12 ............................................................................... 3
Fed. R. Crim. P.18 ......................................................................... 10, 11

Legislative History

109 Cong. Rec. 2016 (1963) ...............................................................5
110 Cong. Rec. 920 (1964) .............................................................5, 8

<u>PRELIMINARY STATEMENT</u>

For taking a bribe in exchange for removing himself early from a professional basketball game so that others could bet on, and profit from, his underperformance, defendant Terry Rozier ("Rozier") is charged with four distinct but related crimes: conspiring to deprive the sportsbooks of money (Count One); (ii) conspiring to deprive his team and sports league of his honest services (Count Four); (iii) bribery in sports (Count Three); and (iv) conspiring to launder the proceeds of these other three crimes (Count Two). A grand jury returned an indictment on Counts One and Two in October 2025. After developing additional evidence that Rozier solicited and accepted a bribe to remove himself from the game, the government obtained a superseding indictment in May 2026, which added Counts Three and Four.

Rozier previously moved to dismiss Counts One and Two. He now moves to dismiss Counts Three and Four on the grounds that these statutes targeting private-sector bribery—specifically, bribery in sports and bribery to induce an agent to defraud his principal of the agent's honest services—somehow don't address Rozier's heartland bribery conduct. This is wrong. For the reasons described below, the Court should deny this motion, just as it should also deny the defendant's first motion to dismiss.

<u>BACKGROUND</u>

I.      <u>The Allegations of the Indictments</u>

The original indictment alleged a nationwide scheme in which the defendants and their co-conspirators agreed to: use nonpublic information about professional athletes' anticipated underperformance, at times preplanned by the athletes, or non-participation in National Basketball Association ("NBA") games; lie about it so they could bet on the information and steal money from betting operators, including sportsbooks; and then launder that money. <u>United States v. Earnest</u>, 25-CR-323, ECF No. 1 ("Indictment" or "Ind.") at ¶¶ 30-34,

64, 66.  One of several schemes comprising the conspiracy revolved around Rozier who, at the time, was a professional basketball player in the NBA and a starting shooting guard for the Charlotte Hornets.  Id. ¶¶ 36-43.[1]

The Superseding Indictment added two charges related to a more closely held bribery scheme that took place simultaneously alongside aspects of the larger scheme.  United States v. Earnest, 25-CR-323, ECF No. 101 ("Superseding Indictment" or "SI") at ¶¶ 37-46.  The government developed evidence not only that Rozier conspired to remove himself early from a professional basketball game so that his co-conspirators could profit from betting on that information, but also that he solicited an approximately $100,000 bribe to do so.  On March 23, 2023, without reporting the extent of his injury or seeking to be listed on the injury report, which is made public before every NBA game, Rozier removed himself during the first quarter of the game due to a supposed sore foot.  His team, the Hornets, lost the game.  His co-conspirators and bribe payors—armed with the advanced knowledge that Rozier planned to remove himself early from the game due to a purported injury—profited on a variety of bets predicated on his underperformance.  Not all the bets placed by Rozier's co-conspirators were successful. Rozier collected four rebounds, thus going over his betting line on that statistic.  As a result, following the game, the co-conspirators negotiated to reduce the bribe amount to approximately $70,000.

Later that week, Rozier arranged and paid for his close friend and co-conspirator Deniro Laster ("Laster") to fly to Philadelphia to pick up the bribe proceeds.  Rozier also offered to arrange and pay for Laster to return from Philadelphia to Rozier's house with the bribe

---

[1] The basic principles of sports gambling are explained in the Indictment and familiarity with such principles is assumed for the purposes of this motion response.  See id. ¶¶ 22-29.

proceeds in a rental car.  While in Philadelphia, Laster stayed at a casino[2] and picked up approximately $70,000 cash from co-conspirators.  He then drove hundreds of miles through the night to Rozier's house, where Laster and Rozier photographed themselves counting the cash.

<u>LEGAL STANDARD</u>

Federal Rule of Criminal Procedure 12 states that a defendant may move before trial to dismiss an indictment that lacks "specificity" or "fail[s] to state an offense."  Fed. R. Crim. P. 12(b)(3)(B)(iii), (v).  "The dismissal of an indictment is an extraordinary remedy reserved only for extremely limited circumstances implicating fundamental rights."  <u>United States v. Raniere</u>, 384 F. Supp. 3d 282, 299 (E.D.N.Y. 2019) (quoting <u>United States v. De La Pava</u>, 268 F.3d 157, 165 (2d Cir. 2001)).  In evaluating a motion to dismiss, the Court "accept[s] as true all of the allegations of the indictment."  <u>United States v. Goldberg</u>, 756 F.2d 949, 950 (2d Cir. 1985).

An indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  But in order "to satisfy the pleading requirements of Rule 7(c)(1), an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."  <u>United States v. Stringer</u>, 730 F.3d 120, 124 (2d Cir. 2013) (internal quotation marks and citation omitted).  "An indictment is sufficient if it first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same

---

[2] At the outset of his motion, to proclaim his innocence, Rozier quotes a text message between Laster and a third party, written by Laster while he was in Philadelphia, that reads "Dont [sic] tell Chum bout the bet."  Chum is a nickname for Rozier.  The government's investigation has developed evidence from multiple sources that this text chain does not relate to sports gambling.

offense." Id. (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)). "[T]he indictment need only allege the 'core of criminality' the Government intends to prove at trial, since the indictment is 'read . . . to include facts which are necessarily implied by the specific allegations made.'" United States v. Budovsky, No. 13-CR-368 (DLC), 2015 WL 5602853, at *3 (S.D.N.Y. Sept. 23, 2015) (alteration in original) (quoting United States v. Rigas, 490 F.3d 208, 229 (2d Cir. 2007)); see also United States v. Faison, 393 F. App'x 754, 757 (2d Cir. 2010); United States v. LaSpina, 299 F.3d 165, 177 (2d Cir. 2002)). Finally, when reviewing an indictment for sufficiency, "common sense must control." United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992); see also United States v. Torres, 191 F.3d 799, 805 (7th Cir. 1999) (noting that a court must review an indictment "as a whole, rather than in a hypertechnical manner") (quotation marks omitted).

ARGUMENT

I.      The Court Should Not Dismiss the Sports Bribery Charge on the Merits

The Court should reject the defendant's request to dismiss Count Three for failure to state an offense. The defendant argues for an interpretation of the Sports Bribery Act, 18 U.S.C. § 224, that is inconsistent with the statute's plain text, its Congressional history, and the case law.

A.      The Sports Bribery Act is a Broadly Applicable Statute

The Sports Bribery Act, 18 U.S.C. § 224, states, "Whoever carries into effect, attempts to carry into effect, or conspires with any other person to carry into effect any scheme in commerce to influence, in any way, by bribery any sporting contest, with knowledge that the purpose of such scheme is to influence by bribery that contest, shall be [punished]." The statute's plain language addresses a broad range of conduct: a scheme to influence "in any way … any sporting contest" by "bribery." (emphasis added).

4

Congress passed the Sports Bribery Act alongside the Travel Act and other statutes as part of a "package of 'organized crime' legislation aimed at supplementing state enforcement" efforts, Perrin v. United States, 444 U.S. 37, 45–46 (1979), "which were no longer able to cope with the increasingly complex and interstate nature of large-scale, multiparty crime," id. at 41. The statute's legislative history confirms that its breadth was by design: Congress intended to provide the government with expansive authority to prosecute sports gambling schemes. When Senator Kenneth Keating introduced the bill to the Senate in 1963, he stated, "[w]e must do everything we can to keep sports clean" and described the bill as "punishing any players or officials as well as gamblers who corrupt these games for personal gain." 109 Cong. Rec. 2016, 1963. Congressman James Corman, when introducing the bill to the House, described its purpose as "to prohibit bribery in any form, if it is carried on through interstate commerce, as it may relate to a sporting event." 110 Cong. Rec. 920, 1964. Indeed, to achieve these broad ends, the bill was amended to add the phrase "in any way." As Congressman Corman explained:

> [T]he Senate bill spelled out that bribery was to influence the outcome of the contests. During the hearings, it became apparent that frequently not only the outcome of a contest, but the point spread in a game or the round in which a prizefight might be terminated and many other things can become the object of betting. It was, therefore, the intent of the committee to cover these aspects of sporting events also and not just the outcome of the event. That is the reason for the change.

Id. (emphasis added). The Sports Bribery Act was thus designed not only to prevent bribes from influencing points scored or a game's ultimate outcome, but to preserve the integrity of all aspects of a sporting contest. United States v. Pinto, 503 F.2d 718, 724 (2d Cir. 1974) (in affirming a perjury conviction in connection with an investigation under the Sports Bribery Act,

5

observing that "the legislative history [of the Sports Bribery Act] manifests a Congressional intent to prohibit bribery of any person who can influence sports results").

Although the Supreme Court has not addressed the Sports Bribery Act, it has repeatedly endorsed a broad reading of its companion statutes that were passed as part of the anti-organized crime legislative package. See Perrin, 444 U.S. at 37, 49 & n.13 (rejecting that the term "bribery" in the Travel Act should be read narrowly, and rejecting the application of the rule of lenity with respect to the organized-crime legislation package passed by Congress, which would be "in complete disregard of the purpose of the legislature"); United States v. Nardello, 393 U.S. 286, 292-93 (1969) (observing that the Travel Act and companion legislation were intended to address a "national problem" of "pernicious undertakings which cross State lines" and that construing the act narrowly would "conflict with the congressional desire to curb the activities of organized crime").

And although there are few reported cases analyzing the Sports Bribery Act, the existing cases have applied the statute to a variety of fact patterns, confirming the breadth of the statute's application. See United States v. Burke, 700 F.2d 70, 73–75, 81 (2d. Cir. 1983) (affirming convictions of gamblers who bribed college basketball players to underperform so the team would stay under the betting spread; Second Circuit rejected defense argument that it was error for district court not to instruct on defense that gamblers merely bet on inside information); United States v. Mazzei, 700 F.2d 85, 86–87 (2d. Cir. 1983) (affirming conviction; same facts as Burke); United States v. DiNapoli, 557 F.2d 962 (2d Cir. 1977) (affirming convictions of gamblers who bribed horse jockeys to ensure their horses ran slower than anticipated while betting on all other possible combinations); United States v. Gerry, 515 F.2d 130, 133 (2d Cir. 1975) (affirming convictions of gamblers who bribed horse jockeys to finish in the last four

6

positions of a race); <u>United States v. Walsh</u>, 544 F.2d 156, 159 (4th Cir. 1976) (affirming convictions of jockeys who conspired to finish a race in a certain order for betting purposes and holding "a plain reading of the statute indicates that it is designed to encompass bribery schemes originated by participants in a sporting contest as well as those initiated by 'outsiders'").  And there has been a substantial uptick in recent enforcement following the widespread legalization of gambling in the United States, including bets on individual player props, which has created fertile ground for precisely the type of corruption that Congress was concerned about when it passed the statute 60 years ago.  <u>See</u> <u>United States v. Beasley, et al.</u>, 26-CR-190 (LDH) (E.D.N.Y.); <u>United States v. Clase, et al.</u>, No. 25-CR-470 (KAM) (E.D.N.Y.); <u>United States v. Awawdeh</u>, No. 24-CR-488 (LDH) (E.D.N.Y.); <u>United States v. Smith, et al.</u>, No. 26-CR-023 (E.D.P.A).

B.      The Sports Bribery Act Applies to Rozier's Conduct

The plain language of the Sports Bribery Act is extremely broad—it applies to bribery schemes that "influence" "any contest in any sport" in "any way."  18 U.S.C. 224(a) & (c).  It thus encompasses a scheme where, as here, a starting professional athlete takes a secret payment to remove himself early from a game.  In doing so, the athlete has necessarily schemed to "influence" a "sporting contest" in "any way" because he—one of the team's top five players, in the case of basketball—is no longer contributing to the team's efforts all while leaving the team without the opportunity to prepare a game plan that accounted for his unavailability.  18 U.S.C. 224(a).  The secret payment is a bribe because its purpose is to induce the athlete to act in the interest of the bribe payor rather than the entities to which the athlete owes a duty—here, the team that is paying him millions of dollars to perform in basketball games, as well as the league he plays in.  <u>Cf.</u> <u>United States v. Napout</u>, 963 F.3d 163 (2d Cir. 2020) (defendants owed a duty both to their direct employer, the regional soccer confederation, and its umbrella organization,

7

FIFA).  This satisfies any colorable definition of bribery.  See Perrin, 444 U.S. at 37 (defining bribery as "payments to private persons to influence their actions"); see also United States v. Silver, 864 F.3d 102, 111 (2d Cir. 2017) (defining bribery as a "quid pro quo agreement—that the defendant received, or intended to receive, something of value in exchange for an official act").  And where, as here, the athlete knows that the reason for the bribe is so that his bribe payors—an organized syndicate of bettors—can profit on this manipulation, the elements of the crime are plainly satisfied sufficient to withstand a motion to dismiss.

Despite the unambiguous breadth of subsections (a) and (c) of the Sports Bribery Act, defendant claims subsection (b) operates as a "deliberate signal" that Congress only intended the statute to occupy a "narrow federal slice."  Defendant's Motion ("DM") at 11.  This is incorrect.  Subsection (b) instructs that the statute "shall not be construed as indicating an intent on the part of Congress to occupy the field in which this section operates to the exclusion of a law of any State, territory, Commonwealth, or possession of the United States."  18 U.S.C. 224(b).  This means exactly what it says: the statute is not intended to preempt or dispossess local gambling regulations.  Nowhere does it suggest, however, that Congress intended the statute to be construed narrowly or to cede enforcement ground to the states.  Rather, the Supreme Court has observed that the whole purpose of the law was to "to aid state and local governments which were no longer able to cope with the increasingly complex and interstate nature of large-scale, multiparty crime."  Perrin, 444 U.S. at 41.

The Sports Bribery Act's Congressional history buttresses this analysis.  As described above, Congress amended the language of the proposed bill to add "in any way" so that there would be no question as to the intended breadth of the statute.  110 Cong. Rec. 920,

8

1964.  That breadth includes schemes focused on "not only the outcome of a contest, but . . . many other things [that] can become the object of betting."  Id.

Defendant's argument that in 60 years, the Sports Bribery Act has never been applied to the manipulation of a single player's props, see DM at 10, is of no moment. Widespread prop betting was only recently legalized following the Supreme Court's 2018 decision striking down a federal law that effectively banned sports betting across most of the United States.  See Murphy v. Nat'l Collegiate Athletic Ass'n, 584 U.S. 453 (2018).  Since then, such conduct has been charged in at least five cases where organized syndicates have bribed professional athletes to underperform (including by removing themselves from a sporting contest) for the purpose of betting on the information. See, e.g., United States v. Awawdeh, No. 24-CR-488 (LDH) (E.D.N.Y.) (for bribing NBA player Jontay Porter to remove himself from a game); United States v. Clase, et al., No. 25-CR-470 (KAM) (E.D.N.Y.) (professional baseball players accepting bribes to throw certain pitches); United States v. Smith et al., No. 26-CR-023 (E.D.P.A) (bribery scheme focused on college basketball players' performances); United States v. Beasley, et al., 26-CR-190 (LDH) (E.D.N.Y.) (bribery scheme focused on NBA player Malik Beasley's player props).  This is precisely the type of conduct that Congress was concerned about when it passed the statute.

Nor can the defendant's "gotcha" reliance on the Superseding Indictment's definitions defy reality.  Although the Superseding Indictment defines a "proposition" or "prop" bet as "a bet made regarding the occurrence or non-occurrence during a game of an event not directly affecting the game's outcome," SI at ¶ 26 (emphasis added), that necessarily acknowledges that a player's—and particularly a starting player's—statistics, on which props are based, affect the game's outcome, at least indirectly.  And of course, it is common sense that

9

when a star player does not play, the team's outcome will be affected. This is why the injury report exists in the first place. See ESPN, NBA outlines injury reporting, prop betting changes in memo to teams, available at https://www.espn.com/nba/story/_/id/47361909/nba-outlines-injury-info-prop-betting-changes-memo-teams. The government need not allege that Rozier played poorly—after the first quarter, he did not play at all. Because the statute only requires the scheme to affect the sporting contest "in any way," a scheme to bribe a player in order to successfully bet on his under props falls within the statute's ambit.

Finally, the rule of lenity provides no relief here. The Supreme Court has already rejected the application of the rule of lenity with respect to the organized-crime legislation package passed by Congress of which the Sports Bribery Act was a part. This is because to do so would be "in complete disregard of the purpose of the legislature." See Perrin, 444 U.S. at 49 n.13 ("Our analysis leads us to reject the application of the maxim of statutory construction that ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity. . . . [T]he rule of lenity applies when we are uncertain about the statute's meaning and is not to be used in complete disregard of the purpose of the legislature." (cleaned up)).

Terry Rozier's conduct as alleged in the Superseding Indictment is well within the ambit of the Sports Bribery Act. The Court should deny the defendant's motion to dismiss Count Three on the merits.

II.     The Court Should Not Dismiss the Sports Bribery Charge on Venue Grounds

Nor is there any basis to dismiss Count Three on account of venue.

A.     Venue Legal Standard

The Sixth Amendment provides defendants with the right to a "trial" by a jury of the "district wherein the crime shall have been committed." U.S. Const. amend. VI. Federal Rule of Criminal Procedure 18 likewise provides that, "[u]nless a statute or these rules permit

otherwise, the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18. "[W]here the acts constituting the crime and the nature of the crime charged implicate more than one location, the constitution does not command a single exclusive venue." United States v. Reed, 773 F.2d 477, 480 (2d Cir. 1985). Venue for offenses "committed in more than one district" is proper "in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a). It is well settled that § 3237(a) applies to conspiracy because it "is a continuing offense." United States v. Rutigliano, 790 F.3d 389, 395 (2d Cir. 2015). Further, the Supreme Court "has long held that venue is proper in any district in which an overt act in furtherance of the conspiracy was committed, even where an overt act is not a required element of the conspiracy offense." Whitfield v. United States, 543 U.S. 209, 218 (2005) (discussing venue applicable to money laundering conspiracy under 18 U.S.C. § 1956(h)). A "defendant need not have been present in the district, as long as an overt act in furtherance of the conspiracy occurred there." United States v. Geibel, 369 F.3d 682, 696 (2d Cir. 2004).

On a pretrial motion, such as here, "[t]he Government's burden is satisfied with regard to pleading venue by alleging that criminal conduct occurred within the venue, even if phrased broadly and without . . . other information." United States v. Alshahhi, No. 21-CR-371 (BMC), 2022 WL 2239624, at *8 (E.D.N.Y. June 22, 2022); see United States v. Barrett, 153 F. Supp. 3d 552, 561 n.5 (E.D.N.Y. 2015). Thus, "[a]n indictment, alleging on its face that the offenses occurred 'within the Eastern District of New York and elsewhere,' suffices to sustain it against a pretrial attack on venue." Alshahhi, 2022 WL 2239624, at *8 (quoting United States v. Lange, No. 10-CR-968 (DLI), 2012 WL 511448, at *1 (E.D.N.Y. Feb. 15, 2012)); see also United States v. Motz, 652 F. Supp. 2d 284, 290 (E.D.N.Y. 2009) ("when faced with a pre-trial venue challenge, the Government need only show that the superseding indictment alleges facts

11

sufficient to support venue."). Because "venue is not an element of the offense," even at trial the government need establish venue "only by a preponderance of the evidence.'" Rutigliano, 790 F.3d at 396 (quoting United States v. Ramirez, 420 F.3d 134, 139 (2d Cir. 2005)); see also United States v. Rommy, 506 F.3d 108, 119 (2d Cir. 2007) (venue need be proved only by a preponderance of the evidence).

B.      Venue is Properly Alleged in Count Three

Venue in the Eastern District of New York is properly alleged in the Superseding Indictment. See SI ¶¶ 71 (alleging the crime took place "within the Eastern District of New York and elsewhere"); 41(b) ("While located within the Eastern District of New York, Pham [a co-conspirator], among other things, engaged in communications regarding and in furtherance of the fraudulent wagering scheme). The Sports Bribery Act includes, and the government charged, a conspiracy theory. Id. ¶¶ 70-71. The corrupted sporting contest need not have occurred in the district so long as some act in furtherance of the bribery conspiracy occurred here. This is alleged in the Superseding Indictment, and the government will prove it by at least a preponderance at trial. The Court should deny the defendant's motion to dismiss Count Three on venue grounds.

III.    The Court Should Not Dismiss the Honest Services Charge

The Court should also deny the defendant's motion to dismiss Count Four, which charges honest-services wire fraud conspiracy. The defendant's argument regarding Count Four seems designed to sow confusion. It barely addresses the merits of the honest-services theory. Instead, it relies on classic wire fraud or securities fraud cases that have no bearing on an honest-services analysis, see DM at 16 (citing, e.g., United States v. Walters, 997 F.2d 1219 (7th Cir. 1993); Carpenter v. United States, 484 U.S. 19, 25–28 (1987); United States v. O'Hagan, 521 U.S. 642 (1997)), and an out-of-Circuit, pre-Skilling case that asserted a non-bribery intangible

12

rights theory and is therefore no longer good law, see DM at 14-16 (citing United States v. Czubinski, 106 F.3d 1069, 1071 (1st Cir. 1997)). It poses nonsensical hypotheticals that stray far afield from the facts of this case. It attempts to insert a new element into the crime—that the bribe payor must be enriched at the expense of the victim—that is found nowhere in the statute or case law (and the government need not allege or prove). And it ignores Supreme Court precedent delineating the many agent-principal relationships that can form the basis of an honest-services charge.

A.   Honest-Services Wire Fraud Criminalizes Schemes to Deprive a Principal of the Right to Honest Services through Bribery

Honest-services wire fraud is a distinct theory from classic wire fraud. Classic wire fraud addresses the deprivation of money or traditional property. (Count One charges a classic wire fraud theory, and is discussed at length in the government's response to Rozier's first motion to dismiss. See generally ECF No. 87.) Honest-services wire fraud, in contrast, criminalizes the deprivation of the intangible right of honest services through bribery. It occurs where one knowingly participates in a scheme or artifice to deprive a principal of their right to the honest services of their agent (or person in a similar fiduciary relationship) through bribery, and such scheme uses interstate wires. See 18 U.S.C. §§ 1341, 1343 (criminalizing use of the wires in furtherance of "any scheme or artifice to defraud."); 18 U.S.C. § 1346 (defining the term "scheme or artifice to defraud" as including schemes and artifices to "deprive another of the intangible right of honest services."); Skilling v. United States, 561 U.S. 358 (2010) (limiting § 1346 prosecutions to bribery and kickback schemes). The bribe recipient must sit in a relationship of trust with the victim; in other words, the bribe recipient must owe the victim a duty of honest services. Id. Duty is a question of fact for a jury. United States v. Harper, No. 13-CR-601 (RJD), 2015 WL 6029530, at *3 (E.D.N.Y. Oct. 15, 2015) ("The existence of a

fiduciary duty in a criminal prosecution is a fact-based determination that must ultimately be determined by a jury properly instructed on this issue.") (quoting United States v. Milovanovic, 678 F.3d 713, 723 (9th Cir. 2012), as amended (May 22, 2012)). The classic and honest-services theories are not mutually exclusive.

The history of the honest-services statute, 18 U.S.C. § 1346, illuminates why its scope is limited to bribery schemes. In 1988, Congress enacted § 1346 to "overrule" the Supreme Court's decision in McNally v. United States, 483 U.S. 350 (1987), which held that the mail and wire fraud statutes did not reach intangible rights (such as the right to honest services or non-self-dealing). See United States v. Rybicki, 354 F.3d 124, 134-36 (2d Cir. 2003) (en banc) (discussing statutory history). In enacting § 1346, Congress reinstated the intangible rights doctrine. Nearly half a century later, in the face of a vagueness challenge, the Supreme Court in Skilling held that "§ 1346 criminalizes only the bribe-and-kickback core of the pre-McNally case law," 561 U.S. 358 (2010), excluding self-dealing and other intangible rights from the scope of the statute. Having so construed § 1346, Skilling categorically held that "[a] criminal defendant who participated in a bribery or kickback scheme, in short, cannot tenably complain about prosecution under § 1346 on vagueness grounds." Id. at 413. Such schemes include not only bribery of public officials, but also commercial bribes and kickbacks. Id. at 401, 413 n.45; see also id. at 404-05 (describing Rybicki, in which the Second Circuit sitting en banc held that depriving a victim of the right to honest services included bribing a private-sector employee, as the "leading analysis of § 1346"). The Supreme Court confirmed that the fiduciary relationship giving rise to the duty could include a variety of agent-principal relationships, listing as examples "public official-public; employee-employer; and union official-union members." Id. at 407 n.41.

14

Following <u>Skilling</u>, the Supreme Court most recently addressed honest-services wire fraud in <u>Percoco v. United States</u>, 598 U.S. 319 (2023), and elaborated on <u>Skilling</u>'s observation that a variety of relationships—not merely a technical employer-employee relationship—can give rise to the duty that is an element of the crime. Although <u>Percoco</u> reversed an honest-services wire fraud conviction based on improper jury instructions, it provided guidance on proper instructions in future prosecutions.

Percoco was a former governor's aide who temporarily resigned from his public position for eight months. During this hiatus, a real estate developer paid him to successfully lobby the state government to drop an onerous requirement for the developer to receive state funding on a project. A jury convicted Percoco of honest-services wire fraud conspiracy based on the standard set forth in <u>United States v. Margiotta</u>, 688 F.2d 108 (2d Cir. 1982), a pre-<u>McNally</u> case articulating the applicable test when the bribed person alleged to owe a fiduciary duty to the public was a "private person" with "no elective office." <u>Percoco</u>, 598 U.S. at 322, 329-33 (quoting <u>Margiotta</u>, 688 F.2d at 113). The Supreme Court reversed and remanded, finding that the <u>Margiotta</u>-standard jury instructions were "too vague" because they provided an "ill-defined threshold" for when a private citizen holds a duty of honest services to the public and thus created a substantial risk of prosecuting private individuals for legitimate political activity, such as the work of "well-connected and effective lobbyists." <u>Percoco,</u> 598 U.S. at 330, 331.

The Supreme Court, however, declined to hold that private citizens may never hold a duty of honest services to the public. <u>Id.</u> at 329. Rather, the Court found that a private individual may owe the public "the necessary fiduciary duty" that might sustain a prosecution if he or she agrees to act as an "actual agent[]" for the government. <u>Id.</u> Accordingly, <u>Percoco</u> rejected a bright-line rule that categorically excluded certain relationships from the ambit of

15

§ 1346, since such a rule would improperly preclude prosecution in the case of an honest-services fraud scheme involving a bribe recipient who was an "actual agent[]," but not an "employee" of the organization.  Id. at 329.  Such a prosecution would not "stretch § 1346 past heartland cases," the Court concluded.  Id. at 330.

        B.        <u>Rozier Deprived the Hornets and NBA of His Honest Services by Participating in a Secret Bribery Scheme</u>

Pages 14 through 17 of the defense motion argue against a case that the government did not charge.  To be sure, the government agrees that "not every breach of an employee's fiduciary duty to his employer constitutes mail or wire fraud."  DM at 14 (citing Rybicki, 354 F.3d at 135).  That debate was resolved long ago, when the Supreme Court in Skilling held that the honest-services doctrine was limited to bribe-and-kickback schemes.  561 U.S. at 358.[3]  But "it has always been"—and still is—"as plain as a pikestaff that bribes and kickbacks constitute honest-services fraud."  Skilling, 561 U.S. 358.  Rozier accepted a bribe to act in the interest of his bribe payors rather than his team and the league on <u>the</u> core aspect of his employment—playing in professional basketball games.  That is "pikestaff"-level fraud—not mere "violation of a workplace rule."  DM at 14.

To the extent Rozier relies on the "Varsity Blues" case to claim that his conduct did not amount to bribery, that argument fails.  The "Varsity Blues" case, <u>United States v. Abdelaziz</u>, 68 F.4th 1 (1st Cir. 2023), merely fleshed out the principal articulated in <u>Skilling</u> that

---

[3] Defendant's reliance on <u>United States v. Czubinski</u>, 106 F.3d 1069, 1071 (1st Cir. 1997) as the "leading" case for the proposition that mere violation of a fiduciary duty is not a crime is irrelevant at best and misleading at worst.  DM at 14-15.  <u>Czubinski</u> was not a bribery case and predates <u>Skilling</u>.  And even if it did not rely on an outdated legal theory that has been superseded by Supreme Court precedent, it is from outside of this Circuit and the Second Circuit declined to adopt the same reasoning.  <u>United States v. Rybicki</u>, 287 F.3d 257, 265 (2d Cir. 2002), <u>on reh'g en banc,</u> 354 F.3d 124 (2d Cir. 2003).  Likewise, <u>United States v. Walters</u>, 997 F.2d 1219 (7th Cir. 1993), which the defendant also relies on, is not an honest-services case.

the honest-services wire fraud statute encompasses only bribe and kickback schemes.  A corrupt payment constitutes a "bribe" only if its purpose is to induce someone (the payee) who owes a duty to another to act in the interest of the payor rather than the person or entity to whom the payee owes the duty.  See Rybicki, 354 F.3d at 139.  In other words, in the absence of a breached duty, a corrupt payment is not a classic bribe.  In Abdelaziz, wealthy parents relied on a corrupt college-admissions advisor's assistance to gain their children university admissions by lying about their children's athletic accomplishments and making large donations to the schools.  Those payments were not bribes because the purported victims of the scheme (the schools) were also the payment recipients.  Abdelaziz, 68 F.4th at 27 ("The government's honest services fraud theory essentially charges the defendants with a non-traditionally recognized form of bribery.").  Abdelaziz thus crystalized and clarified Skilling's holding that the honest-services wire fraud statute encompasses only bribe and kickback schemes.  In contrast to the facts in those cases, the corrupt payments here were made to induce Rozier to act in the gamblers' favor, rather than provide honest efforts to his team and league.

C.      Rozier's Disclosure of Nonpublic Information Was Charged in Count One and Does Not Foreclose Count Four

Perplexingly, defendant's brief next attempts to argue that what the government is actually alleging is the disclosure of material non-public information, not a deprivation of honest services.  DM at 15.  But that is, of course, only partially true: the government does allege, as part of its classic wire fraud conspiracy charge in Count One, that the defendant's disclosure of nonpublic information was a component part of the scheme to defraud the sports books.  But this is not the focus of the defendant's honest-services wire fraud scheme.  Both theories are alleged in the Superseding Indictment, charged as separate crimes with different elements, have different defendants and timeframes, and are not mutually exclusive.  Count One alleges a classic wire

17

fraud conspiracy theory in which the sports books were deprived of money because athletes, including Rozier, or people in close proximity to athletes, provided, and gamblers bet on, material information that was kept secret from the betting public. Count Four alleges an honest-services theory in which Rozier accepted a secret bribe from gamblers to remove himself from a game so they could bet on his underperformance, thus breaching his duty to his team and the league. Through his conduct, Rozier defrauded both (i) the sports books of their money and (ii) the Hornets and NBA of his honest services. The existence of the first fraud does not negate the second.

     D.     <u>There is No Deprivation of Money or Property Element in an Honest-Services Fraud Theory</u>

Nor should Count Four be dismissed because the Hornets and the NBA were "not deceived into giving the bettors anything." DM at 18; <u>see</u> DM at 18-21. This argument improperly attempts to graft a new element onto the crime of honest-services fraud by cobbling together common factual scenarios in previous cases. <u>See</u> DM at 19-20 (citing <u>Rybicki</u>, 354 F.3d 124; <u>Napout</u>, 963 F.3d at 169–70; <u>United States v. Bahel</u>, 662 F.3d 610, 616, 632–33 (2d Cir. 2011)). But nowhere does the honest-services fraud statute or any of the relevant case law require the government to prove that the victims were deprived of anything other than their

18

agent's honest services.[4]  To require otherwise would transform the honest-services doctrine into a property-deprivation crime, which it emphatically is not.  See Ciminelli v. United States, 598 U.S. 306, 313 (2023) (discussing the difference between wire fraud protecting traditional property rights and honest-services wire fraud, which protects the intangible right of honest services).  Indeed, the entire history of 18 U.S.C. § 1346, discussed at length above, is one in which Congress created a separate crime vindicating the criminal deprivation of intangible rights rather than property rights.  Id.  There is simply no "paradigm" or "structural feature" of the statute that requires that the victim be tricked into giving the bribe payors anything—the sole inquiry is whether the bribe recipient owed the victim honest services and deprived the victim of those honest services through bribery.  DM at 20; see Rybicki, 354 F.3d at 141–42.

E.        The Superseding Indictment Sufficiently Alleges a Duty to the NBA

Nor would it be appropriate for the Court to dismiss Count Four as to the NBA simply because the NBA is not Rozier's direct employer.  See DM at 21.  The Supreme Court has repeatedly acknowledged that a variety of agent-principal relationships can form the basis of the duty element, Skilling, 561 U.S. at 407 n.41, and recently rejected a bright-line rule that categorically excluded certain relationships from the ambit of § 1346, Percoco, 598 U.S. at 329-

---

[4] The elements of honest services are (i) the defendant knowingly devised or participated in a scheme or artifice to deprive a principal of the honest services of their agent by false and fraudulent pretenses, representations, or omissions through bribery; (ii) the defendant did so knowingly and with intent to defraud; (iii) the misrepresentation or omission was material; and (iv) the use of the wires in furtherance of the scheme.  United States v. Boyland, No. 11-CR-850 (SLT) (E.D.N.Y.), Jury Instructions, dated Mar. 4, 2014, ECF No. 159-1, aff'd, 862 F.3d 279 (2d Cir. 2017); see also Rybicki, 354 F.3d at 141–42 (describing crime as "a scheme or artifice to use the mails or wires to enable an officer or employee of a private entity (or a person in a relationship that gives rise to a duty of loyalty comparable to that owed by employees to employers) purporting to act for and in the interests of his or her employer (or of the other person to whom the duty of loyalty is owed) secretly to act in his or her or the defendant's own interests instead, accompanied by a material misrepresentation made or omission of information disclosed to the employer or other person").

19

31. The indictment alleges that the NBA maintained codes of conduct applicable to all players in the league, which included enumerated duties. SI at ¶ 5. The Second Circuit has held that such codes are sufficient to make out a duty. See Napout, 963 F.3d at 185 ("The government alleged, and the jury found, that the appellants' conduct of accepting bribes had violated the fiduciary duty they owed to FIFA and CONMEBOL under the organizations' codes of ethics. In other words, the fiduciary duty—the legal obligation to provide honest services—that the appellants owed to their employer, the breach of which, accomplished by wire fraud, was the crime for which they were convicted, arose from their acceding to FIFA and CONMEBOL's rules . . ." (cleaned up)). The issue of whether an individual owed a duty to a particular person or entity is a question of fact for the jury. Harper, 2015 WL 6029530, at *3; Milovanovic, 678 F.3d at 723. The charging language includes the NBA as a victim deprived of the intangible right of the honest and faithful services of Rozier and tracks the elements of the crime. SI at ¶ 73. No more is required at this time. Stringer, 730 F.3d at 124.

IV. Counts One and Four are Not Multiplicitous

The Court should decline to hold that Counts One and Four—the classic wire fraud scheme and the narrower honest-services wire fraud conspiracy—are multiplicitous.

A. Multiplicity Legal Standard

"An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed." United States v. Chacko, 169 F.3d 140, 145 (2d Cir. 1999). "This violates the Double Jeopardy Clause of the Fifth Amendment, subjecting a person to punishment for the same crime more than once." Id. "[C]ourts in this Circuit have routinely denied pre-trial motions to dismiss potentially multiplicitous counts as premature." United States v. Scully, 108 F. Supp. 3d 59, 121 (ADS) (E.D.N.Y. 2015) (collecting cases).

20

To assess whether the two offenses charged separately in the indictment are really one offense charged twice, courts apply the "same elements" test, also known as the "Blockburger" test.  See Blockburger v. United States, 284 U.S. 299 (1932); United States v. Dixon, 509 U.S. 688, 696 (1993) (affirming application of the Blockburger test).  The Blockburger test examines whether each charged offense contains an element not contained in the other charged offense.  See Dixon, 509 U.S. at 696.  If there is an element in each offense that is not contained in the other, they are not the same offense for purposes of double jeopardy, and they can both be prosecuted.  See id.; Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir.1995).

B.      The Counts are Not Multiplicitous

For all the reasons discussed above and in the government's prior opposition to Rozier's first motion to dismiss explaining the elemental differences between classic and honest-services wire fraud, and the factual and legal differences between the theories alleged in Counts One and Four, the counts are not multiplicitous.  See Dixon, 509 U.S. at 696.  In any event, such a determination would be premature at this juncture.  See Scully, 108 F. Supp. 3d at 121.

<u>CONCLUSION</u>

For the reasons set forth above, the government respectfully submits that the defendant's motion to dismiss the Superseding Indictment should be denied in its entirety.

Dated:   Brooklyn, New York
         July 20, 2026

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

         /s/
Kaitlin T. Farrell
Benjamin Weintraub
David Berman
Assistant U.S. Attorneys
(718) 254-7000

Cc:   Clerk of the Court (LDH)
      Defense Counsel of Record (By ECF)

22