**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　v.<br><br>TERRY ROZIER,<br>　　　　　　　　Defendant. | No. 25-CR-323 (S-1) (LDH)<br><br><br>**ORAL ARGUMENT REQUESTED** |

**TERRY ROZIER'S REPLY IN SUPPORT OF HIS MOTION TO TRANSFER**

**MARKUS/MOSS PLLC**

David Oscar Markus
Anita Margot Moss
Lauren Field Krasnoff

40 N.W. Third Street, PH1
Miami, Florida 33128
Tel: (305) 379-6667
markuslaw.com

*Served on opposing counsel July 31, 2026*

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................1

THE *PLATT* FACTORS AND THE INTEREST OF JUSTICE FAVOR TRANSFER TO
THE SOUTHERN DISTRICT OF FLORIDA ...................................................................1

    1.  The Location of the Defendant Strongly Favors Transfer ......................................1

    2.  The Location of the Witnesses Favors Transfer.....................................................3

    3.  The Location of the Events at Issue Does Not Weigh Against Transfer ................4

    4.  The Location of Documents and Records Does Not Favor This District ...............4

    5.  The Disruption of the Defendant's Business and Affairs Favors Transfer.............5

    6.  The Expense to the Parties Favors Transfer...........................................................6

    7.  The Location of Counsel Strongly Favors Transfer...............................................7

    8.  The Relative Accessibility of the Place of Trial Is Neutral or Favors Transfer ...7

    9.  The Docket Conditions Do Not Weigh Against Transfer .......................................7

    10. Other Special Elements and the Interest of Justice Strongly Favor Transfer .......7

CONCLUSION..................................................................................................................10

## TABLE OF AUTHORITIES

**CASES:**

*Hyde v. Shine*, 199 U.S. 62 (1905)..............................................................................................3

*Jones v. Gasch,* 404 F.2d 1231 (D.C. Cir. 1967), *cert. denied*, 390 U.S. 1028 (1968) ...................8

*Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240 (1964)....................................................1, 6, 7

*Singer v. United States*, 380 U.S. 24 (1965) ...............................................................................9

*United States v. Aronoff*, 463 F. Supp. 454 (S.D.N.Y. 1978) ...............................................3, 6, 9

*United States v. Cashin*, 281 F.2d 669 (2d Cir. 1960) ...................................................................3

*United States v. Connelly,* 405 F. Supp. 735 (S.D.N.Y. 1975) ........................................................8

*United States v. Fiorentino*, No. 13-CR-338 (SJF), 2014 WL 108415,
(E.D.N.Y. Jan. 6, 2014) ................................................................................................................2

*United States v. Flom*, No. 14-CR-507 (RRM), 2015 WL 6506628
(E.D.N.Y. Oct. 27, 2015) .....................................................................................................6, 7, 8

*United States v. Layne*, No. 05 Cr. 87 (HB) (S.D.N.Y. May 2, 2005)............................................2

*United States v. Rinsch*, 807 F. Supp. 3d 238 (S.D.N.Y. 2025) .....................................................3

*United States v. Russell*, 582 F. Supp. 660 (S.D.N.Y. 1984)..........................................................5

*United States v. Spy Factory, Inc.*, 951 F. Supp. 450 (S.D.N.Y. 1997)..........................................5

*United States v. United States Steel Corp.*, 233 F. Supp. 154 (S.D.N.Y. 1964)..............................8

*United States v. Valdes*, No. 05-CR-156 (KMK), 2006 WL 738403 (S.D.N.Y. Mar. 21, 2006) ..10

**RULES:**

Charles A. Wright, Federal Practice and Procedure § 341 ...............................................................9

Fed. R. Crim. P. 21 ...................................................................................................................8, 9

Fed. R. Crim. P. 21(b)....................................................................................................... 1, 3, 7-10

Fed. R. Crim. P. 21(c)...............................................................................................................9, 10

ii

**OTHER CITATIONS:**

*Federal Investigators Eyeing Terry Rozier's Play in 2023 Game*, ESPN.com (Jan. 30, 2025), https://www.espn.com/nba/story/_/id/43627495/federal-investi gators-eyeing-terry-rozier-play-2023-game................................................................................................................2

U.S. Dep't of Justice, Criminal Resource Manual § 533
https://www.justice.gov/archives/usam/criminal-resource-manual-533-transfer-other-cases
................................................................................................................8

**INTRODUCTION**

The government's seventeen-page response to our motion to transfer ("Opp.") did not identify a single act that Terry Rozier took in the Eastern District of New York, nor a single witness with knowledge of Mr. Rozier's alleged conduct who resides here. That silence answers the question at the heart of Rule 21(b): whether trying Mr. Rozier in this District serves "the convenience of the parties, any victim, and the witnesses, and . . . the interest of justice." Fed. R. Crim. P. 21(b). It does not. The witnesses are elsewhere, and so is the conduct. Unable to connect Mr. Rozier to this District, the opposition talks about his earnings, his houses, and his cars. But Rule 21 contains no factor concerning a defendant's assets. *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240, 243-44 (1964), sets out ten factors, and net worth is not one of them. The movant in *Platt* was the Minnesota Mining and Manufacturing Company. If a defendant's wealth counted against transfer, that was the case to say so. The Court did not.

Counsel for Laster and Earnest have no objection to the matter being transferred to Miami.

**THE *PLATT* FACTORS AND THE INTEREST OF JUSTICE FAVOR TRANSFER TO THE SOUTHERN DISTRICT OF FLORIDA**

**1.      The Location of the Defendant Strongly Favors Transfer.**

The government concedes that residence favors transfer, but says only "weakly," arguing that Mr. Rozier "only moved to Florida in 2024." Opp. at 4-5. That is wrong. Mr. Rozier has lived in Miami during the NBA offseasons since 2015. *See* Rozier Decl. ¶ 2 (attached). He purchased his Miami home in 2021, and that same year he made Florida his official state of residence and obtained a Florida driver's license. *Id.* ¶ 3. His mother began spending much of her time in Florida around 2021 as well. *Id.* ¶ 5. All of that predates the March 23 Game itself, to say nothing of this indictment. As for the government's related assertion that Mr. Rozier "lived in North Carolina at

1

the time of the events," Opp. at 4, his in-season housing followed his employer, as it does for every professional athlete; his residence was Florida and had been since 2021. What changed in 2024 is that his employer (the Miami Heat) caught up with his home (Miami): in 2023, the NBA investigated the very game at the center of this indictment and announced that it "did not find a violation of NBA rules,"[1] and months later, on January 23, 2024, the Charlotte Hornets traded Mr. Rozier to the Miami Heat. He has lived in Miami full time ever since. Rozier Decl. ¶ 4. Mr. Rozier could not have moved to Florida to meet this case. He was a Florida resident before the game at issue was ever played, and years before this indictment.

Mr. Rozier has owned his home in Miami since 2021. Rozier Decl. ¶ 3. His mother lives in Miami. *Id.* ¶ 5. His most recent employer, the Heat, is in Miami. *Id.* ¶ 6. His pretrial release is supervised by the United States Probation Office in the Southern District of Florida. DE 103 ¶ 2. Living in Miami is also a condition of his release: the bond requires Mr. Rozier to reside at his Miami home, even as the government asks the Court to give that residence little weight. Order Setting Conditions of Release (Dec. 8, 2025); *see* DE 103 ¶ 2. The government's counter-authorities confirm the point rather than defeat it: *Fiorentino* granted transfer from this District to the Southern District of Florida, and *Layne* granted transfer from the Southern District of New York to the Southern District of Florida. Opp. at 4-5; *see United States v. Fiorentino*, No. 13-CR-338 (SJF), 2014 WL 108415, at *8 (E.D.N.Y. Jan. 6, 2014); *United States v. Layne*, No. 05 Cr. 87 (HB) (S.D.N.Y. May 2, 2005). Those cases show that courts grant these motions on genuine residential ties; they nowhere hold that an ailing relative is a prerequisite, and the policy they apply

---

[1]Statement of NBA spokesman Mike Bass (Jan. 30, 2025), quoted in *Federal Investigators Eyeing Terry Rozier's Play in 2023 Game*, ESPN.com (Jan. 30, 2025), https://www.espn.com/nba/story/_/id/43627495/federal-investigators-eyeing-terry-rozier-play-2023-game.

is the one the government itself quotes: "courts should, wherever possible, try defendants where they reside." Opp. at 4 (quoting *Fiorentino*, 2014 WL 108415, at *4); *accord United States v. Aronoff*, 463 F. Supp. 454, 457 (S.D.N.Y. 1978) (citing *Hyde v. Shine*, 199 U.S. 62, 78 (1905), and *United States v. Cashin*, 281 F.2d 669, 675 (2d Cir. 1960)).

**2.    The Location of the Witnesses Favors Transfer.**

The ex parte offer the government derides as a failure of proof, Opp. at 5-6, is an accepted way to make this showing. In *Aronoff*, the moving defendant "disclosed to the Court, in camera, the names and addresses of character witnesses he plans to call," and the court relied on that submission in granting his transfer. 463 F. Supp. at 455, 458-60. A defendant should not have to hand the prosecution his witness list to vindicate a convenience rule. Mr. Rozier renews his offer: he will submit his witness list, with locations and the substance of expected testimony, ex parte and under seal within three days of an order directing it.

The government insists that for this factor to weigh in favor of the defense, "witnesses must fully be unable to testify in this District." Opp. at 6 (quoting *United States v. Rinsch*, 807 F. Supp. 3d 238, 254 (S.D.N.Y. 2025)). But under Rule 17(e)(1), a trial subpoena "may be served at any place within the United States," so no witness is ever unable to testify in any federal district. If inability were the test, factor two could never favor transfer in any case, and the words Congress chose, "the convenience of the parties, any victim, and the witnesses," Fed. R. Crim. P. 21(b), would be meaningless. The government's remaining answer on this factor is money, the demand that Mr. Rozier prove himself "financially incapable" of flying witnesses north. Opp. at 6-7. That is an expense argument, and it is addressed under factor six.

Meanwhile, the government's side of the ledger is pretty bare. It identifies only its case agents and employees of the NBA. Opp. at 7. Case agents attend trial wherever it is held, as part

3

of the job and at public expense. And the NBA is headquartered in Manhattan, in the Southern District of New York, so even the government's chosen victim does not sit in this District. What the government cannot say, because it is not true, is that any witness with knowledge of Mr. Rozier's alleged conduct resides in the Eastern District of New York. *See* Mot. at 3-4, 7.

**3.    The Location of the Events at Issue Does Not Weigh Against Transfer.**

Even though the government cites a number of cases for the proposition that when charged conduct is national in scope, this factor "favors neither party," Opp. at 8-9, it then concludes that the factor "weighs against transfer." Opp. at 9.

In any event, the only in-district conduct the government identifies belongs to Long Phi Pham, a co-conspirator charged in a separate case, who "engaged in communications" here. Opp. at 2 (quoting Doc. 101 ¶ 41(b)). The conduct attributed to Mr. Rozier touched four states, none of them New York: his early exit from the game itself, played in New Orleans;[2] his communications with Laster, an Ohio resident; the collection of the cash in Philadelphia; and its counting in Charlotte. Doc. 101 ¶¶ 38, 43, 45-46. Whatever conspiracy venue principles may mean at trial, on a motion addressed to fairness and convenience it counts that the defendant himself is not alleged to have done anything in this District. That undisputed fact runs through every factor the Court will weigh.

**4.    The Location of Documents and Records Does Not Favor This District.**

The government agrees this factor is neutral. Opp. at 9. So does Mr. Rozier.

---

[2]Our initial motion mistakenly stated that the March 23 Game was played in Charlotte. The Hornets played the Pelicans in New Orleans that night. The Superseding Indictment does not allege where the game was played, and the correction changes nothing in the analysis. Wherever the game was played, it was not in this District.

**5.      The Disruption of the Defendant's Business and Affairs Favors Transfer.**

The government's response on this factor is odd. It argues that players can train anywhere, so it is not really a disruption for Mr. Rozier to travel and train. Opp. at 10. That is true in the same way that lawyers can practice anywhere with a laptop and a telephone. Or try a case anywhere. The government makes much, in other parts of its brief, of how disruptive it would be for its own lawyers to have to travel and work, Opp. at 11, 14-15, but discounts what the same thing means for Mr. Rozier.

The rest of the government's answer relies on conditions of its own making. To show no disruption, it observes that Mr. Rozier's "longtime trainer is on the no-contact list and Rozier is not presently working with him." Opp. at 10. The list it invokes is the government's list: it named every current and former employee of, and independent contractor for, the Charlotte Hornets, "including all coaches, players, medical staff, building staff, and support staff," DE 109 at 1; it added the entire Miami Heat organization on December 12, 2025, and did not agree to remove it until late May 2026, DE 103 ¶¶ 5, 13-14, after which the Heat waived Mr. Rozier, DE 110 at 1; and it has insisted that any contact with listed individuals occur only in counsel's presence, DE 109 at 2-3. Having engineered Mr. Rozier's separation from his trainers and his profession, the government now cites that separation as proof that a trial a thousand miles from home would cost him nothing. The argument refutes itself.

Nor is the disruption limited to the government's three-week trial estimate. Opp. at 1. Preparation will consume the months before trial, and trial at home lets a defendant maintain his occupation in the hours the courtroom is dark. *See United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 459 (S.D.N.Y. 1997) (Sotomayor, J.) (quoting *United States v. Russell*, 582 F. Supp. 660, 663 (S.D.N.Y. 1984): "Such a potential reduction in business interruption is an additional factor in

5

favor of transfer."). And the government's aside that Mr. Rozier is "currently unemployed," Opp. at 1, deserves one response: his unemployment is a product of this prosecution and of the release conditions the government demanded. DE 103, 109, 110.

**6.      The Expense to the Parties Favors Transfer.**

As the government's own formulation has it, this factor asks about "expenses to be incurred by the parties if transfer is denied." Opp. at 3. If transfer is denied, every incremental dollar is spent by the defense: travel, lodging, and displacement for Mr. Rozier, his counsel, and his witnesses, through months of preparation and weeks of trial. If transfer is granted, the government travels instead, so the raw expense is a wash; someone goes on the road either way. The difference is capacity, which is the very measure the government proposes: "the focus of this factor is the defendant's ability to pay, not the size of the expense." Opp. at 11 (quoting *Flom*, 2015 WL 6506628, at *7). Measured that way, and applied to both parties, the factor is not close. On one side is the United States, whose lawyers and agents travel on the public fisc, and which already maintains a United States Attorney's Office and an FBI field office in the transferee district. On the other is a single defendant, "currently unemployed" in the government's own telling, Opp. at 1, paying personally for all of it. The relative expense runs decisively in Mr. Rozier's favor. That is how *Aronoff* weighed it: the court balanced the "relative hardships" and granted transfer even though the government's New York-based prosecution team would remain involved "wherever held." 463 F. Supp. at 459-60.

If the government means something narrower, that only the defendant's resources count, then it has converted this factor and factor two into a threshold means test that no wealthy defendant could pass. Opp. at 6-7, 11. As noted above, *Platt* itself was a corporate giant's motion, and courts applying the factors have granted transfer without regard to the movant's net worth. On

the government's theory, Rule 21(b) exists only for the indigent. Nothing in the rule's text, and nothing in *Platt*, says that. And the government's projection of relocating "its entire team of prosecutors, support staff, law enforcement officers and witnesses," Opp. at 11, assumes the duplicate-trial scenario addressed under factor ten.

**7.    The Location of Counsel Strongly Favors Transfer.**

The government concedes this factor is "neutral or at most weakly favors transfer." Opp. at 13. Counsel is in Miami because Mr. Rozier is in Miami; a Miami resident retaining Miami counsel is the opposite of gamesmanship. And counsel's willingness to try cases anywhere, Opp. at 12-13, says nothing about the aggregate burden on the defendant, his witnesses, and his family, which is where the rule directs the Court's attention.

**8.    The Relative Accessibility of the Place of Trial Is Neutral or Favors Transfer.**

The government agrees this factor is neutral. Opp. at 13. At a minimum, it does not favor retention.

**9.    The Docket Conditions Do Not Weigh Against Transfer.**

Mr. Rozier acknowledged in his motion that neither district's docket is so congested as to bear on the analysis. *See* Opp. at 13. The government answers with the Court's familiarity with the related cases and the trial date already set. Both are "special element" arguments, so they are addressed under factor ten.

**10.    Other Special Elements and the Interest of Justice Strongly Favor Transfer.**

The centerpiece of the opposition is the claim that transfer is unavailable because Mr. Rozier has not shown that venue would independently lie in the Southern District of Florida, such that a transferred defendant might "escape prosecution altogether." Opp. at 14. For that proposition the government italicizes the phrase "another district of proper venue," quoting *Flom*, which in

7

turn quoted *United States v. United States Steel Corp.*, 233 F. Supp. 154, 157 (S.D.N.Y. 1964). Opp. at 14.

That argument rests on a restriction Congress discarded sixty years ago. *U.S. Steel* was decided in August 1964 under the original Rule 21(b), which authorized transfer only when the offense was committed in more than one district, and only "to another district or division in which the commission of the offense is charged." 233 F. Supp. at 155 n.1 (quoting former Fed. R. Crim. P. 21(b)). Judge Weinfeld's reference to "a district of proper venue" restated that textual limitation. The 1966 amendment eliminated it, precisely because "convenience of the parties and witnesses and the interest of justice would best be served by trial in a district in which no part of the offense was committed." Fed. R. Crim. P. 21 advisory committee's note to 1966 amendment. Since 1966, the rule has authorized transfer "to another district," without qualification. Fed. R. Crim. P. 21(b).

Courts said so at the time, and they have said so since. *See Jones v. Gasch,* 404 F.2d 1231, 1236-37 (D.C. Cir. 1967), cert. denied, 390 U.S. 1028 (1968); *United States v. Connelly,* 405 F. Supp. 735, 737 (S.D.N.Y. 1975) ("[B]oth the 1966 Advisory Committee Notes and the observations of commentators make it clear that transfer pursuant to Rule 21(b) may be ordered even to a district in which no part of the offense was committed."). *Flom* did not hold otherwise; it repeated *U.S. Steel*'s formulation without addressing the amendment, and a phrase inherited from a superseded rule cannot override the current rule's text. The "glaring 'special element,'" Opp. at 14, is therefore no obstacle at all.

The Department of Justice's own Criminal Resource Manual agrees: "[a]s amended in 1966, Rule 21(b) allows the transfer of a criminal case to any district without being limited to a transfer to a district in which venue would lie as required under the original rule." U.S. Dep't of Justice, Criminal Resource Manual § 533 (archived).

8

Nor is there any possibility that Mr. Rozier could obtain transfer and then "escape prosecution altogether." Rule 21(c) expressly provides that, after transfer, "[t]he prosecution will then continue in the transferee district." Fed. R. Crim. P. 21(c). More fundamentally, a defendant may waive his constitutional right to trial in the district where the offense was committed. *Singer v. United States*, 380 U.S. 24, 35 (1965). A defendant's Rule 21 motion itself constitutes that waiver. Fed. R. Crim. P. 21 advisory committee's note to 1944 adoption ("By making a motion for a change of venue, however, the defendant waives this constitutional right."); *Aronoff*, 463 F. Supp. at 457 n.2 ("The transfer provisions of Rule 21 'represent an exercise by the defendant of his privilege to waive his venue rights.'" (quoting 1 Charles A. Wright, Federal Practice and Procedure § 341)).

To eliminate even the government's imagined concern, Mr. Rozier expressly waives any objection to venue in the Southern District of Florida on every count of the Indictment and agrees that, if transfer is granted, he will not move to dismiss or otherwise challenge any count based on venue in that district. Rozier Decl. ¶ 9. The Court may memorialize that waiver in its transfer order.

The government's judicial-economy objection fares no better. Rule 21(b) authorizes transfer of "the proceeding, or one or more counts, against that defendant." A single defendant's transfer out of a multi-defendant case is the rule operating as written. *See* Mot. at 11-12. The government's own citation proves the point. In *Aronoff*, the court granted one of three defendants a Rule 21(b) transfer, severed him from his co-defendants, and sent him to Michigan, even while recognizing that the resulting second trial was "a result of no small consequence." 463 F. Supp. at 458, 460-61; *see id.* at 458 n.4 (severance "is a necessary concomitant when a transfer does not involve all of the defendants"). The government quotes the sentence fragment and omits the disposition. Opp. at 15.

Moreover, the government treats the possibility for severance as if it ended the inquiry, but that is not the test. *Valdes*, a case relied upon by the government, says that the weight of this factor depends upon whether "there is a fault line in the Indictment" separating Mr. Rozier's proof from the rest. *United States v. Valdes*, No. 05-CR-156 (KMK), 2006 WL 738403 at *11 (S.D.N.Y. Mar. 21, 2006). That distinction, not the bare fact of severance, decides this motion. Here the fault line is plain. The conduct the Indictment attributes to Mr. Rozier is minimal and self-contained: his early exit from ***one*** game, his communications with Laster in Ohio, and a single payment collected in Philadelphia and counted in Charlotte.

The forecast of duplicate trials is also speculative. Two of the defendants originally charged with Mr. Rozier have already pled guilty, and two others (Earnest and Laster) do not oppose a trial in SDFLA. The government reports that in the related cases before this Court it has "already accepted multiple guilty pleas in these cases and sentenced one defendant." Opp. at 16. Whether any co-defendant will stand trial in February 2027 is unknown today, and a contingency is not a "special element." The government estimates three weeks for the entire case, Opp. at 1, and a trial of Mr. Rozier alone, concerning a single game, would be significantly shorter. As for the Court's familiarity with the related dockets, the pretrial rulings in this case travel with it, *see* Fed. R. Crim. P. 21(c) (upon transfer, "[t]he prosecution will then continue in the transferee district"), and the convenience the rule protects belongs to "the parties, any victim, and the witnesses." Fed. R. Crim. P. 21(b).

**CONCLUSION**

Mr. Rozier respectfully requests that the Court transfer the proceedings against him to the Southern District of Florida. If it would assist the Court, Mr. Rozier will submit his witness list ex parte and under seal within three days of an order directing it.

10

Respectfully submitted,

**MARKUS/MOSS** PLLC
40 N.W. Third Street, PH1
Miami, Florida 33128
Tel: (305) 379-6667
markuslaw.com

By:    /s/ David Oscar Markus
       David Oscar Markus
       dmarkus@markuslaw.com

       */s/ Anita Margot Moss*
       Anita Margot Moss
       mmoss@markuslaw.com

       */s/ Lauren Field Krasnoff*
       Lauren Field Krasnoff
       lkrasnoff@markuslaw.com

Dated: July 31, 2026