MARKUS / MOSS

October 21, 2026

By ECF

The Honorable LaShann DeArcy Hall
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *United States v. Eric Earnest, et al.*, No. 25-CR-323 (S-1) (LDH)

Dear Judge DeArcy Hall:

Defendants Terry Rozier and Deniro Laster jointly move under Rule 14(a) to sever their trials. The government objects.

We do not make the request lightly. We know the Court's docket is heavy. However, Mr. Rozier's lawyers will spend as much effort prosecuting Mr. Laster in this trial as the government. Courts in this District have found that a joint trial cannot be fair under those conditions. And the cost to the Court is relatively small. The government estimates a joint trial will take three weeks. We believe that two separate trials would require about the same amount of time.

**Background**

The superseding indictment (ECF No. 101) charges Mr. Rozier and Mr. Laster in all four counts. The government's theory as to both men rests on a single game: the Charlotte Hornets' March 23, 2023, game against the New Orleans Pelicans. The government alleges that Mr. Rozier, playing on an injured foot, agreed to leave that game early so that others could bet on his "unders," and that he told Mr. Laster of the plan shortly before the game. S-1 ¶¶ 37–38. It alleges that Mr. Laster passed the information to co-conspirators, who bet on it and spread it to others. *Id.* ¶¶ 39–41. It alleges that Mr. Laster flew to Philadelphia five days later, collected tens of thousands of dollars in cash, drove the cash to Mr. Rozier's home in Charlotte, and counted it with him. *Id.* ¶¶ 45–46.

Mr. Rozier's defense is simple. He did not know about any bets. He left the March 23 game because he was hurt (the NBA recently produced objective medical records which demonstrate conclusively that Mr. Rozier was hurt), and not because of any arrangement with Mr. Laster. Indeed, Mr. Rozier went over on rebounds, causing many of the bets he was supposedly in on to lose. The discovery supports that defense through direct testimony, as well as text conversations on Mr. Laster's phone. For example, on March 29, 2023, the same day the indictment claims Mr. Laster collected the cash in Philadelphia, he texted an associate: "Don't tell chum bout the bet."

MARKUS/MOSS PLLC

40 NW 3rd Street, PH 1
Miami, FL 33128
T 305 379-6667
F 305 379-6668
markuslaw.com

"Chum" is Mr. Rozier. *Id.* ¶ 4. Indeed, the government's own allegations put Mr. Laster at the center of every transaction. He communicated with co-conspirators. *Id.* ¶ 37. His relatives, friends, and associates placed bets on Mr. Rozier. *Id.* ¶ 42(b). He is the one who received the proceeds. *Id.* ¶ 45.

Mr. Rozier's lawyers cannot present this defense without effectively prosecuting Mr. Laster. This would force Mr. Laster's lawyers into the untenable position of defending their client on two fronts.

**The Law**

Rule 14(a) authorizes the Court to "sever the defendants' trials" when joinder "appears to prejudice a defendant." Fed. R. Crim. P. 14(a). The Supreme Court prefers joint trials, but it has directed district courts to sever where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Antagonistic defenses do not require severance on their own. *Id.* at 538. But the Second Circuit has recognized that "mutually antagonistic or irreconcilable defenses may be so prejudicial in some circumstances as to mandate severance." *United States v. Salameh*, 152 F.3d 88, 116 (2d Cir. 1998) (quotation marks omitted).

Courts in this District have identified one of those circumstances when a co-defendant's counsel "becomes a 'second prosecutor,' who 'in order to zealously represent his client . . . [does] everything possible to convict the other defendant.'" *United States v. Volpe*, 42 F. Supp. 2d 204, 210 (E.D.N.Y. 1999) (quoting *United States v. Tootick*, 952 F.2d 1078, 1082 (9th Cir. 1991)). The problem is that the second prosecution "may inhibit the jury from evaluating the evidence against each defendant based on that defendant's own acts and statements." *Id.*

Judge Matsumoto applied that rule in *United States v. Shkreli*, 260 F. Supp. 3d 247 (E.D.N.Y. 2017). Greebel's counsel told the court that his team "will act as a second prosecutor against Shkreli," arguing that Shkreli was guilty and that Greebel was his victim. *Id.* at 256. The court found that the two defenses were not mutually antagonistic in the strict sense. *Id.* at 254. It severed anyway. A joint trial would force Shkreli "to wage a defense on two fronts," and the jury would hear "the government's case in chief twice, once from the government and then again from Greebel." *Id.* at 257. Limiting instructions would not cure it. *Id.* at 256. And the court answered the judicial economy objection directly: "In circumstances like these where judicial economy is butting up against a defendant's right to a fair trial, judicial economy must give way to fairness." *Id.* at 257.

Judge Block reached the same result in *United States v. Copeland*, 336 F. Supp. 2d 223 (E.D.N.Y. 2004). One defendant intended to offer witness identifications showing that his co-

defendant, not he, had gone into the bank. The court held that he "will act as a second prosecutor" of the co-defendant and that "[a] limiting instruction cannot effectively mitigate such prejudice." *Id.* at 224–25. Judge Cogan did the same in *United States v. Nordlicht*, No. 16-CR-640 (BMC), 2018 WL 1796542, at *2–3 (E.D.N.Y. Apr. 16, 2018), severing the trial of a defendant who planned to argue that his co-defendants were guilty as charged.

Mr. Rozier's counsel will do at trial what Greebel's counsel promised to do in *Shkreli*. They will argue that Mr. Laster is guilty and will present evidence supporting that conclusion. Mr. Laster would face two prosecutors, and the jury would hear the case against him twice. That is the prejudice *Shkreli*, *Copeland*, and *Volpe* describe, and it is why Mr. Laster joins this motion. Mr. Rozier joins it because he is entitled to present his defense in full, without a running series of objections and sidebars over how much of it a co-defendant at the same table can be made to absorb. The court in *Shkreli* identified that trial-management problem as an independent reason to sever. 260 F. Supp. 3d at 256–57.

**Judicial Economy**

On June 10, 2026, the government estimated a joint trial at three weeks, including a defense case. We estimate that each separate trial would take about a week and a half. Each would be simpler than the joint trial: one defendant, one defense, and no need for the Court to referee between them.

We ask the Court to sever the trial of Mr. Rozier from the trial of Mr. Laster and to set the two trials back-to-back, beginning with the February 8, 2027 date already on the calendar. Mr. Rozier proposes to go first, and Mr. Laster does not object.

We thank the Court for its consideration.

Respectfully submitted,

/s/ David Oscar Markus
David Oscar Markus
Margot Moss
Lauren Krasnoff
*For Terry Rozier*

/s/ M. Evan Corcoran
M. Evan Corcoran
*For Deniro Laster*