**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

v.

TERRY ROZIER,

Defendant.

No. 25-CR-323 (S-1) (LDH)

***<u>ORAL ARGUMENT REQUESTED</u>***

**TERRY ROZIER'S OMNIBUS MOTION IN LIMINE**

MARKUS/MOSS PLLC
David Oscar Markus
Anita Margot Moss
Lauren Field Krasnoff

40 N.W. Third Street, PH1
Miami, Florida 33128
Tel: (305) 379-6667
markuslaw.com

*Served on November 12, 2026*

## TABLE OF CONTENTS


INTRODUCTION ....................................................................................................1

I. Motion in Limine to Preclude References to GMB, Gang, Firearm, Drug, and Lifestyle Evidence ....................................................................................2

A. Factual Background .................................................................................... 2

B. GMB, Drug, Firearm, and Lifestyle Evidence Should Be Excluded Under Rule 403 ............................................................................................ 3

1. The Court Should Bar Any Mention of GMB Because Mr. Rozier Will Stipulate to His Friendship with Laster, Rendering Its Probative Value Substantially Outweighed by the Danger of Unfair Prejudice ........................................................................ 4

2. Any Social Media Posts, Photos, or Other Evidence Involving Guns, Drugs, and Lifestyle Expressions Should Be Excluded Under Rule 403 ........................................................................ 5

3. Admitting This Evidence Would Confuse the Issues, Mislead the Jury, and Waste Time ............................................................... 7

II. Motion in Limine to Prohibit the Government from Using Mr. Rozier's Alleged Statements to the NBA, Unless the NBA's Full Report and Notes Are Disclosed to Mr. Rozier ..........................................................................................8

A. Factual Background ..................................................................................8

B. The Defense Must Have Access to the NBA's Investigative Reports, Especially Any Reports Related to Evidence That the Government Wants to Introduce ..............................................................................................9

C. If The Government Wants to Introduce Mr. Rozier's Statements to the NBA, The NBA's Notes and Report Must Be Disclosed Under Federal Rule of Evidence 106..........................................................................................10

D. The Work Product Privilege Does Not Protect The Notes and Report from Disclosure ...........................................................................................11

III. Motion in Limine to Exclude Statements Not Made in Furtherance of the Alleged Conspiracy, Including Gambler Statements to NBA Investigators........................14

CONCLUSION.......................................................................................................15

# TABLE OF AUTHORITIES

**CASES:**


*Grunewald v. United States,* 353 U.S. 391 (1957) .......... 15

*In re von Bulow,* 828 F.2d 94 (2d Cir. 1987) .......... 13

*In re Kidder Peabody Securities Litigation,* 168 F.R.D. 459 (S.D.N.Y. 1996) .......... 12, 13

*Krulewitch v. United States,* 336 U.S. 440 (1949) .......... 14

*New York Times Co. v. United States Department of Justice*,
939 F.3d 479 (2d Cir. 2019) .......... 11, 12

*Old Chief v. United States*, 519 U.S. 172 (1997) .......... 4, 5

*SEC v. Sandoval Herrera,* 324 F.R.D. 258 (S.D. Fla. Dec. 5, 2017) .......... 12

*United States v. Bergonzi,* 216 F.R.D. 487 (N.D. Cal. 2003) .......... 10, 11

*United States v. Brutus,* 505 F.3d 80 (2d Cir. 2007) .......... 14

*United States v. Curley,* 639 F.3d 50 (2d Cir. 2011) .......... 4, 6

*United States v. Floyd,* 555 F.2d 45 (2d Cir. 1977) .......... 14, 15

*United States v. Jordan,* 714 F. Supp. 3d 158 (E.D.N.Y. 2024) (DeArcy Hall, J.) .......... 5

*United States v. Kilroy*, 523 F. Supp. 206 (E.D. Wis. 1981) .......... 9

*United States v. Molina-Guevara*, 96 F.3d 698 (3d Cir. 1996) .......... 10

*United States v. Nobles*, 422 U.S. 225 (1975) .......... 11, 13

*United States v. Pacquette*, 557 F. App'x 933 (11th Cir. 2014) .......... 11

*United States v. Stahl*, 616 F.2d 30 (2d Cir. 1980) .......... 7

*United States v. Stein,* 488 F. Supp. 2d 350 (S.D.N.Y. 2007) .......... 9, 10, 11

**STATUTES:**

18 U.S.C. 3500(e)(1)....................13

**RULES:**

Fed. R. Crim. P. 26.2(f)(1)....................13

Fed. R. Evid 16....................9. 10

Fed. R. Evid 17 (c)....................10

Fed. R. Evid 106....................10, 11

Fed. R. Evid. 403....................2, 3, 4, 5, 7

Fed. R. Evid. 502(a)....................13

Fed.R. Evid. 801(d)(2)(E)....................14, 15

## INTRODUCTION

Terry Rozier is innocent. The objective evidence proves it. Unlike every other individual charged in this sweeping conspiracy, he never placed a bet on an NBA game or player prop, and he had no knowledge that anyone else was betting on his performance.

First, the medical evidence confirms that Mr. Rozier was genuinely injured, explaining why he left the game. Second, while he was on the court, Mr. Rozier played hard and exceeded his rebounding prop—precisely the opposite of what the alleged co-conspirators had wagered would happen (*See* Ex. A, available at https://bit.ly/RozierExA-OverRebounds). Third, and perhaps most tellingly, the alleged co-conspirators' own communications reveal that they deliberately kept their betting activity hidden from Mr. Rozier.[1] In other words, the contemporaneous, objective evidence directly contradicts the Government's theory that Rozier knowingly participated in a gambling scheme.

Recognizing the enormous problems with its case, the Government has resorted to (through its motion in limine) attempting to prevent the jury from hearing critical evidence of Mr. Rozier's innocence. At the same time, the Government seeks to introduce irrelevant and prejudicial evidence wholly unrelated to the alleged gambling conspiracy—evidence that does nothing to establish whether Mr. Rozier knew about, much less participated in, the bets at issue.

---

[1] Because the "don't tell chum bout the bet" text guts its case, the Government has been grasping for alternative explanations. It now says that when Laster commanded a witness to keep "the bet" from Terry, Laster was referring to table games at a casino. That interpretation is contradicted by the witnesses, physical evidence, and common sense. The text was demonstrably about hiding Laster's bet on the March 23 game from Terry Rozier. After all, there was no reason Laster would keep table games from Terry and every reason he would hide that he was betting against Terry. Perhaps understanding that its explanation is belied by the evidence, the Government informed the defense that it may move to exclude the text so that the jury never sees it. If it does so, we will respond because the text is admissible and trustworthy evidence.

The Government should not be permitted to insulate its theory from the objective evidence that disproves it while distracting the jury with irrelevant and prejudicial matters. A criminal trial must turn on evidence of the charged conduct, not insinuation, guilt by association, or collateral allegations designed to obscure weaknesses in the prosecution's case. This motion in limine seeks to ensure that the jury decides the charges against Terry Rozier on the evidence that matters, free from the unfair prejudice and confusion that the Government's proposed evidence would invite.

## I. Motion in Limine to Preclude References to GMB, Gang, Firearm, Drug, and Lifestyle Evidence

This is an alleged gambling case about one basketball game. It is not a gang, drug, or gun prosecution, nor could it be. This so-called evidence is irrelevant. And the danger of unfair prejudice substantially outweighs the possible probative value, Fed. R. Evid. 403. Therefore, Mr. Rozier moves the Court to order that the Government and its witnesses make no reference to GMB, gangs, drugs, firearms, or impermissible lifestyle evidence.

### A. Factual Background

The Government first raised GMB in an August 4, 2026, letter seeking Deniro Laster's detention for witness tampering. ECF No. 131. The Government alleged that Mr. Rozier and Laster belong to a "crew" called GMB and claimed it was relevant that Mr. Rozier "pos[ed] with guns prior to the Government bringing charges in this case." *Id.* ¶ 3.

But then at the August 11, 2026, conference on Laster's bail, the Government backed away from its insinuation and claimed it was "not alleging that this crew or quasi gang actually existed." Aug. 11, 2026, Tr. 43:21–25 (hereinafter "Tr."). At the close of the proceeding, the Government declared: "The Government is not alleging that Mr. Rozier is a member of a gang." Tr. 96:15–18. The Court responded, "We know what the charges are in this case. There

is no RICO case here," and reiterated that "there are not allegations that Mr. Rozier is a member of gang." Tr. 96:24–97:4.

Despite these clear statements, the Government has informed the defense that while it will not explicitly allege Mr. Rozier is a gang member, it will attempt to elicit GMB[2] references at trial to "show relationships," presumably referring to the relationship between Mr. Rozier and Deniro Laster. That relationship, however, is not in dispute. The superseding indictment alleges it, Mr. Rozier acknowledges it, and he offers to stipulate that Laster was one of his best friends. The Government has also disclosed that it intends to argue that Mr. Rozier "pos[ed] with guns *prior* to the Government bringing charges in this case." ECF No. 131 ¶ 3 (emphasis added).

### B. GMB, Drug, Firearm, and Lifestyle Evidence Should Be Excluded Under Rule 403.

None of this evidence bears on whether Mr. Rozier agreed to leave the March 23, 2023, game in exchange for a bribe, and Rule 403 should bar all of it. The GMB nickname adds nothing because Mr. Rozier will stipulate that Laster was one of his best friends. Instead, what the government will attempt to do with GMB is insinuate a criminal "crew." Photos of guns with cash are just as problematic. No count charges a firearm, and the wealth of a player on a

[2] GMB is neither a gang nor "crew," nor is Terry Rozier a gang member. The saying originated as a motivational phrase used by Terry's youth basketball team. Long before the Government began its investigation, GMB has stood for "Get More Blessings" and is the motto of the Terry Rozier Foundation, a 501(c)(3) organization. That organization's purpose and good works have been well documented over the past eight years. *See, e.g.,* Terry Rozier Foundation (@terryrozierfdn), X, https://x.com/terryrozierfdn. Mr. Rozier's mother, Gina Tucker, is the foundation's executive director. She has discussed the foundation in her memoir. *See* Gina Tucker, *The Blaq Print* (2022). Also, Ms. Tucker has echoed Mr. Rozier's motto, "Get More Blessings," in interviews about the foundation's purpose, explaining: "It's a blessing to be a blessing." *See* https://businessjournaldaily.com/terry-rozier-foundation-spurs-coat-giveaway/.

roughly $96 million contract says nothing about whether he took a $70,000 bribe. Put together, the nickname and the photos invite the jury to see a Black man whose money must be dirty. The Supreme Court and the Second Circuit have both condemned that kind of appeal. Finally, admitting any of them would force a trial within the trial over these matters, confusing the jury and wasting time.

**1. The Court Should Bar Any Mention of GMB Because Mr. Rozier Will Stipulate to His Friendship with Laster, Rendering Its Probative Value Substantially Outweighed by the Danger of Unfair Prejudice.**

Relevant evidence should be excluded when the danger of unfair prejudice substantially outweighs its probative value. Fed. R. Evid. 403. "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). In weighing probative value, the Court can consider other available evidence on the same point. If a less prejudicial alternative proves the point as well or better, "sound judicial discretion would discount the value of the item first offered and exclude it if its discounted probative value were substantially outweighed by unfairly prejudicial risk." *Id.* at 183. A court abuses its discretion when it admits uncharged conduct that is "significantly more sensational and disturbing than the charged crimes." *United States v. Curley*, 639 F.3d 50, 62 (2d Cir. 2011).

The charges turn on whether Mr. Rozier agreed to anything before the March 23, 2023, game. The Government's contention that GMB is relevant to "show relationships" is significantly undercut by the defense's willingness to stipulate that Deniro Laster was one of Mr. Rozier's best friends. That changes the Rule 403 balance. When an alternative proves the same point with less risk, the Court discounts the riskier item and excludes it if the discounted

value is substantially outweighed by prejudice. *See Old Chief*, 519 U.S. at 182–83. The stipulation proves the relationship conclusively. GMB, on the other hand, solely provides an inference the Government hopes the jury draws about what kind of friends these are.

The Government's own explanation at the August 11 conference confirms the risk of using GMB to prove an undisputed relationship. The Government described Laster as having leveraged his and Mr. Rozier's "reputation as quasi gang members or members of a crew with access to firearms," while simultaneously disclaiming that such a "crew" or gang existed. Tr. 43:17–25. The Government's subsequent retraction does not remove the obvious prejudice if the label and images still convey that message to the jury.

This Court has prohibited analogous evidence under Rule 403. Denying the Government's motion to admit a defendant's rap lyrics and videos, the Court warned against verdicts based on "perceptions born from the commercial and artistic promotion of a criminal lifestyle." *United States v. Jordan*, 714 F. Supp. 3d 158, 167 (E.D.N.Y. 2024) (DeArcy Hall, J.). While *Jordan* concerned lyrics, and this motion is about a nickname, the principle applies. A label that insinuates a criminal lifestyle, with little probative value because of a proposed stipulation, should be barred by Rule 403.

### 2. Any Social Media Posts, Photos, or Other Evidence Involving Guns, Drugs, and Lifestyle Expressions Should Be Excluded Under Rule 403.

No count involves a firearm or drugs. Nevertheless, the Government represented to the defense that it intends to introduce photos of guns with money. This Court explained that guilt should rest on "evidence with a close relationship to a specific criminal act." *Jordan*, 714 F. Supp. 3d at 167. While an Instagram story by a prominent public figure is not a song, it is the same kind of self-presentation, with the same tendency toward bravado.

The Government's own words reveal why they want the jury to see these photos. While seeking to revoke Laster's bail, the Government revealed its plan to elicit evidence that "defendant Deniro Laster and his friends" posed with guns on social media accounts to intimidate witnesses. Tr. 44:8–18. The Government expressly acknowledged that any such trial evidence remained "subject to Your Honor's rulings." Tr. 44:10–12. This Court should not allow the Government to continue down that road, especially because there is no evidence that Mr. Rozier has intimidated witnesses.

Moreover, photos involving guns are "significantly more sensational and disturbing than the charged crimes," and create a serious risk that the jury will view Mr. Rozier as more dangerous "than he appeared from the other evidence." *Curley*, 639 F.3d at 62. In *Curley*, the Government offered evidence of guns from a different time than the charged conduct, and the Second Circuit held that the weak inferential link could not justify evidence that made the defendant look more dangerous than the charged conduct showed. *Id.* at 61–63. That reasoning applies with more force here. The most serious allegation here is that a basketball player took a bribe to leave a game early. (We will show that this is completely false.) Especially in a city that tightly regulates guns like New York, a social media post involving guns should be excluded.

Photos of Mr. Rozier with large amounts of cash that have no connection to the charges should also be excluded. Mr. Rozier is a professional basketball player. He signed a four-year, roughly $96 million contract extension in 2021. The alleged bribe was about $70,000. Photos of cash after April 2023 say nothing about whether he took that bribe. It invites jurors to resent him, or to suspect that he must have gotten it the wrong way. The Second Circuit reversed a bribery conviction where the prosecutor repeatedly tried to equate the defendant's

wealth with wrongdoing, holding that appeals to class prejudice "are improper and have no place in a court room." *United States v. Stahl*, 616 F.2d 30, 33 (2d Cir. 1980).

### 3. Admitting This Evidence Would Confuse the Issues, Mislead the Jury, and Waste Time.

Rule 403 also requires exclusion when probative value is substantially outweighed by a danger of "confusing the issues, misleading the jury" or "wasting time." If the Government offers any evidence about GMB, guns, or lifestyle expressions that are not relevant to this case, the defense will have to answer it. That means disputes about where the GMB name came from, what organizations using that label do, the legality of any guns owned by Mr. Rozier, and his persona. Those disputes would confuse the issues, mislead the jury, and waste time.

The Court has already recognized the need to prevent confusion, mislead the jury, and waste time on this point. After the Government disclaimed any allegation that Mr. Rozier was a gang member, the Court explained that it had put the "crew" issue to rest in part because "I don't want there to be any confusion." Tr. 96:20–23. And when the Court asked whether the Government had a sufficient basis to revoke Laster's bail apart from "the notion of a violent crew or a perceived violent crew," the Government answered, "Absolutely, Your Honor." Tr. 44:1–6. The Court ultimately revoked Laster's bail based on his violations of release conditions and probable cause to believe he had committed obstruction of justice. Tr. 95:17–96:10. Like the Court did previously, the Court should limit the Government's presentation to what is at issue in this case.

## II. Motion in Limine to Prohibit the Government from Using Mr. Rozier's Alleged Statements to the NBA, Unless the NBA's Full Report and Notes Are Disclosed to Mr. Rozier

The Government has informed the defense that it wants to tell the jury what Terry Rozier supposedly said when the NBA's lawyers questioned him about this case without a lawyer. But the defense has not even seen an interview report from the NBA concerning Mr. Rozier's supposed statement or any other report from the NBA related to its investigation. Instead, the NBA has only summarized Mr. Rozier's statements for the parties, not producing any reports. The defense has asked the NBA for these written reports and summaries, but the NBA has said that they are privileged. Unless and until the defense has access to these materials, the Court should exclude the Government from eliciting any supposed statement.

### A. Factual Background

In March 2023, the NBA learned of unusual betting on Mr. Rozier's performance in the Hornets' March 23 game against New Orleans. The league investigated. Its outside counsel ran that investigation and interviewed Mr. Rozier multiple times. He had no lawyer with him. No one told him in advance what the interview would cover. The defense requested the NBA's notes and full report but was told it is privileged.

Nevertheless, the NBA has not kept its investigation to itself. In January 2025, the league issued a statement that it had investigated, found no rule violation, and was cooperating with a federal investigation.[3] On October 24, 2025, the day after the original indictment was unsealed, Commissioner Adam Silver described Mr. Rozier's interview during the Amazon Prime broadcast

[3] *Heat's Terry Rozier Investigated in Illegal Betting Probe*, Reuters (Jan. 30, 2025, 2:13 PM), https://www.reuters.com/sports/heats-terry-rozier-investigated-illegal-betting-probe--flm-2025-01-30/.

of the Knicks–Celtics game. He said Mr. Rozier cooperated, turned over his phone, was interviewed, and that the league did not find a violation of NBA rules.[4]

On May 28, 2026, the Government made the NBA a victim in this case, adding an honest services count that alleges a scheme to deprive the NBA and the Hornets of their "intangible right" to Mr. Rozier's honest services. ECF No. 101 ¶¶ 72–73.

### B. The Defense Must Have Access to the NBA's Investigative Reports, Especially Any Reports Related to Evidence That the Government Wants to Introduce.

The Government wants to tell the jury what Mr. Rozier supposedly said to NBA investigators. The parties do not have the NBA's written report of that interview. That is no way to try a case. If the Government wants to use the statement, Mr. Rozier is entitled to the report, any recording, and the NBA's related reports before trial. Fed. R. Crim. P. 16. If he cannot have them, the statement should be excluded.

Because the NBA is cooperating with the Government, the Government can demand access to the report. *United States v. Stein*, 488 F. Supp. 2d 350, 360-62 (S.D.N.Y. 2007). In *Stein*, Judge Kaplan ruled that documents in KPMG's files were within the Government's control because KPMG was obligated to cooperate with the prosecution. He ordered the Government to produce them. *Id.* at 362-64, 369. He relied on a case treating records held by a cooperating private company as "practically speaking, within the Government's control." *Id.* at 362 (quoting *United States v. Kilroy*, 523 F. Supp. 206, 215 (E.D. Wis. 1981)). And he rejected the notion that the Government gets to decide whether to ask: "Once control is established, the obligation exists." *Id.* at 363.

---

[4] Tim Bontemps, *NBA Commissioner Adam Silver 'Deeply Disturbed' by Indictments*, ESPN (Oct. 24, 2025, 9:32 PM), https://www.espn.co.uk/nba/story/_/id/46714637/nba-commissioner-adam-silver-deeply-disturbed-indictments.

The same is true here. The NBA is cooperating with the Government. It has shared the substance of the interview. The Government plans to build part of its case on the NBA's investigation. The NBA's file is within the Government's practical control. The Government should be ordered to request it and produce it. In the alternative, the Court should authorize a Rule 17(c) subpoena to the NBA returnable before trial. *Stein* enforced such a subpoena under Rule 16's materiality standard because the documents were within the Government's control. *Id.* at 366-67.

An oral summary is no substitute for the document. In *Bergonzi*, the Government proposed to give the defense the exculpatory content of company counsel's interview memoranda in summary form. The court ordered production of the memoranda and the underlying report under Rule 16. *United States v. Bergonzi*, 216 F.R.D. 487, 499-502 (N.D. Cal. 2003), *appeal dismissed as moot*, 403 F.3d 1048 (9th Cir. 2005). The court explained that the report was "not just a regurgitation of the interviews." *Id.* at 499. Rather, because a secondhand account is only as good as the person giving it, the defense is entitled to test it against the original. *See United States v. Molina-Guevara*, 96 F.3d 698, 705 (3d Cir. 1996) (Government conceded Rule 16 required production of agent's handwritten notes of defendant's interview from which final report was prepared).

### C. If The Government Wants to Introduce Mr. Rozier's Statements to the NBA, The NBA's Notes and Report Must Be Disclosed Under Federal Rule of Evidence 106.

Rule 106 codifies the common-law rule of completeness. When a party introduces all or part of a statement, the adverse party may require introduction of any other part, or any other statement, that in fairness ought to be considered at the same time. Fed. R. Evid. 106. Since the 2023 amendment, that protection expressly extends to unrecorded oral statements. Fed. R. Evid. 106 advisory committee's note to 2023 amendment. Federal appellate courts have enforced this

protection against selective presentation of defendants' interviews. For example, in *United States v. Pacquette*, 557 F. App'x 933, 936–38 (11th Cir. 2014), the court vacated the defendant's convictions because of a Rule 106 error. Specifically, the Government introduced the defendant's acknowledgment that everything in his bag belonged to him, but the defense was barred from eliciting his subsequent denial of knowledge of the cocaine within that bag. Explaining that the officer's account was "technically accurate, but incomplete," the Court held that the defense was entitled to cross-examination about the omitted explanation. *Id.* at 937.

Before permitting the Government to introduce selected statements from those interviews, the Court should require production of the interviewing lawyers' notes and the report, so the defense can identify necessary completing portions to test the witness's account through cross-examination. If withholding those materials prevents the defense from correcting a misleading presentation, the Government's evidence of Mr. Rozier's statements should be excluded.

**D. The Work Product Privilege Does Not Protect The Notes and Report from Disclosure.**

The NBA's privilege claim does not change the analysis. The NBA bears the burden of establishing privilege and conclusory assertions do not carry it. *Stein*, 488 F. Supp. 2d at 367-68. Mr. Rozier's statements to the NBA were not communications between the NBA and its lawyers. At most, the report is work product. Work product cannot be used testimonially and then shielded from scrutiny. *United States v. Nobles*, 422 U.S. 225, 239-40 (1975); *see also Bergonzi*, 216 F.R.D. at 497-98 (company's disclosure of interview memoranda to the Government waived work product protection as to defendants).

In *New York Times Co. v. United States Department of Justice*, 939 F.3d 479, 496 (2d Cir. 2019), the Second Circuit held that specific public descriptions of the conclusions of confidential investigative memoranda "waived the privilege over the sections of the memoranda and exhibits

relating to the conclusion," even though the memoranda themselves had not been released. Similarly, in *In re Kidder Peabody Securities Litigation*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996), the court explained: "Disclosure of the substance of a privileged communication is as effective a waiver as a direct quotation since it reveals the 'substance' of the statement."

The NBA's oral summary to the Government is an independent waiver. Describing a document aloud does not preserve its protection. In *Herrera*, a law firm gave the SEC "oral downloads" of its witness interview memoranda. It then claimed work product over the memoranda themselves. The court rejected the argument. It held that there is "little or no substantive distinction for waiver purposes between the actual physical delivery of the work product notes and memoranda and reading or orally summarizing the same written material's meaningful substance to one's legal adversary." *SEC v. Sandoval Herrera*, 324 F.R.D. 258, 260 (S.D. Fla. Dec. 5, 2017). It ordered the notes and memoranda produced. *Id.* at 20. The Second Circuit agrees. A sufficiently specific verbal description of a document's contents is as inconsistent with secrecy as disclosure of the document itself. *N.Y. Times*, 939 F.3d at 496. The NBA summarized Mr. Rozier's interviews for both the Government and the defense. The Government has named the NBA as the victim of Mr. Rozier's alleged scheme. The NBA is his adversary. Having described the interviews to him, it cannot withhold the record of them.

The NBA went further. It publicly announced its investigative findings, and Commissioner Silver described Mr. Rozier's interviews and the NBA's conclusion on national television. Because those disclosures revealed the substance of the interviews and the report's conclusion, the NBA cannot withhold the corresponding source material merely because its lawyers prepared it. The Court should therefore order production of the NBA's notes and final report.

Similarly, if the Government chooses to call a witness to recount Mr. Rozier's statements, that will also constitute a waiver. In *United States v. Nobles*, a defense investigator interviewed prosecution witnesses and wrote a report. When the defense called him to testify about what those witnesses had said, the trial court ordered the defense to produce the parts of the report covering his testimony. 422 U.S. 225, 227–29 (1975). The Supreme Court upheld this ruling. "The privilege derived from the work-product doctrine is not absolute," and by "electing to present the investigator as a witness," the party "waived the privilege with respect to matters covered in his testimony." *Id.* at 239. If the Government wants to call an NBA witness to recount Mr. Rozier's statements, it must disclose the NBA's report and notes to the defense. At the very least, it's 3500 material. 18 U.S.C. 3500(e)(1); Fed. R. Crim. P. 26.2(f)(1).

The waiver reaches the whole subject. Subject-matter waiver follows when a privilege holder uses protected material as a sword and invokes the privilege as a shield. *Kidder Peabody*, 168 F.R.D. at 473 (citing *In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987)). In *Kidder Peabody*, the company relied on its lawyers' investigative report before the SEC and in litigation. The court held it could not then withhold the interview memoranda underlying the report. *Id.* at 472-73. The NBA is doing the same thing through the Government. It has lent the prosecution its investigation, summarized the interviews, and agreed to supply a witness. It cannot hand the Government the parts that help and keep the rest. Where a disclosure is made to a federal office, the waiver extends to undisclosed material on the same subject that in fairness ought to be considered together. Fed. R. Evid. 502(a). If the Government puts any part of the NBA investigation before the jury, the defense is entitled to the entire file.

### III. Motion in Limine to Exclude Statements Not Made in Furtherance of the Alleged Conspiracy, Including Gambler Statements to NBA Investigators

In addition to Mr. Rozier's supposed statements to the NBA, the Government wants to introduce other statements made to the NBA during its investigation. Putting aside that we do not have those reports (and we need them before the Government could ever seek to introduce them as explained above), Terry Rozier moves to exclude any alleged co-conspirator statements to NBA investigators, including Deniro Laster's statement to NBA investigators and those of other gamblers, under Federal Rule of Evidence 801(d)(2)(E). These statements were made months after the March 23, 2023, game, months after the alleged proceeds were collected and counted, during an investigation into the completed alleged conduct. The Court should bar their admission against Mr. Rozier because they are not coconspirator statements made in furtherance of the conspiracy.

A coconspirator's statement is admissible against a defendant under Federal Rule of Evidence 801(d)(2)(E) only if it was made "during the course of and in furtherance of a conspiracy." *United States v. Floyd*, 555 F.2d 45, 48 (2d Cir. 1977), abrogated on other grounds by *United States v. Brutus*, 505 F.3d 80, 87 & n.5 (2d Cir. 2007). And efforts to hide a completed crime do not make those statements admissible against a coconspirator, unless there was an express original agreement to lie to conceal the conspiracy. In *Krulewitch v. United States*, 336 U.S. 440, 442–44 (1949), the Supreme Court excluded a coconspirator's statement made "after those objectives either had failed or had been achieved" and rejected the Government's theory of an implied continuing agreement to conceal the crime.

The Court further refined the rule eight years later: "after the *central* criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment."

*Grunewald v. United States,* 353 U.S. 391, 401–402 (1957) (emphasis added). *Floyd*, an EDNY bank robbery case, held that the conspiracy ended when the loot was divided. Therefore, a statement made the next day while burning the getaway car was inadmissible against the co-defendant. The court refused to breach the "barrier at the end of a conspiracy" no matter how close the event was in time. 555 F.2d at 48.

This case is about one game on March 23, 2023. The alleged conspiracy about that single game had already produced its wagers, game performance, and distribution of proceeds by the time of the interviews of Laster and other gamblers. ECF No. 101 ¶¶ 41–46. Counts Three and Four themselves end in April. ECF No. 101 ¶¶ 71, 73. And even though Counts One and Two extend through March 2024, the Government has provided no facts alleging Mr. Rozier was still conspiring after April 2023. Gambler statements should be excluded under Federal Rule of Evidence 801(d)(2)(E).

**CONCLUSION**

For these reasons, the Court should grant Rozier's Motion in Limine.

Respectfully submitted,

**MARKUS/MOSS PLLC**
40 N.W. Third Street, PH1
Miami, Florida 33128
Tel: (305) 379-6667
markuslaw.com

By: /s/ David Oscar Markus
David Oscar Markus
Florida Bar Number 119318
dmarkus@markuslaw.com

*/s/ Anita Margot Moss*
Anita Margot Moss
mmoss@markuslaw.com

*/s/ Lauren Field Krasnoff*
Lauren Field Krasnoff
lkrasnoff@markuslaw.com