MARKUS / MOSS

November 24, 2026

**By ECF**

The Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *United States v. Terry Rozier*, No. 25-CR-323 (LDH) (S-1)

Dear Judge DeArcy Hall:

> "[T]he Government may seek to 'manufacture' a conflict in order to prevent a defendant from having a particularly able defense counsel at his side."
>
> --*Wheat v. United States*, 486 U.S. 153, 163 (1988).

Almost 40 years ago, the Supreme Court warned against the government tactic of manufacturing a conflict in an attempt to undermine criminal defense counsel, which is exactly what the government is doing here. In support of this effort, the government continues to make multiple false assertions to this Court. We therefore respond to the government's letter asking for a *Curcio* hearing, ECF No. 180, and explain why the government's position—that there is some sort of conflict because undersigned counsel spoke with an unrepresented exculpatory witness—is wholly without merit.

## INTRODUCTION

The government's letter and argument is based on a provable misrepresentation: that the Friend had a lawyer when undersigned counsel spoke with him. He did not, and the government knows it. The Friend's court-appointed lawyer has confirmed in writing that, when counsel reached out this summer, his "CJA appointment had ended." Ex. D. On November 5, 2026, the same lawyer told undersigned counsel that he had recently been "re-appointed." *Id.* Undersigned counsel forwarded the lawyer's email to the government that same day. ECF No. 180 at 3. A provably false assertion cannot be the basis for a *Curcio* hearing.

Defense lawyers must speak with witnesses in every case. The Constitution requires it. *Strickland v. Washington*, 466 U.S. 668, 691 (1984) ("counsel has a duty to make reasonable investigations"). When undersigned counsel took over this case in the summer of 2026, he learned

MARKUS/MOSS PLLC

40 NW 3rd Street, PH 1
Miami, FL 33128
T 305 379-6667
F 305 379-6668
markuslaw.com

that the Friend had told prior counsel's investigator[1] that the Text that is the subject of this issue was about keeping the bet from Mr. Rozier. Counsel had a duty to find that Friend and confirm what he said. Failing to do it would constitute obvious malpractice. Prosecutors have spoken with this same Friend many times. ECF No. 171 at 6. The government does not suggest that any of them has a conflict, despite the Friend changing his story in each conversation that he has with the government.

No rule was broken. New York's no-contact rule governs conduct in this Court, and it addresses only a represented "party." The Friend is a witness. So even if the Friend had a lawyer, the New York rule allowed the interview. Florida's rule does not govern. Even if it did, it was not broken either, because the Friend did not have a lawyer when undersigned counsel spoke with him. The Friend testified that he did not believe he had a lawyer. The government's suggestion, *without citation to any New York rule or case*, that undersigned counsel engaged in misconduct by interviewing an unrepresented witness is entirely improper and baseless.

The government is trying to manufacture a conflict where none exists. It is doing so because it knows the Text destroys its case. On the morning of March 29, 2023, hours after the government says Laster picked up the bribe money, Laster texted the Friend: "Dont tell [Rozier] bout the bet." One does not hide a bet from the person who supposedly sold it. Recognizing the problem with its case, the government has resorted to concocting a story about a potential conflict where none exists.

The government is coming after undersigned counsel because defense counsel is vigorously defending his client, and because the witness did not give the account the government wanted. This is a dangerous abuse of the government's power. It is the same abuse of power that it recently tried, and failed, to use in the baseball gambling court in this very courthouse. If it works here, any prosecutor who dislikes what a witness says can attempt to disrupt the attorney-client relationship simply due to the fact that the attorney interviewed a witness. The government's wholly unwarranted tactic should be rejected.

---

[1] The government well knows about the statement to the investigator and knows that this fact torpedoes any concerns about speaking to the witness. Perhaps that is why they did not mention the investigator at all it in its letter. We have attached the investigator's report as Exhibit A. This and all exhibits are filed under seal.

## ARGUMENT

### 1. The Government Knowingly Misstates the Facts: The Friend Had No Lawyer When Counsel Spoke With Him.

Undersigned counsel took over Mr. Rozier's defense in the summer of 2026. As part of his trial preparation, he learned that prior counsel's defense investigator had interviewed the Friend on March 2, 2026, ten days *before* the Court appointed counsel for the Friend. ECF No. 171 at 8; ECF No. 180 at 2. During that interview, the Friend told the investigator that the Text was about keeping secret from Mr. Rozier the fact that Laster had bet on his performance in the March 23 game. ECF No. 171 at 8. The defense investigator documented this testimony in a written report. That is significant exculpatory evidence. Counsel had a constitutional duty to find the Friend, confirm what he said, and be ready to present it. Counsel did so and was painstaking at every step.

Following the defense investigator's interview, the Court appointed the CJA Counsel to represent the Friend in March 2026, before the Friend first testified in April. ECF No. 171 at 6. On June 30, 2026, the government wrote to undersigned counsel that the Friend was represented. Undersigned counsel then reached out multiple times to the lawyer. He called and emailed the CJA Counsel on June 30 and asked to speak with him and the Friend. Ex. B. He wrote again on July 2. *Id.* He called numerous times. On July 23, he wrote a third time:

> I've tried emailing and calling without the courtesy of a response. I will take that to mean that you [no] longer represent [the Friend] and will reach out to him directly. If that is not correct, please let me know immediately so that I can communicate with you instead.

*Id.* The lawyer did not respond.

Having heard nothing from the lawyer, on August 3, undersigned counsel texted the Friend. Counsel identified himself and said that he represented Mr. Rozier. He wrote: "I tried reaching out to your lawyer [CJA Counsel] many times by phone and email and he has not responded so I assume he doesn't represent you anymore. Let me know if that's not the case and I will try him again." Ex. C. The Friend then texted back and asked when they could talk. When they spoke, the Friend told counsel that he was not represented.

CJA Counsel has since confirmed in writing that "at the times this summer when you reached out," he "was not officially representing [the Friend] as my CJA appointment had ended." Ex. D. Rather, CJA Counsel told undersigned counsel that he had recently been "re-appointed" to represent the Friend. Obviously, he CJA Counsel would not have needed a new appointment if the first one had not ended. ***The government knew all of this before it filed its letter,*** because undersigned counsel forwarded the CJA Counsel's email to the government on November 5, ECF No. 180 at 3, and has communicated with the government about this in detail. The government

describes that email in its letter (but not its motion in limine), says the representation "purportedly lapsed," and asks for a hearing anyway. *Id.* But there is nothing "purported" about the fact that CJA counsel did not represent the Friend at the time undersigned counsel spoke with him. He did not, and accordingly the government's entire argument rests on a fact it knows to be untrue.

The government's only response is that the CJA Plan and the statute require an appointment to "last through the entirety of a case absent order of the Court." ECF No. 180 at 3. The statute says a person "shall be represented at every stage of the proceedings from his initial appearance before the United States magistrate judge or the court through appeal." 18 U.S.C. § 3006A(c). Here the Friend was never charged and never had an initial appearance. He was given a lawyer to advise him when he testified, and that lawyer (and his client) understood that the appointment ended when the testimony did.[2] The government apparently had the same view, especially if it participated in getting CJA *re*-appointed so that the Friend could testify a second time.

**2. The Government Misstates the Law: New York's Rules Govern Conduct in This Court and Counsel Did Not Violate Them.**

The government states that it "assumes for the purposes of this argument that Florida's rules of professional conduct, and Florida law interpreting those rules, govern." ECF No. 180 at 1 n.1. That assumption is incorrect and is nothing more than a transparent attempt to avoid the New York professional conduct rules that decimate the tactic on which it is relying. It is quite clear that New York law and rules apply to this New York case in which counsel has been admitted pro hac vice to represent Mr. Rozier. The government further asserts in a footnote that if New York's rules apply, they "are essentially the same as Florida's." ECF No. 180 at 1 n.1. The government asserts yet another false proposition. The two rules are very different.

Specifically, Local Rule 1.5(b)(5) permits discipline when, "[i]n connection with activities in this court, any attorney is found to have engaged in conduct that violates the New York State Rules of Professional Conduct." New York's own choice-of-law rule says the same thing. "For conduct in connection with a proceeding in a court before which a lawyer has been admitted to practice (either generally or for purposes of that proceeding), the rules to be applied shall be the rules of the jurisdiction in which the court sits, unless the rules of the court provide otherwise." N.Y. Rules of Prof'l Conduct R. 8.5(b)(1). Pro hac vice admission is written into the rule. The Second Circuit has held that the meaning of the no-contact rule "as it applies to federal criminal law practice should be and is a matter of federal law." *Grievance Comm. for S. Dist. of N.Y. v. Simels*, 48 F.3d 640, 646 (2d Cir. 1995). And the Second Circuit has read that rule narrowly to protect exactly the kind of defense investigation at issue here. *Id.* at 650–51.

---

[2] Under the government's argument, defense counsel would never be able to speak with a witness who once had CJA counsel appointed to him but no longer recognized that attorney as his lawyer, because the lawyer would not be available to facilitate a conversation.

New York's rules permitted counsel to speak with the Friend, *even if* he had in fact been represented at the time. New York's rule prohibiting contact with a represented individual solely applies to a represented "*party*," N.Y. Rules of Prof'l Conduct R. 4.2(a) (emphasis added), and only bar a lawyer from communicating about the subject of the representation "with a *party* the lawyer *knows* to be represented by another lawyer in the matter." N.Y. Rules of Prof'l Conduct R. 4.2(a) (emphasis added). The State Bar's ethics committee differentiates a witness from a party: "A non-party *witness* in a criminal matter is not protected by Rule 4.2. Consequently, a lawyer for a party may communicate with such witness *without the consent of counsel who represents the witness in a related matter*." Op. 884, Digest (emphasis added).

The Second Circuit has long held that "counsel for all parties have a right to interview an adverse party's witnesses (the witness willing) in private, without the presence or consent of opposing counsel and without a transcript being made." *Int'l Bus. Machs. Corp. v. Edelstein*, 526 F.2d 37, 42 (2d Cir. 1975) (per curiam). Witnesses "are the property of neither the prosecution nor the defense." *Gregory v. United States*, 369 F.2d 185, 188 (D.C. Cir. 1966). In *Simels*, a defense lawyer interviewed a witness without the consent of the witness's lawyer. The Southern District's grievance committee censured him. The Second Circuit reversed. The witness was a potential witness against the client and "only nominally" a codefendant, so he was not a "party." 48 F.3d at 650. The court warned that a broad reading of "party" "threatens to chill all sorts of investigation essential to a defense attorney's preparation for trial." *Id.* And it refused to call that investigation misconduct. A lawyer who interviews a witness looking for impeachment material or "direct evidence of his or her client's innocence" is "providing the effective defense and the zealous representation required by the Sixth Amendment." *Id.* at 651.

The Friend is a witness. The government calls him one. ECF No. 180 at 2 ("a witness referred to herein as 'the Friend'"). He is not charged. He is not a party to this case. Under New York's rule, undersigned counsel could have (and should have) interviewed him even if he had a lawyer.

### 3. Florida Rules Were Not Violated.

The government's letter wrongfully relies on Florida's no-contact rule. ECF No. 180 at 1 & n.1. But even if it applied, it was not violated here. That rule applies only where the lawyer "knows that the person is in fact represented in the matter to be discussed." R. Regulating Fla. Bar 4-4.2 cmt. That "means that the lawyer has actual knowledge of the fact of the representation." *Id.* The person must actually have a lawyer, and the lawyer must know it. While knowledge "may be inferred from the circumstances," *id*, every circumstance in this case pointed the other way. The lawyer ignored repeated calls and three emails over an extended period of time. Counsel told the Friend in writing that he assumed the Friend was unrepresented and asked to be corrected; the Friend did not correct him, and then affirmatively said he had no lawyer. Even if the Friend had a lawyer, undersigned counsel took the appropriate steps and had every reason to believe he had none.

In *Fla. Bar v. Schwartz*, 382 So. 3d 600, 608–09 (Fla. 2024), a case the government cites, the Florida Supreme Court distinguished *In re Decker*, where the lawyer was "informed by [the individual] that he was no longer represented by counsel of record" and based on this representation had no "obligation to confirm that [the individual] was no longer represented by counsel." *In re Decker*, 212 So. 3d 291, 306 (Fla. 2017). *Schwartz* itself looks nothing like this case. Schwartz met with his client's co-defendant, who he knew was represented by the public defender. The co-defendant was unhappy with his lawyer and wanted to hire someone else but had not done so. Schwartz told him he could not speak with him because he was represented. Then he met with him anyway, had him sign an affidavit about the case, and filed it without telling the public defender. *See Schwartz*, 382 So. 3d at 608–09. Schwartz "knew the opposite" of what the lawyer in *Decker* knew. *Id.* Here, undersigned counsel went to the lawyer first, gave notice in writing, asked to be corrected, and then spoke with a witness who said he had no lawyer (and who in fact had no lawyer). Counsel acted appropriately and did not violate the Florida rule.

**4. Interviewing a Witness Does Not Create a Conflict.**

A conflict requires a divergence between the lawyer's interests and the client's. There is no such divergence here. The government's own cases, none of which bear any resemblance to this case, show what a conflict looks like. In *Lopez v. Scully*, the client accused his lawyer of coercing his guilty plea, and the lawyer denied it in open court. 58 F.3d 38, 40–41 (2d Cir. 1995). In *United States v. Davis*, the client accused his lawyer of threatening not to investigate the case unless he pleaded guilty. 239 F.3d 283, 284–85, 287 (2d Cir. 2001). In *United States v. Levy*, the lawyer had also represented the defendant's co-defendant nephew, and his role in the nephew's flight was "undetermined." 25 F.3d 146, 156 (2d Cir. 1994). In *Christeson v. Roper*, appointed counsel had missed the habeas deadline and would have had to argue their own failure to get their client relief. 574 U.S. 373, 378 (2015). In each of these cases, there were legitimate concerns of wrongdoing or the lawyer had failed his client.

The Second Circuit has cautioned that *Lopez* "should not be read as holding that [a] mere accusation . . ., without more, is sufficient to create a conflict of interest." *Davis*, 239 F.3d at 286. Here, there is not even an accusation that has any foundation whatsoever. The Court must ask whether the facts support a conflict. "If they do not, there is no problem." *Id.* at 287. "If the court's inquiry reveals that there is no genuine conflict at all, the court has no further obligation." *Levy*, 25 F.3d at 153. The Court can make that determination on the papers based on the government's own concessions and the attached exhibits. If the Court has any follow up questions, undersigned counsel would, of course, be happy to answer them.

The government's theory is that undersigned counsel has a "personal interest in avoiding an inquiry into potential professional misconduct, and/or reputational harm." ECF No. 180 at 4 n.3. But there was no misconduct of any sort at any time. There was no conduct that even merits a further moment of discussion. Counsel spoke with an unrepresented witness after careful due

diligence and confirmed the witness's testimony that he had previously given to a defense investigator. The suggestion that this conduct creates any form of a conflict with his client or a personal interest in avoiding scrutiny would be laughable if it were not so serious.

*The Text.* The government says undersigned counsel may "shape his arguments to cast his own contacts with the Friend in the best possible light," or may "oppose its exclusion less vigorously to avoid creating a record about those contacts." ECF No. 180 at 8. The government knows full well that we will be pressing as hard as we can for admission of the Text. Why on earth would we oppose its exclusion less vigorously? It is the cornerstone of our case and it exculpates Mr. Rozier entirely. Our opposition to the government's motion in limine will demonstrate that the Text is admissible under Rule 806, as a non-hearsay command, under Rule 803(3), and under Rule 807, and that it is relevant and survives Rule 403. The Text is admissible. It is the *government*, not counsel, which is grasping at straws to keep the Text out.

*The Friend's testimony.* The government says counsel has "a personal stake in decisions about the Friend's testimony" because the two "took part in one-on-one conversations." ECF No. 180 at 8. It is not clear what this means. Literally every single lawyer who interviews a witness has the same "stake." The prosecutors here met with the Friend numerous times and heard his account change in its favor only after multiple efforts. ECF No. 171 at 6–8. No one suggests they must step aside. The government's view, apparently, is that only prosecutors may interview witnesses without creating a conflict. *See* ECF No. 171 at 20 n.6. Its theory has no limit. Any defense lawyer who interviews a witness would have a conflict whenever the government claimed the witness's account was different.

In this case the defense investigator took the Friend's statement on March 2, 2026, long before counsel took over. ECF No. 171 at 8. If the Friend testifies differently at trial, the defense will call the investigator. Fed. R. Evid. 613(b). Undersigned counsel does not need to be a witness to anything, and he will not be one.

*The changed account.* The government's real complaint is that the Friend's account supposedly "changed following his discussions with Mr. Markus and others on the defense side." ECF No. 180 at 3. But the Friend gave the account the government blames on counsel before undersigned counsel was in the case *and before giving any contrary account to the government*. Since then, after multiple efforts by the government, the Friend has moved his story toward the *government*, not the defense. The defense's argument is consistent with what the Friend originally said.

*Waiver and continued representation.* The government says undersigned counsel "has a personal interest in his own advice to Rozier on whether to waive any conflict and whether Mr. Markus should keep representing him." ECF No. 180 at 8. The argument is circular. Mr. Rozier and Counsel have no conflict whatsoever based on the underlying circumstances. The only purported "conflict" is the one the government has now created by filing its letter. If that were enough, the government could conflict out any defense lawyer it chose. It would only have to make

any accusation at all, with or without foundation, and then say he has a personal interest in advising his client about the accusation. That is the very manufactured conflict *Wheat* warned about. 486 U.S. at 163. The government's conflict claim is a transparent effort to get the Court to exclude the admissible and exculpatory Text. The government all but says so. It has told the Court that if the Text is excluded, "the Friend's testimony will be irrelevant and so too will these attorney-as-witness issues." ECF No. 171 at 21. The government should not have the power to deprive Rozier of his chosen counsel by virtue of the simple act of making an unfounded accusation.

## CONCLUSION

No *Curcio* hearing is needed when a lawyer interviews a consenting unrepresented witness and breaks no rule. There is no conflict to waive. The government is trying to manufacture one because its case is crumbling, and the Text is a big reason why. To get there, it has told the Court that the Friend had a lawyer when he did not, that the Florida rules apply when they do not, and that the Florida and New York rules were violated when they were not. It ran the same play down the hall in the baseball case. There, it accused defense lawyers who had interviewed witnesses of having an unwaivable conflict and moved to disqualify them. Judge Matsumoto denied the motion. *United States v. Clase de la Cruz*, No. 25-cr-346 (KAM), ECF No. 211 (E.D.N.Y. Aug. 28, 2026). Those lawyers are trying that case now. The Court should find, on the papers, that there is no genuine conflict, and should deny the government's request to appoint *Curcio* counsel and to conduct a *Curcio* hearing.

Respectfully submitted,

/s/ David Oscar Markus
David Oscar Markus
Margot Moss
Lauren Krasnoff
*For Terry Rozier*